**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
JHON E. CARDENAS, CESAR A. ROMERO,
and JOSE DAVID PEREZ MEJIA, *on behalf of*          **Case No.: 17-cv (5150)(FB)(RML)**
*themselves and others similarly situated,*

                                    Plaintiff,

              -against-

EDITA'S BAR & RESTAURANT,  INC. d/b/a
FLAMINGO RESTAURANT AND LOUNGE,
DOLL'S REST INC. d/b/a DOLL'S, and
EDITH F.   VALDIVIA a/k/a EDITH F. D'ANGELO,

                                    Defendants.
------------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Emiliano Perez, Esq.                          Jesse C. Rose
Law Office of Emiliano Perez                  The Rose Law Group PLLC
7827 37th Avenue, Ste 4                       3109 Newtown Avenue
Jackson Heights, NY 11372                     Suite 309
Tel: (718) 440-9214                           Astoria, New York 11102
Fax: (718) 440-9178                           (718)989-1864

## TABLE OF CONTENTS

**TABLE OF CONTENTS**………….. ........................................................................ i

**TABLE OF AUTHORITIES**…………. .................................................................. ii

**INTRODUCTION**…………….. ............................................................................ 1

**STATEMENT OF FACTS**…………..................................................................... 2

  *i. Plaintiff Cardenas*……….……............................................................. 6

  *ii. Plaintiff Romero*……….……............................................................... 7

  *iii. Plaintiff Mejia*…….……...................................................................... 8

  *iv. Plaintiff Vargas*………...................................................................... 9

  *v. Plaintiff Canas*……….….................................................................. 10

  *vi. Plaintiff Peralta*………. .................................................................. 10

  *vii. Plaintiff Garcia*………. .................................................................. 11

**LEGAL ARGUMENT**……………..................................................................... 12

 **I. Legal Standard**………............................................................... 12

 **II. Defendants Violated the Fair Labor Standards Act** ...................... 13

  A. Defendants qualify for enterprise coverage and are subject to the FLSA ................. 13

  B. All Defendants are liable for the lost wages owed to Plaintiffs.......................... 14

   *i. Defendants Edita's and Doll's are a single integrated enterprise* ...................... 14

   *ii. Defendant D'Angelo is individually liable* .......................................... 15

  C. The hours Plaintiffs claim to work are presumed to be true ........................... 16

  D. The Court should determine the amount of damages due
   for Minimum Wage and Overtime Claims (FLSA & NYLL) ........................... 17

 **III. Defendants Violated the New York Labor Law (Spread of Hours)** ......................... 18

 **IV. Defendants cannot claim a tip credit** ................................................ 20

 **V. Liquidated damages should be awarded under both the FLSA and NYLL** ............ 21

 **VI. Defendants failed to provide proper wage notices and wage statements** ................. 21

 **VII. Attorneys' fees, costs should be awarded** ......................................... 22

**CONCLUSION**…………………........................................................................ 23

# TABLE OF AUTHORITIES

**Cases**

Amnesty Am. v. Town of W. Hartford,
    361 F.3d 113 (2d Cir. 2004).................................................................................. 13

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)............................................................................................... 13

Anderson v. Mt. Clemens Pottery Co.,
    328 U.S. 680 (1946)........................................................................................ 16, 17

Andrade v. 168 First Ave Rest. Ltd.,
    2016 U.S. Dist. LEXIS 72678 (S.D.N.Y. June 3, 2016)....................................... 19

Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.,
    2016 U.S. Dist. LEXIS 127425 (E.D.N.Y. Sep. 16, 2016)..................................... 15

Barfield v. N.Y. City Health & Hosps. Corp,
    537 F.3d 132 (2d Cir. 2008)............................................................................ 14, 21

Barfield v. New York City Health and Hosp. Corp.,
    537 F.3d 132 (2d Cir. 2008)................................................................................... 21

Bowrin v. Catholic Guardian Soc'y,
    417 F. Supp. 2d 449 (S.D.N.Y. Mar. 2, 2006) ....................................................... 13

Choudry v. Durrani,
    2016 U.S. Dist. LEXIS 156365 (E.D.N.Y. Nov. 10, 2016).................................... 16

Chuchuca v. Creative Customs Cabinets Inc.,
    2014 U.S. Dist. LEXIS 164846 (E.D.N.Y. Nov. 25, 2014).................................... 19

Coley v. Vannguard Urban Improvement Ass'n,
    2016 U.S. Dist. LEXIS 103355 (E.D.N.Y. Aug. 5, 2016)...................................... 14

Cuzco v. Orion Builders, Inc.,
    262 F.R.D. 325 (S.D.N.Y. 2009) ........................................................................... 16

Fermin v. Las Delicias Peruanas Rest., Inc.,
    93 F. Supp. 3d 38 (E.D.N.Y. 2015) ....................................................................... 20

Feuer v. Cornerstone Hotels Corp.,
    2017 U.S. Dist. LEXIS 124433 (E.D.N.Y. Aug. 4, 2017)............................ 14, 15, 21

Garcia v. Chirping Chicken NYC, Inc.,
    2016 U.S. Dist. LEXIS 32750 (E.D.N.Y. Mar. 31, 2016) ..................................... 14

Graziadio v. Culinary Inst. of Am.,
    817 F.3d 415 (2d Cir. 2016)................................................................................... 15

Guaman v. Krill Contracting, Inc.,
    2015 U.S. Dist. LEXIS 74567 (E.D.N.Y. 2015)..................................................... 22

Guardado v. 13 Wall St., Inc.,
    2016 U.S. Dist. LEXIS 167887 (E.D.N.Y. Dec. 2, 2016) ..................................... 19

Hai Ming Lu v. Jing Fong Rest., Inc.,
   503 F. Supp. 2d 706 (S.D.N.Y. 2007)........................................................................21

Herman v. RSR Sec. Servs. Ltd.,
   172 F.3d 132 (2d Cir. 1999)...............................................................................16, 21

In re Dana Corp.,
   574 F.3d 129 (2d Cir. 2009)........................................................................................12

Irizarry v. Catsimatidis,
   722 F.3d 99 (2d Cir. 2013)..............................................................................15, 16

Liu v. Elegance Rest. Furniture Corp.,
   2017 U.S. Dist. LEXIS 160110 (E.D.N.Y. Sep. 25, 2017)......................................13

Llolla v. Karen Gardens Apartment Corp.,
   2014 U.S. Dist. LEXIS 44884 (E.D.N.Y. Mar. 10, 2014).......................................23

Lopez v. Pio Pio NYC, Inc.,
   2014 U.S. Dist. LEXIS 67121 (S.D.N.Y. May 15, 2014).........................................14

Lopez v. Royal Thai Plus, LLC,
   2018 U.S. Dist. LEXIS 20271 (E.D.N.Y. Feb. 6, 2018)...........................................17

Marin v. Apple-Metro, Inc.,
   2017 U.S. Dist. LEXIS 165568 (E.D.N.Y. Oct. 4, 2017)........................................20

Martinez v. Alimentos Saludables Corp.,
   2017 U.S. Dist. LEXIS 156657 (E.D.N.Y. Sept. 22, 2017)......................................17

Nuriddinov v. Masada III, Inc.,
   2017 U.S. Dist. LEXIS 116357 (E.D.N.Y. July 24, 2017)
   *adopted by* 2016 U.S. Dist. LEXIS 108781 (E.D.N.Y. Aug. 15, 2016) ..................14

Ortiz v. Arthur T. Mott Real Estate, LLC,
   2016 U.S. Dist. LEXIS 127597 (E.D.N.Y. Sep. 15, 2016)......................................22

Padilla v. Manlapaz,
   643 F. Supp. 2d 298 (E.D.N.Y. 2009) ....................................................................21

Pineda-Herrera v. Da-Ar-Da, Inc.,
   2011 U.S. Dist. LEXIS 57121 (E.D.N.Y. May 26, 2011) ........................................21

Posillico v. Greenwald,
   2012 U.S. Dist. LEXIS 15748 (E.D.N.Y. Feb. 2, 2012)..........................................13

Rana v. Islam,
   210 F. Supp. 3d 508 (S.D.N.Y. Sept. 26, 2016) ....................................................16

Reich v. Southern New Eng. Telcoms. Corp..,
   121 F.3d 58 (2d Cir. 1997)...............................................................................16, 17

Shiu v. New Peking Taste Inc.,
   2014 U.S. Dist. LEXIS 20836 (E.D.N.Y. Feb. 11, 2014).........................................19

Torres v. Gristede's Operating Corp.,
   628 F. Supp. 2d 447 (S.D.N.Y. Aug. 28, 2008)......................................................13

Xochimitl v. Pita Grill of Hell's Kitchen, Inc.,
    2016 U.S. Dist. LEXIS 121259 (S.D.N.Y. Sept. 8, 2016)...................................... 19

Young v. Cooper Cameron Corp.,
    586 F.3d 201 (2d Cir. 2009)................................................................................... 17

Yuquilema v. Manhattan's Hero Corp.,
    2014 U.S. Dist. LEXIS 120422 (S.D.N.Y. Aug. 26, 2014),
    *adopted by*, 2014 U.S. Dist. LEXIS 139061, (S.D.N.Y. Sept. 30, 2014) ............... 19

**Statutes**

12 N.Y.C.R.R. § 146-1.3 ...................................................................................... 20

12 N.Y.C.R.R. § 146-1.6(d) .................................................................................. 19

12 N.Y.C.R.R. § 146-2.2(a) ................................................................................... 20

12 N.Y.C.R.R. § 146-2.2(a)(1)-(2) ........................................................................ 20

29 C.F.R. § 778.5 .................................................................................................. 17

29 U.S.C. § 203(d) ........................................................................................... 14, 15

29 U.S.C. § 203(s)(1) ............................................................................................ 13

29 U.S.C. § 216(b) ........................................................................................... 21, 22

29 U.S.C. § 218(a) ................................................................................................. 17

29 U.S.C. § 255(a) ................................................................................................. 17

29 U.S.C. §201 et seq............................................................................................. 1

CPLR § 5001 ......................................................................................................... 23

CPLR § 5004 ......................................................................................................... 23

Fed. R. Civ. P. 56............................................................................................. 12, 13

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4................................................. 19

New York State Labor Law, Articles 6 & 19 ......................................................... 1

NYLL § 195(1)(a) ............................................................................................ 21, 22

NYLL § 195(3) ...................................................................................................... 22

NYLL § 198 ........................................................................................................... 21

NYLL § 198(1-a) ................................................................................................... 22

NYLL § 198(1-b), .................................................................................................. 22

NYLL § 198(1-d) ................................................................................................... 22

NYLL § 663(1) ................................................................................................. 17, 22

## INTRODUCTION

Plaintiffs Jhon Cardenas ("Cardenas"), Cesar Romero ("Romero"), Jose David Perez Mejia ("Mejia"), Angely Peralta ("Peralta"), Reidel Garcia ("Garcia"), Cristian Canas ("Canas"), and Alejandro Vargas ("Vargas") (altogether ("Plaintiffs"), former employees of Defendants Edita's Bar & Restaurant, Inc. d/b/a Flamingo Restaurant and Lounge ("Edita's" and at times referred to as "Flamingo's"), Doll's Rest Inc. d/b/a Doll's ("Doll's"), and Edith F. Valdivia a/k/a Edith F. D'Angelo ("D'Angelo") (altogether referred to as "Defendants"), by and through their attorney, The Rose Law Group, PLLC, respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment on Plaintiffs' claims pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA") and the New York State Labor Law, Articles 6 & 19 ("NYLL") for failure to pay the minimum wage, overtime premium, spread of hours pay, failure to provide proper wage statements, and failure to provide proper wage notices. Defendants' violations of the FLSA and NYLL were intentional and justify an award of liquidated damages. The amount in question is sufficiently precise to justify an award on these claims without a hearing on damages.

Defendants operate two bars which, as the main attraction, hire women to dance with patrons for a fee. Plaintiffs worked as staff for the bars and were paid by the Defendants a flat, per shift rate for every shift they worked up until March of 2016, in cash. After March of 2016, the Plaintiffs were paid hourly, mostly in cash, but still not compensated for all hours worked. Throughout their employment Defendants ignored the specific requirements of the law and formulated a complex plan to provide the appearance of paying the minimum wage and complying with the law, while failing to do so entirely. Each Plaintiff was paid a per shift cash wage, then at the end of the week, month, or quarter depending on when Ms. D'Angelo decided, they would be

asked to sign off on a check which calculated their "taxes" which she demanded be repaid to her. Defendants' maintained no records for Plaintiffs of how many hours they worked or how much they were paid in cash, instead claiming that those records were destroyed as unnecessary. Within this motion, Plaintiffs provide specific and consistent affidavits, as Defendants chose to only depose three Plaintiffs and chose not to go into specifics of their claims, which lay out their claims clearly and fully describe the hours they worked, the pay they received, and the damages they sustained.

Defendants' explanation for why they acted as they did was a moving target throughout discovery. In their moving papers, Plaintiffs will merely point to the scheme last confirmed in the five (5) depositions to which Defendant D'Angelo was required to submit due to her evasiveness. Should Defendants point to other explanations which were abandoned later, we will point to those inconsistencies and demonstrate their insufficiency in the Reply. Defendants' violations justify swift and conclusive condemnation from the Court and an award of the fullest amount possible under the law.

## **STATEMENT OF FACTS**

Both Defendant Doll's and Defendant Edita's have common ownership and management. Defendant Edita's is a corporation whose chief executive officer, sole owner, and sole corporate officer is Defendant D'Angelo. Exhibit 1, NYS Entity Information; Exhibit 2, Excerpt from D'Angelo Deposition Day 1, pp. 8:2-9:23; R56 ¶1. Defendant Edita's operates a bar at 85-12 Roosevelt Avenue, Jackson Heights, New York 11372. Exh. 1, pp. 10:3-8; R56 ¶2. Defendant Doll's is a corporation whose chief executive officer, part owner, and a corporate officer is Defendant Edith F. D'Angelo. Exhibit 3, NYS Entity Information for Doll's; Exh. 2, pp. 10:21-11:21; R56 ¶3. Mr. Luis Ruiz also is a part owner and corporate officer for Defendant Doll's. Exh. 2, pp. 11:7-21; R56 ¶3. Mr. Luis Ruiz

also is a manager at Defendant Edita's and operates Defendant Doll's simultaneously. Exh. 2, pp. 12:3-6; R56 ¶4. An individual named Wesley Laito is a manager for both Defendant Edita's and Defendant Doll's. Exh. 2, pp. 16:10-23; R56 ¶6.

Hiring and management processes for both Defendant Doll's and Defendant Edita's was centralized. Defendant Edita's and Defendant Doll's both hire workers who apply to work for Defendant Edita's as there is no independent hiring process for Defendant Doll's. Exh. 2, pp. 13:13-14:16; R56 ¶5. Defendant D'Angelo has the power to hire and fire, set schedules, and set pay schedules at both Defendant Edita's and Doll's. Exh. 2, pp. 19:2-21:14; R56 ¶7. Defendant D'Angelo's husband buys the food for both bars. Exh. 2, p. 23:16-17; R56 ¶8. Both Defendant Doll's and Defendant Edita's have the same "rules of employment." Exh. 4, pp. 66:20-67:2; Exhibit 6, Rules of Employment; R56 ¶22. Defendant D'Angelo interviewed applicants to work at both Defendant Doll's and Defendant Edita's at the same time in the same, central office where she conducted business for both locations. Exh. 4, pp. 65:24-66:19; R56 ¶23. Applicants filled out a single application to work at both locations. Exh. 4, p. 64:9-11; R56 ¶24. Employees are told when they are hired that they "have to work one day at Doll's if they want to work" for Defendant Edita's. Exh. 4, pp. 64:24-65:8. ("Q. So it's required as part of employment to work on the [sic] both locations? A. Yes."); R56 ¶25. When someone calls in sick, Defendant D'Angelo would send someone from the other bar to cover for them. Exh. 4, pp. 45:19-46:5. R56 ¶20. Plaintiffs were paid simultaneously for both locations at the central office located above Defendant Edita's. Exhibit 11, Affidavit of Plaintiff Cardenas, ¶¶7-8; Exhibit 12, Affidavit of Plaintiff Romero, ¶4; R56 ¶¶37, 47,

Both bars have similar atmospheres, food, music, and employ the same women to come dance with patrons. Both Defendants Edita's and Doll's share a DJ. Exh. 4, p. 44:14-24; R56 ¶19. Both Defendant Doll's and Defendant Edita's serve "the same finger foods." Exh. 4, p. 46:6-8; R56 ¶21.

The same women who dance at Defendant Edita's dance at Defendant Doll's. Exh. 4, pp. 17:7-19:13, 43:4-22; R56 ¶¶17, 18. They bought supplies for both locations at the same time. Exh. 11, ¶5; R56 ¶36.

Defendants maintained no records of the hours worked by Plaintiffs or the amount paid to them on a daily basis. At some point beginning in or around 2007, Defendants used a fingerprinting system to keep track of how many hours each Plaintiff worked. Exh. 2, pp. 39:5-40:9; R56 ¶9. That machine broke, however, no records were produced to show when it broke. R56 ¶10. Defendant D'Angelo testified that it broke in either 2010, 2013, or 2014. Exh. 2, pp. 25:25-27:5; Exhibit 4, D'Angelo Deposition Day 2, pp. 39:17-40:2; Exhibit 5, D'Angelo Deposition Day 3, pp. 23:19-24:2; R56 ¶11. Defendant D'Angelo testified that after this she kept track of employees' hours using schedules which were thrown away each day and not maintained. Exh. 4, p. 40:3-14; R56 ¶12. Defendant D'Angelo testified that the sole basis for determining what employees were to be paid was the schedules and that the schedules were used to create all pay records. Exh. 4, pp. 41:2-42:18; R56 ¶13. Defendant D'Angelo was asked to search to see if she could find any schedules and she could not. Exh. 5, p. 56:8-17; R56 ¶13. Defendant D'Angelo claimed that she kept time records or tip records for which employees' pay was based but that she destroyed those records on a daily basis "because [she] didn't need it." Exh. 2, p. 42:16-43:5; R56 ¶14. Almost no records were produced for hours worked and those which were produced are inaccurate, as described herein.

Employees were not provided a written explanation of what they were paid or why they were paid it. Employees were not given any wage notices describing what they were to be paid per hour, instead Defendant D'Angelo claimed that the information was given verbally. Exh. 4, p. 39:3-16; R56 ¶15. Defendant D'Angelo testified that all employees were paid on a daily basis in cash. Exhibit 7, D'Angelo 4th day of Deposition, pp. 16:24-19:16; R56 ¶26. Defendant D'Angelo testified that the

4

only records of these daily payments were receipts which she maintained. Id; R56 ¶27. The receipts she references only describe how much in tips were paid and not the amount of hourly wage paid. Exhibit 8, Tip Receipt Examples; R56 ¶29. Defendant D'Angelo testified that her QuickBooks records, pay stubs, and checks were maintained only for the purpose of determining how much employees would be required to repay to her for tax contributions. Id. ; R56 ¶28. Defendants produced tip card records for a limited period of dates but provided no records showing how much each Plaintiff was paid on a daily basis and did not provide a complete record of how much each Plaintiff received. Exh. 8; Exhibit 10, Spreadsheet describing summary of records produced for each Plaintiff (Produced on DVD in Excel Format due to size); R56 ¶33.

Defendants employed more than ten (10) employees during all relevant time periods. Defendant Edita's employs around twelve (12) people regularly including managers, waiters, barmaids, and a dj. Exh. 4, p. 15:7-12; R56 ¶16. Defendant Edita's also employed approximately forty-five (45) to fifty (50) girls who dance with patrons for a fee. Exh. 4, pp. 17:7-19:13; R56 ¶17. Defendant Doll's employs between six (6) and seven (7) employees regularly plus the forty (40) to fifty (50) dancers who also work for Defendant Edita's. Exh. 4, p. 43:4-22; R56 ¶18. Combined, the two entities employ well in excess of ten (10) people during all relevant times.

Defendant D'Angelo could not provide a basis for why she paid what she did, instead providing vague responses that did not support her claim that she tried to comply with the law. Defendant D'Angelo could not provide any specific examples of when she asked for information from her accountant about how much to pay employees, could not identify which accountant she asked, and could not produce any documents to show that she asked an accountant about how she should pay employees. Exh. 5, pp. 9:25-12:14; R56 ¶30. Defendant D'Angelo claimed that an article produced in discovery which was published on December 5, 2017 had been printed by her office and

5

had been the basis for her paying employees the rates she paid. Exh. 5, pp. 38:24-43:6; R56 ¶31. This article had been printed on October 7, 2019, two weeks after her prior deposition date (see Exh. 4 dated September 25, 2019). Defendant D'Angelo claimed it had just been in her office and that the hard copy produced had been a basis for her pay practices going back years. Id.; Exhibit 9, Article Printed October 7, 2019; R56 ¶32.

Defendant D'Angelo testified that Defendant Edita's had sales of approximately $450,000 in 2017 and 2018 and that Defendant Doll's had sales of approximately $200,000 in 2017 and 2018 for a combined sales of $650,000 for those years, exceeding the $500,000 necessary for FLSA coverage. Exh. 2, p. 70:2-19; R56 ¶34.

No Plaintiff ever received wage notices when they started working. Exh. 11, ¶15; Exh. 12, ¶¶10-15; Exh. 14, ¶¶7-10; Exh. 15, ¶4; Exh. 16, ¶¶16-17; Exh. 17, ¶6; R56 ¶¶42, 52, 65, 71, 85, 90. Plaintiffs were also required to pay some of their tips to bartenders and busboys every shift. Exh. 11, ¶24; Exh. 13, ¶13; Exh. 14, ¶16; Exh. 16, ¶20; Exh. 17, ¶14; R56 ¶¶45, 61, 69, 87, 95.

Each Plaintiff provided ample allegations to support their claim for damages.

i.    Plaintiff Cardenas

Plaintiff Cardenas worked for Defendants from November of 2010 until July of 2017. Exh. 11, Affidavit of Plaintiff Cardenas, ¶¶3-4; R56 ¶35. Plaintiff Cardenas worked usually from 6:00 PM or 7:00 PM until 5:30 AM, five or six days each week. Exh. 11, ¶¶7-8; R56 ¶37. Between both bars, he worked approximately fifty-five (55) to sixty-six (66) hours each week, not including extra shifts he picked up. Id. Until January of 2015, Plaintiff Cardenas received $40.00 from Defendants for each shift he worked and an extra $10.00 on Saturdays and Sundays regardless of the number of hours worked for the extra cleaning work he did between 4:00 AM and 5:30 AM. Exh. 11, ¶¶9-10; R56 ¶38. He was given pay stubs which claimed he was paid $5.00 per hour but he was not

paid that much. Id. In or around January of 2015, Plaintiff Cardenas was paid $5.00 per hour for hours worked up until 4:00 AM and then $7.50 per hour starting in March of 2016. Exh. 11, ¶¶11-12; R56 ¶39. For hours worked between 4:00 AM and 5:30 AM he only received the extra $10.00 on Saturdays and Sundays at Edita's. Id.

Plaintiff Cardenas received no notice of a tip credit until January of 2015 when he received a verbal notice that he had been and would continue to receive less than the minimum wage because he received tips. Exh. 11, ¶13; R56 ¶40. He never received any notice of a tip credit in writing. Id. He would not get paid for three (3) to five (5) months at a time for hourly work and when he was paid he was paid in cash, while Defendants would keep his paycheck and give him a pay stub, keeping what they called "payroll taxes" from his pay. Exh. 11, ¶¶15-18; R56 ¶42.

Plaintiff Cardenas only rarely, and without documentation, received overtime pay (time and a half) for hours worked in excess of forty (40) each week. Exh. 11, ¶14; R56 ¶41. He also never received spread of hours pay despite working more than ten (10) hours almost every day he worked for Defendants. Id.; Exh. 11, ¶¶7-8; R56 ¶37. While he clocked in and out every day from 2011 until around 2015, the machine stopped working in 2015 and after that there was no record of when he started and stopped working. Exh. 11, ¶¶20-21; R56 ¶43.

ii.    *Plaintiff Romero*

Plaintiff Romero worked for both Defendants Edita's and Doll's as a waiter from December 16, 2011 until August 9, 2017. Exh. 12, ¶3; R56 ¶46. Plaintiff Romero worked five (5) to six (6) days each week, eleven (11) to twelve (12) hours a day totaling between fifty-five (55) andseventy-two (72) hours a week. Exh. 12, ¶48; R56 ¶48. Up until the last year of his employment, he  worked five (5) to six (6) shifts a week from 5:00 PM or 6:00 PM until 5:00 AM or 5:30 AM, totaling between sixty (60) and seventy-two (72) hours a week. Id. Then, in his last

year, he switched to working four (4) days a week for the same shifts, for a total of forty-eight (48) hours a week on average. Id. Up until in or around March of 2016, Plaintiff Romero was paid $40.00 per shift regardless of hours worked, except on Saturdays and Sundays when he received an extra $10 for staying late and cleaning. Exh. 12, ¶6; R56 ¶49.

At some point, Defendants began providing pay stubs claiming he was paid $5.00 per hour, however, he still made only $40.00 per shift regardless of how many hours worked. Exh. 12, ¶¶7-8; R56 ¶50. Then, in March of 2016, Defendants began paying him $7.50 per hour for all hours worked, except for hours after 4:00 AM when he was still only paid $10.00 for cleaning on Saturdays and Sundays at Edita's. Id. Defendants also paid him time and a half for hours over forty (40) "rarely." Exh. 12, ¶ 9; R56 ¶51. Plaintiff Romero was always paid in cash, after signing a check but not receiving the check, and was only paid every so often without any regular schedule after taxes were withheld based on an unknown calculation. Exh. 12, ¶¶10-15; R56 ¶52. While he was required to punch in and punch out when Defendants had a working machine, it rarely worked and he had clock out at 4:00 AM, although he stayed to clean. Exh. 12, ¶¶16-17; R56 ¶53. Plaintiff Romero received a verbal notice that he would be paid less than the minimum wage because he received tips in January of 2015, but he never received written notice. Exh. 12, ¶¶ 18-19; R56 ¶54.

iii.     Plaintiff Mejia

Plaintiff Mejia began working for Defendants Edita's and Doll's from August of 2014 until August of 2016. Exh. 13, Affidavit of Plaintiff Mejia, ¶¶3-4; R56 ¶56. Plaintiff Mejia worked four (4) to five (5) shifts a week, from ten (10) to twelve (12) hours each day, totaling between forty (40) and sixty (60) hours each week. Exh. 13, ¶6; R56 ¶56. Plaintiff Mejia was paid only $40.00 per shift except on Saturdays and Sundays when he would get an extra $10.00 at Defendant Edita's for staying to clean after it closed for an hour or two. Exh. 13, ¶¶7-8; R56 ¶57. From March 2016

until August 2016, Plaintiff Mejia was usually paid $75.00 each shift which generally lasted ten (10) hours, except for Saturdays and Sundays when he was paid $85.00, as those shifts were eleven (11) to twelve (12) hours. Exh. 13, ¶¶9-10; R56 ¶58. Plaintiff Mejia never was required to clock in or out but was asked to sign a notebook which contained his hours worked when he was paid each day. Exh. 13, ¶11; R56 ¶59. However, that time never included extra time for cleaning. Id. Defendants never provided any notice to Plaintiff Mejia that he was being paid less than the minimum wage because he received tips. Exh. 13, ¶12; R56 ¶60.

    iv.    *Plaintiff Vargas*

    Plaintiff Vargas worked for Defendant Edita's from around March of 2006, and for Defendant Doll's from around 2011, until August of 2016. Exhibit 14, Affidavit of Plaintiff Vargas, ¶¶3-4. Plaintiff Vargas was paid only $20.00 per shift when he first started working for the Defendants. . Exh. 14, ¶5; R56 ¶63.Sometime between 2006 and 2011, Defendants started paying him $40.00 per shift. In or around 2010, Defendants starting paying him an extra $10.00 at Flamingo on Saturdays for cleaning after closing. Id. Plaintiff Vargas worked five (5) to six (6) days each week, eleven (11) to eleven and a half (11.5) hours each shift for a total of fifty-five (55) to sixty-nine (69) hours each week. Exh. 14, ¶6; R56 ¶64.

    Plaintiff Vargas was never given a verbal or written notice that he would be paid less than the minimum wage due to his receiving tips. Exh. 14, ¶7; R56 ¶65. Plaintiff Vargas was paid in cash but was asked to sign a pay check, then receiving a pay stub. Exh. 14, ¶10; R56 ¶65. While Plaintiff Vargas was paid until the bar closed at 4:00 AM, he did not get any money for the extra hour to hour and a half spent cleaning after closing, except for Saturdays when he worked for Defendant Edita's he would receive an additional $10.00. Exh. 14, ¶11; R56 ¶66. He was never paid on time, and only received his salary a few times a year. Exh. 14, ¶14; R56 ¶67. Plaintiff

Vargas was never paid overtime premium for hours worked over forty (40) or spread of hours pay for shifts in excess of ten (10) hours. Exh. 14, ¶13; R56 ¶66. Defendants never paid Plaintiff Vargas everything they owed him, even though he was asked to sign paychecks after his termination. Exh. 14, ¶14; R56 ¶67.

         v.    *Plaintiff Canas*

Plaintiff Canas worked for Defendants Edita's and Doll's from November of 2015 until January of 2017 as a waiter. Exhibit 15, Affidavit of Plaintiff Canas, ¶3; R56 ¶70. Plaintiff Canas was paid $40.00 per shift until March of 2016 when he started getting paid $60.00 per shift. Exh. 15, ¶¶4-5; R56 ¶71. Plaintiff Canas never received any pay stubs or notices of his hourly rate. Id. Plaintiff Canas was always asked to sign a document saying what hours he worked, however, the record stated that he worked until 4:00 AM rather than 5:30 AM when he actually stopped working. Exh. 15, ¶6; R56 ¶72. On Saturdays and Sundays Plaintiff Canas, if he worked for Defendant Edita's, would receive an additional $10.00 for cleaning. Exh. 15, ¶7; R56 ¶72. Plaintiff Canas worked approximately four (4) shifts each week up until the last six (6) months of his employment when he only worked two (2) shifts per week. Exh. 15, ¶¶4, 10 ; R56, ¶74. For most of his employment, he worked forty six and a half (46.5) hours each week. Exh. 15, ¶10; R56 ¶74. For the last six weeks of his employment he worked only two (2) eleven (11) hour shifts at Doll's. Exh. 15, ¶10; R56 ¶74.

Plaintiff Canas never received time and a half for hours worked over forty (40) in a week or any spread of hours pay for shifts over ten (10) hours. Exh. 15, ¶10; R56 ¶75.

        vi.   *Plaintiff Peralta*

Plaintiff Peralta worked for Defendants Edita's and Doll's from about 2007 until March 15, 2017 as a waitress and bartender. Exhibit 16, Affidavit of Plaintiff Peralta, ¶¶3-4; R56 ¶79.

From December 31, 2013 until the end of her employment, she worked as a waitress. Exh. 16, ¶5; R56 ¶79. Plaintiff Peralta worked four (4) shifts a week for shifts which lasted between ten and a half (10.5) and twelve (12) hours a shift. Exh. 16, ¶7; R56 ¶80. Plaintiff Peralta was paid in cash, $40.00 per shift and an extra $10.00 when she worked at Defendant Edita's on weekends, except for four (4) or five (5) times when she received a check. Exh. 16, ¶¶8-10; R56 ¶81. In or around January of 2015, Defendants began giving Plaintiff Peralta a pay stub which stated that she was paid $5.00 per hour, however, she was still only paid $40.00 per shift. Exh. 16, ¶11; R56 ¶82. In March of 2016, Defendants started paying Plaintiff Peralta $7.50 an hour instead of per shift, however, she was still not paid for all hours worked as they stopped paying employees at 4:00 AM except for the extra $10 on Saturdays and Sundays at Defendant Edita's. Exh. 16, ¶82; R56 ¶82. Plaintiff Peralta was never paid any overtime premium for hours over forty (40) in a week or the spread of hours pay for shifts in excess of ten (10) hours. Exh. 16, ¶13; R56 ¶83. When the pay practices changed, Defendants began paying Plaintiff Peralta sporadically, not paying her any hourly wage for months, and at one point a full year. Exh. 16, ¶¶14-15; R56 ¶84. Plaintiff Peralta never received any notice, written or verbal, that she would be paid less than the minimum wage because she received tips. Exh. 16, ¶16; R56 ¶85. She also never received a notice telling her how much she was to be paid. Exh. 16, ¶17; R56 ¶85. Other than for about six (6) months during her employment, Plaintiff Peralta was only required to sign in when she got into work and never signed out. Exh. 16, ¶¶18-19; R56 ¶86.

vii.   *Plaintiff Garcia*

Plaintiff Garcia began working for both Defendant Edita's and Defendant Doll's after being interviewed and hired at the office located above Defendant Edita's. Exh. 17, ¶¶4-5; R56 ¶89. Plaintiff Garcia worked from February of 2012 until April of 2014. Exh. 17, ¶3; R56 ¶88.

11

Plaintiff Garcia was paid only $40.00 per shift for the entire time he worked for Defendants, except that on Saturdays he would get paid an extra $10.00 per shift for cleaning after 4:00 AM. Plaintiff Garcia worked approximately forty-six (46) hours each week, working four (4) days with three (3) twelve (12) hour shifts and one (1) ten (10) hour shift. Exh. 17, ¶8; R56 ¶91. Defendant D'Angelo would pay Plaintiff Garcia in cash after he signed a paycheck, which she would keep. Exh. 17, ¶¶9-11; R56 ¶92. Sometimes, he did not get paid for several months, and one time he did not get paid for about a year. Id. Plaintiff Garcia was required to sign in when he arrived at work, but not sign out, or he punched in and punched out. Exh. 17, ¶12; R56 ¶93. He was never paid time and a half for hours over forty (40) and he never received spread of hours pay. Exh. 17, ¶13; R56 ¶94.

## LEGAL ARGUMENT

The Fair Labor Standards Act and New York Labor Law set strict requirements for how much employees are to be paid, how they are to be paid, and what notices they are to receive. Defendants failed to comply with any standards and made no effort to do so.

### I.    Legal Standard

Summary judgment is only available when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  "[W]hen the party against whom summary judgment is sought comes forth with affidavits or other material obtained through discovery that generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate." Id. (citation omitted).

The Court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences

in favor of that party, and to eschew credibility assessments." Posillico v. Greenwald, 2012 U.S. Dist. LEXIS 15748 (E.D.N.Y. Feb. 2, 2012) (quoting Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 454 (S.D.N.Y. Aug. 28, 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The moving party bears the burden of showing that a reasonable jury could not find for the nonmoving party. See id. "The Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant." See id. (citing Fed. R. Civ. P. 56(c)). Despite this high standard, Defendants admitted liability through the documents produced in discovery and the testimony given under oath at deposition.

## II.     Defendants Violated the Fair Labor Standards Act

Defendants have no excuse for their failure to comply with the FLSA and each element of the claim for both Plaintiffs is fully proven without any facts in dispute.

### A.  Defendants qualify for enterprise coverage and are subject to the FLSA

Wage and hour claims under the FLSA "apply only if the employee meets either an 'individual coverage' or 'enterprise coverage' interstate commerce requirement." Liu v. Elegance Rest. Furniture Corp., 2017 U.S. Dist. LEXIS 160110, at *5 (E.D.N.Y. Sep. 25, 2017) (quoting Bowrin v. Catholic Guardian Soc'y, 417 F. Supp. 2d 449, 457 (S.D.N.Y. Mar. 2, 2006)). "[A]n enterprise engaged in commerce: (1) 'has employees handling, selling, or otherwise working on goods or materials that have moved in or produced for commerce' and (2) has 'annual gross volume of sales made or business done [of] not less than $500,000.'" Id. (quoting 29 U.S.C. § 203(s)(1)).

Defendant D'Angelo made it clear that for 2017 and 2018 the Defendants did more than $500,000 in business done. R56 ¶34. Further, Defendants bought and sold alcohol which was

13

moved in commerce. Id. Defendants were subject to the FLSA during the relevant period.

      B.   All Defendants are liable for the lost wages owed to Plaintiffs

Because the individual Defendants are employers and the corporate Defendants are a single integrated enterprise, each are jointly and severally liable for the damages owed to Plaintiffs.

      i.   *Defendants Edita's and Doll's are a single integrated enterprise*

"The FLSA defines 'employer' as 'any person acting directly or indirectly in the interest of an employer in relation to an employee . . . .' Feuer v. Cornerstone Hotels Corp., 2017 U.S. Dist. LEXIS 124433, at *31 (E.D.N.Y. Aug. 4, 2017) (quoting 29 U.S.C. § 203(d)). In the single integrated enterprise doctrine, two corporations may be found liable for the same violation utilizing a four-factor test "to be determined on a case-by-case basis by review of the totality of the circumstances." Nuriddinov v. Masada III, Inc., 2017 U.S. Dist. LEXIS 116357, at *15 (E.D.N.Y. July 24, 2017) *adopted by* 2016 U.S. Dist. LEXIS 108781, at *1 (E.D.N.Y. Aug. 15, 2016) (quoting Lopez v. Pio Pio NYC, Inc., 2014 U.S. Dist. LEXIS 67121, at *3-4 (S.D.N.Y. May 15, 2014); Barfield v. N.Y. City Health & Hosps. Corp, 537 F.3d 132, 141-42 (2d Cir. 2008)). The factors to be considered are "(1) the interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Id. (quoting Garcia v. Chirping Chicken NYC, Inc., 2016 U.S. Dist. LEXIS 32750, at *20 (E.D.N.Y. Mar. 31, 2016)). "Courts in this district have employed this doctrine to find… defendants liable for FLSA and NYLL claims." Id. (citing Coley v. Vannguard Urban Improvement Ass'n, 2016 U.S. Dist. LEXIS 103355, at *7 (E.D.N.Y. Aug. 5, 2016); Chirping Chicken, 2016 U.S. Dist. LEXIS 32750, at *21-22). Each of these factors weigh in favor of finding that the two corporate Defendants are a single integrated enterprise.

The Eastern District of New York has found a single integrated enterprise to exist in similar

circumstances. See <u>Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.</u>, 2016 U.S. Dist. LEXIS 127425, at *59-60 (E.D.N.Y. Sep. 16, 2016). In <u>Ayala</u>, this Court found that where the two corporations worked in the same industry, from the same office, and it was difficult to tell where one entity stopped and the other began, it was appropriate to find a single integrated enterprise to exist on a motion for summary judgment. <u>Id</u>. at *60-61. Those defendants also had common ownership and management. <u>Id</u>. at * 61-62.

Here, the interrelation of operations includes that all employees applied to only one location where they were hired for both as a requirement of working at one location, they were subject to the same employee policies, they both had the same menu, and supplies were shared. R56, ¶¶5, 8, 21-25. Labor was controlled in a centralized way from the same office, from the same pool of employees whose schedules were coordinated. R56, ¶¶16-19. If someone called out, then an employee from the other location was sent to cover. R56, ¶20. The same managers worked at both locations. R56, ¶¶4, 6-7. Further, Defendant D'Angelo is a common owner. R56, ¶¶1, 3. All four (4) factors weigh in favor of a finding of a single enterprise.

> ii.  *Defendant D'Angelo is individually liable*

The same definitions of an employer apply in the individual context as for the corporate. See <u>Feuer</u>, 2017 U.S. Dist. LEXIS 124433 (E.D.N.Y. Aug. 4, 2017) (quoting 29 U.S.C. § 203(d)). "To determine whether an individual is an 'employer' under the FLSA, the Second Circuit utilizes the economic realities test, which focuses on 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" <u>Id</u>. (quoting <u>Irizarry v. Catsimatidis</u>, 722 F.3d 99, 103 (2d Cir. 2013) (citation omitted in original); citing <u>Graziadio v. Culinary Inst. of Am.</u>, 817 F.3d 415, 422 (2d Cir. 2016)). "In

addition, the analysis depends on whether the defendant had 'operational control' over employees." Id. (quoting Irizarry, 722 F.3d at 110). In determining whether someone is an employer, "[t]he 'economic reality' test applies equally to whether workers are employees and to whether managers or owners are employers." Irizarry, 722 F.2d at 104 (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)).

Here, there is no question that Defendant D'Angelo is an employer and personally liable for the liabilities of her companies. R56, ¶¶1-3, 7.

C. The hours Plaintiffs claim to work are presumed to be true

Plaintiffs' recollections of the hours worked are sufficient proof of their hours worked and the Court should accept them as fact because the Defendants failed to keep any records of hours worked. When a defendant "concede[s] that they failed to maintain accurate records regarding [a plaintiff's] employment … the Court may, and does, rely on [a plaintiff's] recollection in determining the amount of unpaid …wages." Choudry v. Durrani, 2016 U.S. Dist. LEXIS 156365, at *31 (E.D.N.Y. Nov. 10, 2016) (citing Rana v. Islam, 210 F. Supp. 3d 508, 513 (S.D.N.Y. Sept. 26, 2016); Cuzco v. Orion Builders, Inc., 262 F.R.D. 325, 331 (S.D.N.Y. 2009)).

Here, Defendants have admitted that a majority of the records of hours worked were destroyed on a daily basis and not maintained. R56, ¶¶9-14. The ones that were produced were either incomplete or not contemporaneously maintained. Id.

While Plaintiff's estimates are not precise, they provide "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Cuzco, 262 F.R.D. at 331 (quoting Reich v. Southern New Eng. Telcoms. Corp.., 121 F.3d 58, 71 (2d Cir. 1997); Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)).

The burden now shifts to the Defendants who must "come forward with evidence of the

precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id. at 331-32 (quoting Anderson, 328 U.S. at 687-88). "Should the employer fail to produce such evidence, the court may award damages, even though the result is only approximate." Id. at 332 (citing Reich, 121 F.3d at 67). We know that the Defendants cannot meet this burden without reviewing their opposition papers however because they did not produce any such record in discovery. Inasmuch, Plaintiffs' estimates of their hours and thus their damages are to be accepted by the Court.

   D.   The Court should determine the amount of damages due for Minimum Wage and Overtime Claims (FLSA & NYLL)

   The damages to be awarded in this case are a matter of mathematical calculation. The same test that should be applied *supra* for willfulness also extends the statute of limitations for Plaintiffs from two years to three. 29 U.S.C. § 255(a); NYLL § 663(1); Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009) ("The effect of a willfulness finding is to extend the statute of limitations period from two to three years"). The statute of limitations is six (6) years under the NYLL. NYLL § 663(3). "Where a state's minimum wage is higher than the federal minimum wage, the state's minimum wage must be paid by the employer to satisfy FLSA's minimum wage requirement." Lopez v. Royal Thai Plus, LLC, 2018 U.S. Dist. LEXIS 20271, at *11-12 (E.D.N.Y. Feb. 6, 2018) (citing 29 C.F.R. § 778.5; see also 29 U.S.C. § 218(a); Martinez v. Alimentos Saludables Corp., 2017 U.S. Dist. LEXIS 156657 (E.D.N.Y. Sept. 22, 2017)).

   The Complaint was filed in this case on August 30, 2017. Dkt. No. 1. The minimum wages during the times that Plaintiffs were employed for which the statute of limitations had not expired are as follows:

- $7.15 on and after January 1, 2007
- $8.00 on and after December 31, 2013
- $8.75 on and after December 31, 2014

- $9.00 on and after December 31, 2015
- $11.00 per hour on and after December 31, 2016

NYLL § 652. For the year 2017, when the minimum wage was $11.00 per hour, the NYLL requires this to be paid only for "large" employers, meaning employers with more than eleven (11) employees. Id. Given that the Defendants employed at least forty (40) to fifty (50) dancers at the time, and in the aggregate employed many more, there is no question that Defendants were a large employer. R56, ¶¶16-19. Plaintiffs' damages calculations are based on Exhibits 11-17 and are contained in Exhibit . For each Plaintiff the calculation assumes the least amount of damages. For example, if the Plaintiff claims that they worked 55-66 hours each week, the calculation uses only fifty-five hours and nothing more. The numbers used for pay assume that if the Plaintiff did not describe how many Saturdays or Sundays they worked, that they worked both and received the $10.00 pay each day. Thus, these numbers represent the smallest number possible under the facts which the Court should accept as true.

- Plaintiff Cardenas establishes base damages of $61,360.00

- Plaintiff Romero establishes base damages of $74,246.25

- Plaintiff Mejia establishes base damages of $19,422.00

- Plaintiff Vargas establishes base damages of $71,716.67

- Plaintiff Canas establishes base damages of $12,162.04

- Plaintiff Peralta establishes base damages of $41,405.00

- Plaintiff Garcia establishes base damages of $62,351.25

Exhibit 19.

### III.    Defendants Violated the New York Labor Law (Spread of Hours)

"A cause of action under the NYLL for a spread of hours claim, for which there is no comparable provision in the FLSA, provides that 'an employee is entitled to recover compensation

18

for an extra hour of work at the minimum wage for each day that the employee works in excess of ten hours.'" Guardado v. 13 Wall St., Inc., 2016 U.S. Dist. LEXIS 167887, at *24-25 (E.D.N.Y. Dec. 2, 2016) (quoting Shiu v. New Peking Taste Inc., 2014 U.S. Dist. LEXIS 20836, at *10 (E.D.N.Y. Feb. 11, 2014); citing N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4). "'The relevant regulation of the New York State Department of Labor ... provides, in pertinent part, that, 'in addition to the minimum wage,' if an employee works in excess of 10 hours in a day, '[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate.'"" Id. (quoting Chuchuca v. Creative Customs Cabinets Inc., 2014 U.S. Dist. LEXIS 164846, at *10 (E.D.N.Y. Nov. 25, 2014); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4). "Until amendments to the relevant regulations came into effect on January 1, 2011, the spread-of-hours requirement only applied to employees paid at the New York minimum wage and did not mandate any additional premiums be paid to employees whose wages exceeded that lowest permissible level of compensation." Id. (citing Yuquilema v. Manhattan's Hero Corp., 2014 U.S. Dist. LEXIS 120422, at *4 (S.D.N.Y. Aug. 26, 2014), *adopted by*, 2014 U.S. Dist. LEXIS 139061, (S.D.N.Y. Sept. 30, 2014). "The amended NYLL, however, extended spread of hours protections to 'all employees in restaurants ... regardless of a given employee's regular rate of pay.'" Id. (quoting Xochimitl v. Pita Grill of Hell's Kitchen, Inc., 2016 U.S. Dist. LEXIS 121259, at *7 (S.D.N.Y. Sept. 8, 2016); citing Andrade v. 168 First Ave Rest. Ltd., 2016 U.S. Dist. LEXIS 72678, at *16-17 (S.D.N.Y. June 3, 2016); 12 N.Y.C.R.R. § 146-1.6(d)).

Here, each Plaintiff were scheduled to work in excess of ten (10) hours each shift and are owed spread of hours pay as seen in Exhibit 20, using the least number of shifts estimated for each Plaintiff.

• Plaintiff Cardenas establishes base damages of $12,761.67

- Plaintiff Romero establishes base damages of $12,211.88

- Plaintiff Mejia establishes base damages of $4,732.00

- Plaintiff Vargas establishes base damages of $12,376.00

- Plaintiff Canas establishes base damages of $1,958.67

- Plaintiff Peralta establishes base damages of $9,446.67

- Plaintiff Garcia establishes base damages of $8,818.33

Exhibit 20.

### IV.    Defendants cannot claim a tip credit

Plaintiffs anticipate that the Defendants will claim that they are entitled to a reduction of the minimum wage amount owed to Plaintiffs based on a tip credit. That is completely baseless however as the Defendants failed to comply with the New York Labor Law requirements for taking such a tip credit. "[I]n order for a defendant employer to take advantage of the 'tip credit' under the NYLL, the defendant must comply with all of the NYLL's notice and record-keeping requirements. Marin v. Apple-Metro, Inc., 2017 U.S. Dist. LEXIS 165568, at *96 (E.D.N.Y. Oct. 4, 2017) (citing 12 N.Y.C.R.R. § 146-1.3). Since January 1, 2011, "Section 146 requires an employer to provide the employee, prior to the start of employment, with 'written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday.'" Id. (quoting 12 N.Y.C.R.R. § 146-2.2(a); citing Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 38-39 (E.D.N.Y. 2015)). "This written notice must also state 'that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate,' 12 N.Y.C.R.R. § 146-2.2(a), and must be provided in English and in 'any other language spoken by the new employee as his/her primary language.'" Id. (quoting 12 N.Y.C.R.R. § 146-2.2(a)(1)-(2)). "The employer must keep '[a]n

acknowledgment of receipt signed by the employee . . . on file for six years,' § 146-2.2(c), and may not retain any portion of an employee's tips." Id. (citing Hai Ming Lu v. Jing Fong Rest., Inc., 503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007)).

Here, no such notice was provided and Defendants claim that only a verbal notice was given, which is insufficient to claim the credit. R56, ¶¶15, 40, 54, 65, 76, 85, 90.

## V.   **Liquidated damages should be awarded under both the FLSA and NYLL**

"Under the FLSA, a plaintiff is generally entitled to liquidated damages of one hundred percent of the actual damages owed." Feuer, 2017 U.S.Dist. LEXIS 124433, at *36 (citing 29 U.S.C. § 216(b); Barfield v. New York City Health and Hosp. Corp., 537 F.3d 132, 150 (2d Cir. 2008)). "It is the employer's burden to show that liquidated damages are inappropriate because it acted in subjective 'good faith' on objectively 'reasonable grounds' that its actions were not in violation of the FLSA." Id. (quoting Barfield, 537 F.3d at 150; citing Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)). "The standard for liquidated damages under the NYLL is comparable to the FLSA, as the employer must pay liquidated damages 'unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'" Id. (quoting NYLL §§ 198, 663; citing Pineda-Herrera v. Da-Ar-Da, Inc., 2011 U.S. Dist. LEXIS 57121, *4, n.9 (E.D.N.Y. May 26, 2011); Padilla v. Manlapaz, 643 F. Supp. 2d 298, 313 n.18 (E.D.N.Y. 2009). Given Defendants' failure to provide any evidence of good faith outside of general conclusions, Plaintiffs are entitled to liquidated damages equal to their damages under both statutes. R56, ¶¶30-32.

## VI.   **Defendants failed to provide proper wage notices and wage statements**

Defendants failed to provide proper wage notices and wage statements to Plaintiffs and are liable for that failure. Under NYLL § 195(1)(a), "[e]ffective April 9, 2011, the NYLL requires that

'every employer shall provide their employees, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer a notice containing information about rates of pay.'" <u>Ortiz v. Arthur T. Mott Real Estate, LLC</u>, No. CV 15-3940 (SJF)(AYS), 2016 U.S. Dist. LEXIS 127597, at *22 (E.D.N.Y. Sep. 15, 2016) (quoting <u>Guaman v. Krill Contracting, Inc.</u>, 2015 U.S. Dist. LEXIS 74567, at *4 (E.D.N.Y. 2015); NYLL § 195(1)(a)). "Although the statute has been changed, effective December 29, 2014, to only require such notice at the time an employee is hired, the version requiring notice to be issued each February was in effect during at least part of each Plaintiff's tenure with the Defendants." <u>Id.</u> (citing <u>Guaman</u>, 2015 U.S. Dist. LEXIS 74567 n4). If this notice is not provided then the employer must pay $50.00 for each day in violation with a cap of $5,000.00. NYLL § 198(1-a). Here, more than enough days passed from when the notice should have been issued such that the full $5,000.00 is due.

Defendants also failed to provide proper wage statements as required by NYLL § 195(3). The wage statements provided failed to include the "rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other." NYLL § 195(3). This failure results in a $250.00 for each work day that the violation occurred, capped at $5,000.00. NYLL § 198(1-d). The wage statements attached show that at least the forty (40) days required to reach that cap were met and Plaintiff is due the full $5,000.00.

The wage statements, as described by Plaintiffs and admitted by Defendant D'Angelo, were not accurate, were not provided in timely fashion, did not describe the amount(s) being paid, and were used solely to calculate the amount owed in taxes by the employees. R56, ¶28.

**VII.**   <u>**Attorneys' fees, costs should be awarded**</u>

Attorneys' fees and costs are available for all violations under the FLSA and NYLL. 29 U.S.C. § 216(b); NYLL § 663(1); NYLL § 198(1-b), (1-d). Plaintiffs request judgment to include

attorneys' fees and costs as determined by the Court upon a motion by Plaintiffs, to be made following decision on this Motion.

Further, under the CPLR § 5001 Plaintiffs are entitled to prejudgment interest on all damages awarded under the NYLL. See Llolla v. Karen Gardens Apartment Corp., 2014 U.S. Dist. LEXIS 44884, at *33 (E.D.N.Y. Mar. 10, 2014). The statutory rate of interest under CPLR § 5004 of nine percent per year and should be calculated from the mid-point when damages began accruing. Id.; CPLR § 5004.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully requests that this Court grant the present Motion for Summary Judgment in its entirety and award the following damages, jointly and severally against all Defendants:

1. Awarding damages to Plaintiff for all wages owed according to the calculations contained in Exhibits 19 and 20, totaling $342,663.21 for minimum wage and overtime violations and $61,305.22 for spread of hours violations;

2. Awarding notice penalties in the amount of $10,000 to each Plaintiff:

3. Awarding liquated damages to Plaintiffs in the amount of $342,663.21 for Defendants' minimum wage and overtime violations and $61,305.22 for Defendants' spread of hours violations;

4. Awarding interest on all awards at 9% interest from the median date of each Plaintiffs' employment to be calculated by the Clerk;

5. Awarding attorneys' fees and costs to be determined upon a motion by Plaintiffs' counsel; and,

6.   Awarding what other just relief the Court deems appropriate.

Dated:  Astoria, New York
         October 5, 2020

**THE ROSE LAW GROUP PLLC**

 _/s/Jesse C. Rose_____
Jesse C. Rose, Esq.
*Attorney for Plaintiff*
The Rose Law Group PLLC
31-09 Newtown Ave.; Suite 309
Astoria, NY 11102
Tel: (718)-989-1864

Emiliano Perez, Esq.
Law Office of Emiliano Perez
7827 37th Avenue, Ste 4
Jackson Heights, NY 11372
Tel: (718) 440-9214
