February 4, 2020

## Page 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
JHON E. CARDENAS, CESAR A. ROMERO, and
JOSE DAVID PEREZ MEJIA, on behalf of
Themselves and others similarly situated,

Plaintiff,

-against-

EDITA'S BAR & RESTAURANT, INC. d/b/a
FLAMINGO RESTAURANT AND LOUNGE, DOLL'S
REST INC. d/b/a DOLL'S and EDITH F.
VALDIVIA a/k/a EDITH F. D'ANGELO,
Defendants.
----------------------------------------x

EXAMINATION BEFORE TRIAL of the Defendant,
EDITH D'ANGELO taken by the Plaintiffs, pursuant to
Court Order, held at the offices of Rose Law Group,
PLLC, 31-09 Newtown Avenue, Suite 309, Astoria, New
York 11102, on February 4, 2020, at 10:15 a.m.,
before a Notary Public of the State of New York.

## Page 2

1
2   A P P E A R A N C E S :
3   ROSE LAW GROUP, PLLC
        Attorneys for Plaintiffs
4       31-09 Newtown Avenue, Suite 309
        Astoria, New York 11102
5
    BY:  JESSE ROSE, ESQ.
6
7
    EMILIANO PEREZ ATTORNEY AT LAW
8       Attorneys for Plaintiffs
        37-28 75th Street, Suite 1D
9       Jackson Heights, New York 11372
10
    RICOTTA & MARKS, P.C.
11      Attorneys for Defendants
        31-10 37th Avenue, Suite 401
12      Long Island City, New York 11101
13
    BY:   MATTHEW MARKS, ESQ.
14
15
    ALSO PRESENT:
16
    ROY ALBERTI, SPANISH INTERPRETER, EIBER TRANSLATIONS
17
18
19
20
21
22
23
24
25

## Page 3

1
2   S T I P U L A T I O N S :
3   IT IS STIPULATED AND AGREED by and between the
    attorneys for the respective parties herein, and in
4   compliance with Rule 221 of the Uniform Rules for
    the Trial Courts:
5
    THAT the parties recognize the provision of Rule
6   3115 subdivisions (b), (c) and/or (d).  All
    objections made at a deposition shall be noted by
7   the officer before whom the deposition is taken, and
    the answer shall be given and the deposition shall
8   proceed subject to the objections and to the right
    of a person to apply for appropriate relief pursuant
9   to Article 31 of the CPLR;
10  THAT every objection raised during a deposition
    shall be stated succinctly and framed so as not to
11  suggest an answer to the deponent and, at the
    request of the questioning attorney, shall include a
12  clear statement as to any defect in form or other
    basis of error or irregularity. Except to the extent
13  permitted by CPLR Rule 3115 or by this rule, during
    the course of the examination persons in attendance
14  shall not make statements or comments that interfere
    with the questioning.
15
    THAT a deponent shall answer all questions at a
16  deposition, except (i) to preserve a privilege or
    right of confidentiality, (ii) to enforce a
17  limitation set forth in an order of a court, or
    (iii) when the question is plainly improper and
18  would, if answered, cause significant prejudice to
    any person. An attorney shall not direct a deponent
19  not to answer except as provided in CPLR Rule 3115
    or this subdivision. Any refusal to answer or
20  direction not to answer shall be accompanied by a
    succinct and clear statement on the basis therefore.
21  If the deponent does not answer a question, the
    examining party shall have the right to complete the
22  remainder of the deposition.
23  THAT an attorney shall not interrupt the deposition
    for the purpose of communicating
24
    with the deponent unless all parties consent or the
25  communication is made for the purpose of determining

## Page 4

1
2   whether the question should not be answered on the
    grounds set forth in Section 221.2 of these rules,
3   and, in such event, the reason for the communication
    shall be stated for the record succinctly and
4   clearly.
5   THAT the failure to object to any question or to
    move to strike any testimony at this examination
6   shall not be a bar or waiver to make such objection
    or motion at the time of the trial of this action,
7   and is hereby reserved; and
8   THAT this examination may be signed and sworn to by
    the witness examined herein before any Notary
9   Public, but the failure to do so or to return the
    original of the examination to the attorney on whose
10  behalf the examination is taken, shall not be deemed
    a waiver of the rights provided by Rule 3116 and
11  3117 of the CPLR, and shall be controlled thereby;
    and
12
    THAT the certification and filing of the original of
13  this examination are hereby waived; and
    THAT the questioning attorney shall provide counsel
14  for the witness examined herein with a copy of this
15  examination at no charge.
16
17
18
19
20
21
22
23
24
25

1 (Pages 1 to 4)

February 4, 2020

## Page 5

1
2      R O Y   A L B E R T I, called as the interpreter in
3  this matter, was duly sworn by a Notary Public of
4  the State of New York to accurately and faithfully
5  translate the questions propounded to the witness
6  from English into Spanish and the answers given by
7  the witness from Spanish into English.
8                          -oOo-
9      E D I T H   D ' A N G E L O, the witness herein,
10  having been first duly sworn by a Notary Public of
11  the State of New York, was examined and testified
12  through the interpreter as follows:
13  EXAMINATION BY
14  MR. ROSE:
15    Q.    State your name for the record, please.
16    A.    Edith D'Angelo.
17    Q.    State your address for the record, please.
18    A.    14 Garfield Place, Roslyn Heights, New York
19  11577.
20    Q.    Good morning.
21    A.    Good morning.
22    Q.    If you recall, we had a deposition a couple
23  months ago.
24    A.    Yes.
25    Q.    Do you remember all of the same rules that

## Page 6

E. D'ANGELO

1
2  we used then as far as how I'm going to ask
3  questions and the interpreter will be speaking to
4  you directly?
5    A.    Yes.
6    Q.    And that you have to give verbal responses,
7  something that can be transcribed, so later on you
8  know exactly what you meant to say.
9    A.    Yes.
10    Q.    And that you should be responding to what
11  the interpreter says and not what I say.
12    A.    Yes.
13    Q.    Is there any reason you cannot testify
14  truthfully today?
15    A.    No.
16    Q.    Are you on any medication that will affect
17  your memory?
18    A.    No.
19    Q.    Have you taken any narcotics or alcohol in
20  the last 24 hours?
21    A.    No.
22    Q.    Ms. D'Angelo, if you recall the last time
23  you were here, we talked about the reasons that you
24  paid employees the rate that you paid them.
25    A.    Yes.

## Page 7

E. D'ANGELO

1
2    Q.    And you had told me that there was an
3  accountant who instructed you on how to pay them and
4  how much to pay them; do you remember that?
5    A.    No, I don't say that.
6    Q.    What did you say then?
7    A.    You asked if I knew about raises.  How did I
8  know?  So I told them I would find out by watching
9  television because the government never sends me
10  anything and on certain occasions I asked -- not the
11  lawyer, the accountants.
12    Q.    And we asked you to identify after that
13  deposition which accountant was telling you.
14    A.    The accountants that I've had.
15    Q.    Then your lawyer told me last week that you
16  did not actually receive that information from an
17  accountant; is that still true?
18    A.    What I told my lawyer is that I have nothing
19  written, nothing was ever sent to me.  Sometimes
20  talking.
21    Q.    Which accountants?
22    A.    Whichever one I had.
23    Q.    We asked you to identify which one you had
24  that told you that information and we were told that
25  you would know.

## Page 8

E. D'ANGELO

1
2    A.    What information?  What year?
3    Q.    All of the information you got for any year
4  you got it.
5    A.    The last one I had asked last year in
6  January how much is supposed to be paid.  I asked
7  over the telephone and he told me a certain amount.
8    Q.    Who was that person?
9    A.    Mr. Fibos.
10    Q.    Do you have contact information for Mr.
11  Fibos?
12    A.    I don't understand.
13    Q.    You don't know what contact information is?
14    A.    I don't understand.
15    Q.    How do you contact Mr. Fibos?
16    A.    I call him.
17    Q.    What's his telephone phone number?
18    A.    I sent the number.
19        MR. ROSE:  Let's take a quick break.
20        (Whereupon, a recess was taken at
21  this time.)
22    Q.    Mr. Fibos is currently your accountant?
23    A.    Yes.
24    Q.    For how long has he been your accountant?
25    A.    Like three years.

2 (Pages 5 to 8)

February 4, 2020

## Page 9

E. D'ANGELO

1
2  Q.   Is he the accountant for both Doll's and
3  Flamingo?
4  A.   Yes.
5  Q.   For the last three years?
6  A.   Yes.
7  Q.   And you called Mr. Fibos last year to ask
8  how much you are supposed to pay employees?
9  A.   Yes, to be sure.
10 Q.   When?
11 A.   It was December or January, something like
12 that.
13 Q.   So within the last two months?
14 A.   Not this year.
15 Q.   Last year?
16 A.   Yes.
17 Q.   What about the year before that in 2018?
18 A.   I testified last time that I look on the
19 internet and wanted to know what site it was.  I
20 would look and I gave it to my lawyer to send to
21 him.
22       MR. ROSE:  Okay.  We'll ask you to
23       produce whatever information that is.
24       MR. MARKS:  Okay.
25 Q.   But my question is in 2018, did you ask your

## Page 10

E. D'ANGELO

1
2  accountant how much you were supposed to pay your
3  employees?
4  A.   I don't remember, but I don't think so.
5  Q.   What about 2017?
6  A.   Like I said, I would look on the internet.
7  Q.   But my question is, did you ask your
8  accountant in 2017?
9  A.   I don't remember.  I don't think so.
10 Q.   What about 2016?
11 A.   I can't remember that.  I can't remember.
12 Q.   Who was your accountant in 2016?
13 A.   In 2016, I don't remember the name, but I
14 sent everything to my lawyer.
15 Q.   Do you remember speaking to an accountant in
16 2016 about what the minimum wage was?
17 A.   I don't remember.
18 Q.   2015?
19 A.   I must have talked, but I don't remember
20 exact dates.
21 Q.   Who did you speak to about it?
22 A.   Who did I speak to?  I almost always see it
23 on the internet.
24 Q.   But you don't speak to someone on the
25 internet.

## Page 11

E. D'ANGELO

1
2  A.   On the internet?
3  Q.   Yeah.  I'm saying what accountant did you
4  speak to about the minimum wage in 2015?
5  A.   I don't remember.
6  Q.   Did you speak to an accountant about the
7  minimum wage?
8  A.   I don't remember.
9  Q.   What about 2014?
10 A.   I don't remember.
11 Q.   Are you claiming in this case that an
12 accountant told you how much to pay employees and
13 that's why you paid them that much?
14 A.   What I said last time is that I would look
15 on the internet for changes.  Sometimes you would
16 see it on TV, and I also asked my accountant.
17 Q.   You said that you asked your accountant?
18 A.   Yes, a few times but not -- I don't remember
19 dates.
20 Q.   But I'm asking you which accountant you
21 spoke to?
22 A.   I had three accountants.  One was Mr. Colon,
23 I gave him all my information, the address.  That
24 was the first thing.  Peter Colon -- no, Mr. Colon,
25 not Peter.  The last name was Colon.  He had cancer.

## Page 12

E. D'ANGELO

1
2  He was my accountant for many years.  I started this
3  business in 1983 and he has been my accountant since
4  then.  He got cancer, so I changed him for a firm
5  that provided an accountant for me.  His name was
6  Walter.  I don't remember the last name, but it was
7  the firm I would go to but right now, I don't
8  remember the firm.  The firm went out of business.
9  That was an inherited firm.  So he went broke, so I
10 got Mr. Fibos.
11 Q.   You got Mr. Fibos in about 2016?
12 A.   Yes, around '16, 2017.
13 Q.   When did you go from Mr. Colon to Walter?
14 A.   It was like in 2013.
15       MR. ROSE:  We are going to call for
16       the full identification of these people and
17       we'll follow up in writing.
18       MR. MARKS:  Follow up in writing.
19 Q.   You said that you found the internet site
20 that you had looked at to determine what
21 the minimum wage was?
22 A.   Yes, and those papers were also sent.
23 Q.   To who?
24 A.   I gave it to my attorney.
25       MR. ROSE:  We are going to call for

3 (Pages 9 to 12)

February 4, 2020

Page 13

E. D'ANGELO

1
2    production of this.  Can we take a break and
3    see if you have these documents?
4            MR. MARKS:  What documents?
5            MR. ROSE:  The documents she pulled
6    from the internet to see the minimum wage.
7            MR. MARKS:  I spoke to my partner
8    who is handling the case and he advised me
9    he is unaware of these documents.
10           MR. ROSE:  Can we take a break so
11   you can talk to your client so we can figure
12   out if these documents are somewhere because
13   I don't want to have a fourth deposition.
14   Off the record.
15           (Whereupon, a recess was taken at
16   this time.)
17   Q.    Ms. D'Angelo, the last time we are here we
18   spoke at length about the documents that are
19   maintained by your office relating to the
20   Plaintiff's.
21   A.    Yes.
22   Q.    And you had produced a number of new
23   documents relating to Mr. Cardenas?
24   A.    Yes.
25   Q.    Why were these documents not produced

Page 14

E. D'ANGELO

1
2    earlier?
3    A.    The office has a lot of papers.
4    Q.    Who looked for them the first time?
5    A.    I did.
6    Q.    How did you find these the second time but
7    not the first time?
8    A.    There's lot of papers at the office.
9    Q.    How many federal lawsuits do you have
10   pending against you?
11   A.    None, this one.
12           MR. ROSE:  Let's mark these.
13           (Whereupon, a notice was marked as
14   Plaintiffs' Exhibit 18 for identification,
15   as of this date.)
16           (Whereupon, a list of rules was
17   marked as Plaintiffs' Exhibit 19 for
18   identification, as of this date.)
19           (Whereupon, an application was
20   marked as Plaintiffs' Exhibit 20 for
21   identification, as of this date.)
22   Q.    Giving you what's marked as Plaintiffs'
23   Exhibit 18, can you tell me what this is?
24   A.    A notice for the employee.  All the stuff
25   that they do bad and did a lot of bad things with

Page 15

E. D'ANGELO

1
2    business.
3    Q.    Is there anywhere on here that says that he
4    stole from you?
5    A.    Let me read.  No, but that they steal from
6    the customer.
7    Q.    But you don't claim in here that he stole
8    from you?
9    A.    He was stealing.  This is overcharging the
10   customer.
11           THE INTERPRETER:  And she said
12   something I didn't catch.
13   A.    He would sell small cups of water to the
14   dancers that's robbing me and robbing the customer.
15   Q.    As part of this lawsuit, you claimed that he
16   was just stealing from you, right?
17   A.    Also the customers.
18   Q.    But nowhere in this document, which I
19   believe is the only disciplinary notice you produced
20   in this case, did you say he was stealing from you.
21   A.    I don't think I have that here.
22           MR. ROSE:  That's Bates stamped
23   2080.
24   Q.    I'll take that back.
25   A.    One minute.

Page 16

E. D'ANGELO

1
2    Q.    No, give it back.  I'll give you Plaintiffs'
3    Exhibit 19.
4    A.    Can I see it?
5    Q.    Yes.  These are documents that were produced
6    after the last deposition Bates stamped 2089 to
7    2102.  Can you look at the first page of this
8    document and it goes for five pages, can you tell me
9    what this is?
10   A.    They are rules.
11   Q.    Did you distribute these rules to every
12   employee?
13   A.    With the waiters and barmaids.
14   Q.    Why is it that we don't have one of these
15   for every one of the Plaintiff's?
16   A.    Yes, they have it.
17   Q.    Where?
18   A.    I must have sent them.  They all have it.
19   Q.    Is this a set of rules that was applicable
20   to both Doll's and Flamingo's?
21   A.    Yes.
22   Q.    You only had one set of rules for both
23   restaurants, right?
24   A.    Yes, the same.
25   Q.    Did you have them sign two different copies

4 (Pages 13 to 16)

Page 17

E. D'ANGELO

1  E. D'ANGELO
2  for each restaurant or just one for both?
3  A.    I had to sign one but sometimes two.  Some
4  two.
5  Q.    But Mr. Cardenas, you only him sign one for
6  both restaurants, right?
7  A.    Well, here it doesn't say what company it
8  is.
9  Q.    So that's why I'm asking you and you told me
10  that it's for both restaurants, right?
11  A.    These are the general rules.  It's not
12  specific.
13  Q.    Because it's for both, right?
14  A.    Yes, it's for both but it's not specified
15  which one it is.
16  Q.    Could you look at page 2098?
17  A.    Which one is that?
18  Q.    At the bottom, 2098?
19  A.    This one?
20  Q.    Yes.  Can you tell me what this document is?
21  A.    The taxes I paid for them.
22  Q.    You mean the employer's side taxes?
23        MR. MARKS:  Objection.
24  A.    I don't understand.
25  Q.    These are the taxes you are required to pay

Page 18

E. D'ANGELO

1  E. D'ANGELO
2  to the government on behalf of employees, right?
3  A.    No, these are the taxes the employees have
4  to pay the government.
5  Q.    But where is the W2 form that describes
6  these payments?
7  A.    I give them their W2.
8  Q.    So if we look at the W2 it will say that you
9  pay $397.34 for the year of 2015 on behalf of Mr.
10  Cardenas?
11  A.    Yes.
12  Q.    And that's all you paid on his behalf to the
13  government?
14        MR. MARKS:  Objection to form.
15  A.    There's another one here (indicating).
16  Q.    Why did you pay two?
17  A.    Ones Flamingo, the other one is Doll's.
18  Q.    Did you prepare these documents at the same
19  time?
20  A.    No.
21  Q.    But they are signed on the same day, right?
22  A.    No, they are not the signed same day.
23  Q.    Well, the date on them says February 2017?
24  A.    Yes, they signed it because they owed me.
25  Q.    They owed you what?

Page 19

E. D'ANGELO

1  E. D'ANGELO
2  A.    That money, they never paid it, they owe.
3  Q.    They owe you what?
4  A.    This money.  They owe me a 1,107 for the
5  year 2016.  At Flamingo, they owe me from 2016,
6  1,831 and 2015 Doll's owes me -- no, I gave it to
7  them.  If it's here, then I gave it to them.  I gave
8  it as a gift.
9  Q.    Please testify in Spanish.
10  A.    Here it says I gave it as a gift.  See, last
11  year?
12  Q.    I understand you say it's a gift, but this
13  money was paid to the government on behalf of the
14  employer, right?
15  A.    I paid for it.
16  Q.    As their employer?
17  A.    No, I paid my part as an employer, but I
18  also paid for their part.
19  Q.    Where are the records that show that you
20  were supposed to pay the government on their behalf?
21  A.    On the W2's and they sign because they know
22  they owed me.
23  Q.    And you did all four of these documents on
24  the same day, on February 17, 2017?
25  A.    This doesn't say when they would pay me, so

Page 20

E. D'ANGELO

1  E. D'ANGELO
2  I decide to give it to them.  I also have -- one
3  owes me from 2017.  I don't know why it's not here,
4  but he did sign it, but he owes me.
5  Q.    Who?
6  A.    John Cardenas.  Only John Cardenas owes me
7  right now and Cesar Romero.
8  Q.    Owes you what?
9  A.    Money.
10  Q.    For what?
11  A.    For taxes they were supposed to pay, but I
12  paid for them.
13  Q.    Where are the records to show what money
14  they owe you for taxes?
15  A.    This is one of them (indicating).
16  Q.    These documents that we were just looking at
17  don't include the calculations on why you are
18  claiming these amounts.
19  A.    If it's signed, it's because they know they
20  owe me.
21        MR. MARKS:  Listen to his question
22        and answer his question.
23  Q.    How did you get to the numbers that are
24  described in those documents?
25  A.    Because of the receipts.  Every check says

February 4, 2020

Page 21

E. D'ANGELO

1  the amount of tax that the employer pays the
2  employee. The employee has to pay and add it and I
3  do it in front of them and they know that's the
4  amount.
5     Q.   But where do you get the numbers from?
6     A.   From their checks.
7     Q.   Is there a system somewhere where you are
8  keeping track of how much employees owe you?
9     A.   At that time, I had a lot of problems, I
10 said the last time. They wouldn't fill out the tip
11 cards. So in order not to have any problems, I
12 would pay them daily. I would make the checks when
13 they would give me the cardboard. Their cards that
14 you fill up tips with, but if they don't give me
15 those boxes, I can't make the check. I'm talking
16 about the waiters and barmaids, when they would give
17 them to me, I would do it, but I already paid them
18 daily their income. I have given you a lot of proof
19 that I paid their salary and their complete salary
20 without discounting taxes, and then when I do the
21 checks, there would see, and I would say "You owe me
22 this" and "You owe me that for taxes." They had to
23 pay me. They asked with money when you report the
24 money the taxes with the W2 they receive money back

Page 22

E. D'ANGELO

1  many times they would wait for that money to can
2  sell.
3     Q.   When you filed your taxes, did you report
4  all of the revenue that you actually received from
5  the restaurants?
6     A.   Of course.
7          MR. ROSE: Call for the production
8      for taxes for all relevant years and follow
9      up in writing.
10         MR. MARKS: Taken under advisement.
11    Q.   Were the numbers you had on the taxes
12 different than the numbers you had in your
13 QuickBooks files?
14    A.   I don't understand.
15    Q.   You produced four spreadsheets, four
16 documents containing the numbers showing how much
17 money everybody made. Are those numbers the same
18 numbers that would be reflected in the tax returns
19 that you filed?
20    A.   Of course the accountant asked for that.
21 Whatever comes out of the computer, I give to him.
22    Q.   I'm going to ask you to look at the last
23 page of this document. Can you tell me what this
24 is?

Page 23

E. D'ANGELO

1     A.   This was presented by John Cardenas. It's a
2  resignation.
3     Q.   Does he say why he's resigning?
4     A.   I'm reading.
5          MR. ROSE: You can't read it.
6          THE INTERPRETER: Sorry.
7     A.   I don't understand why he's resigning. It
8  says the circumstances with the work environment,
9  the administration. Different optics are enough to
10 opt for what had manifested. There were times when
11 I had support with respect to -- I expressed my
12 gratitude. That's what it says.
13    Q.   Can you turn back to the first page of the
14 document. Do you see in the second paragraph where
15 it says "Entrada?"
16    A.   Yes.
17    Q.   Could you read that sentence for me?
18    A.   Entering your place of work, it's supposed
19 to be five minutes before according to your
20 schedule, put the finger in the registration machine
21 to punch the time in and out.
22    Q.   Did the time clock in, clock out system
23 always work?
24    A.   It was installed in 2008 and it broke -- I

Page 24

E. D'ANGELO

1  think it was 2013 that it broke.
2     Q.   So this document we are looking at now was
3  signed in 2017 according to page 2093. Why does
4  this document still tell them to clock in if there's
5  no way to clock in?
6     A.   Because the machine didn't work, there was
7  no way to get this out from the machine. We started
8  paying daily.
9     Q.   So you just paid the same amount for the
10 shift?
11    A.   Hourly.
12    Q.   Who kept track of the hours?
13    A.   The one in charge that day. He's the
14 coordinator. He would see how many hours he would
15 work and he would pay according to the hours daily.
16    Q.   Who kept track of that?
17    A.   Who kept track of the schedule?
18    Q.   Who kept track of how many hours everybody
19 worked?
20    A.   It was daily that it was paid. We didn't
21 have to track hours. The one in charge would be
22 there since the business opened and when they came
23 in.
24    Q.   Did they write that down?

6 (Pages 21 to 24)

DEITZ Court Reporting... A Lexitas Company
800-678-0166

Page 25

E. D'ANGELO

1
2    A.    Yeah.
3    Q.    Where?
4    A.    Regular paper and at the end, he would put
5    it with the receipts -- the receipts I would give
6    them.  Many of them you have.  It says the hour they
7    go in and the hour they finished.
8    Q.    Other than those receipts, is there any
9    other record?
10          MR. MARKS:  Objection.
11   A.    No.  You want me to finish reading this?
12   Q.    No.  If you look at paragraph 3, does this
13   say you will pay an extra $10 if they clean?
14   A.    Yes.  They are always paid 10, but if they
15   clean extra Friday, Saturday, Sunday gets dirtier,
16   so we give 10 more.
17   Q.    What do you mean they were always paid 10?
18   A.    With regards to work, they would get 10,
19   aside from their salary.
20   Q.    You would pay everyone $10 per what?
21   A.    To fix the whole area, to sweep, to clean
22   the table.
23   Q.    You are not claiming you paid them $10 an
24   hour?
25   A.    No.  They don't get tips for that hour, so

Page 26

E. D'ANGELO

1
2    they would get 10.
3    Q.    Is there anything in this document that
4    describes that people are going to get paid less per
5    hour because they collect tips, either in this
6    document from 2089 to 2083 or the next document that
7    goes 2084 to 2097?
8    A.    I'm not understanding.
9          THE WITNESS:  I'm not understanding
10   everything he's saying.
11   Q.    Is there anything in those two documents
12   that tells employees who are tipped that they are
13   getting less per hour because they are tipped
14   employees?
15   A.    This is a rule for companies.  It doesn't
16   say the amount of pay or anything like that.
17   Q.    Is there any document that you distributed
18   to employees that told them they would get less per
19   hour if they get tips?
20   A.    No, people that work for tips get paid less.
21   Q.    Did you ever tell them in writing anywhere
22   what they were going to get paid per hour?
23   A.    Written down?  No.
24   Q.    I'm going to give you what's been marked as
25   Plaintiffs' Exhibit 20.  Can you tell me what this

Page 27

E. D'ANGELO

1
2    document is?
3    A.    This was an application to work.
4    Q.    Was this application for Doll's or for
5    Flamingo?
6    A.    The applications are always done in
7    Flamingo.
8          MR. ROSE:  For the record, pages
9    2074 and 2075.
10   Q.    They were done at Flamingo but you used
11   these application for both locations, right?
12   A.    It's not that I used both places.  When they
13   come to work, I tell them I have another business
14   and perhaps they also have to work there one day.
15   Q.    That's part of the job with Flamingo, right?
16   A.    Yes.
17          MR. MARKS:  Before you begin, I just
18   want to let you know I do have those
19   documents.
20          MR. ROSE:  Okay.  We'll take a
21   break.
22          MR. MARKS:  Briefly for the record,
23   I'm going to forward them to you, I'm not
24   waiving any attorney/client privilege for
25   any documents other than these.

Page 28

E. D'ANGELO

1
2          MR. ROSE:  I understand.  All right.
3    Let's mark these.
4          (Whereupon, a spreadsheet was marked
5    as Plaintiffs' Exhibit 21 for
6    identification, as of this date.)
7          (Whereupon, a wage rates document
8    was marked as Plaintiffs' Exhibit 22 for
9    identification, as of this date.)
10         (Whereupon, an employee earning
11   summary was marked as Plaintiffs' Exhibit 23
12   for identification, as of this date.)
13         (Whereupon, an Excel spreadsheet was
14   marked as Plaintiffs' Exhibit 24 for
15   identification, as of this date.)
16   Q.    Please take a look at that document and tell
17   me if you have ever seen it before?
18   A.    Not in this format.  I imagine my lawyer did
19   it.
20   Q.    I'll represent to you that this was produced
21   by your office, then your lawyer produced it to me
22   after removing the information that was not relevant
23   to the case.
24   A.    Fine.
25   Q.    Do you have any idea what this information

Page 29

E. D'ANGELO

1
2  means?
3      A.   These are the checks.
4      Q.   This seems to be a summary of how much was
5  paid to someone for Alejandro Vargas on the first
6  page and then Cesar Romero on the fourth page,
7  Christi Tavara; do you see that?
8      A.   Yes, I'm looking.
9      Q.   Do you have any idea what all this
10 information means?
11     A.   This was the computer.  These are the
12 payments.
13     Q.   Do you see where it says "Rate" and it says
14 the regular rate is $7.50?
15     A.   Yes.
16     Q.   Was that the rate Mr. Vargas was paid
17 throughout his employment?
18     A.   I don't know.  That depends on the year.  I
19 don't understand this format.
20     Q.   I don't either.  That's why I'm asking if
21 you can explain.
22     A.   I produced a different format and you wanted
23 it like this.  I don't understand this.
24     Q.   You produced four spreadsheets and this is
25 one of them.  I'm asking if you can explain them.

Page 30

E. D'ANGELO

1
2      A.   Not me.  My lawyer got it from the computer.
3      Q.   I'm going to hand you what's been marked as
4  Plaintiffs' Exhibit 22.  Do you recognize these
5  documents?
6      A.   I imagine this is from the computer.  This
7  came from their payments.
8      Q.   Did you always maintain in the computer what
9  hourly rate employees were getting paid?
10     A.   Yes.
11     Q.   So these are all the changes that were made
12 to their pay over the course of time they worked
13 there; is that correct?
14     A.   If it came out of the computer and it's put
15 here, it should be correct.
16     Q.   Are you aware if the rates that are
17 described in this document are the correct rates
18 under the law?
19     A.   I suppose.
20     Q.   If you look, it says Mr. Vargas was getting
21 paid $5 an hour until April of 2016, is that what
22 that indicates?
23     A.   It says that here (indicating).
24     Q.   And then he got $7.50 an hour until the end
25 of his employment, right?

Page 31

E. D'ANGELO

1
2      A.   I can't say it's correct, because I don't
3  understand.  It says 7.50, but it doesn't have a
4  date.
5      Q.   It says on the left "April 2016."  Check
6  under the pay period and paycheck date.
7      A.   I don't understand spreadsheets.
8      Q.   How long did Mr. Vargas work at your
9  restaurants?
10     A.   I don't remember exactly.
11     Q.   So the top of this says Edita's Bar and
12 Restaurant, Inc.?
13     A.   Correct.
14     Q.   Is there another spreadsheet for Doll's or
15 is everything included in one?
16     A.   Every business has it's own payment.
17     Q.   Are you going to produce the Doll's
18 spreadsheets?
19     A.   I gave it to you.  I gave you the sheets but
20 not a spreadsheet.  I gave all the sheets that came
21 out of the computer, check by check.  It was an
22 amount like this, but you wanted it in a spreadsheet
23 (indicating).
24          MS. ROSE:  Off the record.
25          (Whereupon, a discussion was held

Page 32

E. D'ANGELO

1
2  off the record.)
3      Q.   Ms. D'Angelo, do you know if there's a
4  separate record for the hourly rates that employees
5  were paid from Doll's as opposed to Flamingo?
6      A.   I don't understand the question.
7      Q.   This record that we are looking at,
8  Plaintiffs' 22, seems to indicate when the hourly
9  rate changed for each employee; is that your
10 understanding as well?
11     A.   Yes.
12     Q.   Is there any other change in payment that
13 any of the plaintiffs received other than what's in
14 this document?
15     A.   The extra payment of $10 that was given to
16 them in cash.
17     Q.   So if you look at this, for all of the
18 plaintiff's who were working in 2016, they all had
19 their pay changed from $5 an hour to 7.50 an hour on
20 April 11, 2016.  Can you tell me why you made the
21 change in April 2016?
22     A.   Because it changed at that time.
23     Q.   But after that, you didn't change their rate
24 of pay in January of 2017; did you?
25     A.   It doesn't say 2017.

8 (Pages 29 to 32)

Page 33

E. D'ANGELO

1
2    Q.    These are all the records that you have,
3    according to your production, and if you look in the
4    upper left, it was printed in January of 2020.  So
5    can you tell me if you made a change to the rate of
6    pay in January 2017?
7    A.    Yes.
8    Q.    What did you change?
9    A.    What it was.  I don't remember the year, but
10   it always change according to how the raises go.
11   Q.    Do you have any records that show that you
12   paid any of these plaintiffs more than 7.50 an hour
13   in 2017?
14   A.    I sent you a stack of papers like this that
15   was each check that was given to them from 2009
16   since you asked for it until 2018.  All the checks,
17   one by one, was printed and you have the copy there.
18   It's a stack like this, a big one, like 12
19   centimeters, maybe more (indicating).
20   Q.    Do you think that those records show that
21   the plaintiffs were paid more than 7.50 an hour?
22   A.    When it was raised, they were paid more.  It
23   was 8-something.  I don't remember exactly the
24   amount when the next raise.
25   Q.    But for some reason, it wasn't put into the

Page 34

E. D'ANGELO

1
2    QuickBooks?
3    A.    I see here it's only until 2016.  You have
4    the papers one by one.
5    Q.    And you believe that those records are going
6    to show that the Plaintiffs were paid more than
7    7.50 an hour?
8          MR. MARKS:  Objection to form.
9    A.    You have that.
10   Q.    Are you claiming as part of this lawsuit
11   that you provided a notice to employees that they
12   were getting paid less than the minimum wage?
13   A.    What?
14   Q.    Are you claiming that you provided a notice
15   that they would get paid less than the minimum wage
16   because they were tipped employees?
17   A.    Yes.
18   Q.    Where is that notice?
19   A.    It was oral.
20   Q.    When did you tell them?
21   A.    When they get hired.
22   Q.    Do you have any records relating to that?
23   A.    It was oral.
24   Q.    Is the QuickBooks only way that you keep
25   records?

Page 35

E. D'ANGELO

1
2    A.    Record of what?
3    Q.    Records relating to the number of hours
4    worked and how much employees were paid?
5    A.    No, those receipts that I give also.  It
6    says the time they start and the time they end and
7    get paid daily.
8    Q.    Wasn't that information entered into
9    QuickBooks?
10   A.    No, it was when it was with the finger --
11   when they would clock with the finger.  That's
12   when it would it would go to the computer.
13   Q.    Do you have any records showing when people
14   clocked in and clocked out through the fingerprint
15   system?
16   A.    I sent you all that.
17   Q.    You sent me everything you have, right?
18   A.    Yes.
19   Q.    I'm going to give you Plaintiffs' Exhibit
20   23.  This is called the Employee Earning Summary.
21   A.    I'm sorry, but I can't see anything here.
22   Q.    Do you need me to print it in larger font?
23   A.    Please.  I can't see.
24   Q.    Do you know if the earning summary that was
25   produced was for the entire time that they worked

Page 36

E. D'ANGELO

1
2    there?
3    A.    I don't understand.
4    Q.    Have you reviewed the documents that you
5    produced in this case?
6    A.    When I gave you all the stack of checks,
7    yes.  This?  No (indicating).
8    Q.    So you don't know what this means?
9    A.    I put the same thing on Excel.
10   Q.    Who else would be able to testify about what
11   these numbers mean?
12   A.    I don't understand.  The lawyer that put
13   them like that on Excel.
14   Q.    Did the lawyer maintain your QuickBooks for
15   you?
16   A.    No, I did.
17   Q.    So do you understand what these numbers
18   mean?
19   A.    Yes, they are the payments of the employees,
20   the money they were paid.
21   Q.    So do you know if the earning summary that
22   you produced was for the whole time they worked
23   there or less than the whole time?
24   A.    That's done yearly.
25   Q.    But your records show that it was not done

9  (Pages 33 to 36)

February 4, 2020

Page 37

E. D'ANGELO

1
2    yearly. I'm giving you Plaintiffs' 24, which is the
3    first five pages of a 1,736 page Excel sheet.
4    A.    I don't understand.
5    Q.    You produced a spreadsheet that if I printed
6    it in it's entirety, it would be 1,736 pages in the
7    same format that you are looking at now and it shows
8    on a weekly basis how much somebody was paid; do you
9    see that?
10   A.    Yes, the checks are weekly.
11   Q.    Are there any other records, other than what
12   you produced for the payroll detail review and the
13   hand written notes, that describe how many hours
14   people worked?
15   A.    I don't understand.  Tell me again.
16   Q.    Are you saying that the information was only
17   put in QuickBooks once a year?
18   A.    No.
19   Q.    How often was it put into QuickBooks?
20   A.    The payments of the employees?
21   Q.    Yes.
22   A.    Every two weeks, every four weeks.
23   Q.    Do you know when Mr. Vargas stopped working,
24   what year?
25   A.    I don't remember exactly.

Page 38

E. D'ANGELO

1
2    Q.    Was it in the 2017?
3    A.    The last check was this year.  That's how it
4    was.
5    Q.    Do you see where it says "User edit?"
6    A.    Where is it (indicating)?
7    Q.    It's one of the headings.  Do you know what
8    that means?
9    A.    Users edit?
10   Q.    Yes.
11   A.    No.
12         MR. ROSE:  Off the record.
13         (Whereupon, a discussion was held
14   off the record.)
15         (Whereupon, an article was marked as
16   Plaintiffs' Exhibit 25 for identification,
17   as of this date.)
18         (Whereupon, a labor law document was
19   marked as Plaintiffs' Exhibit 26 for
20   identification, as of this date.)
21         (Whereupon, Cesar Romero's pay
22   records was marked as Plaintiffs' Exhibit 27
23   for identification, as of this date.)
24   Q.    I'm handing you what's been marked as
25   Plaintiffs' 25.  These were the documents that were

Page 39

E. D'ANGELO

1
2    e-mailed to me by your counsel that you claimed were
3    the internet sources that told you to change the
4    amount to pay your employees; is that correct.
5    A.    Yes.
6    Q.    The first two pages are from 2008; is that
7    correct?
8    A.    Yes.
9    Q.    Where did you maintain these two pages?
10   A.    They were in the office.
11   Q.    The next date that we have is December 5,
12   2017 to increase on December 31, 2017; do you see
13   that?
14   A.    No.
15   Q.    The third page of the document.  These are
16   not Bates stamped.
17   A.    Yes.
18   Q.    It's an article that says New York State
19   wage will increase in December 31, 2017?
20   A.    Yes, correct.
21   Q.    Now, your claim is that you printed this
22   when?
23   A.    It was in the office.  I can't remember
24   when.  I can't remember when it was printed.
25   Q.    Well, if you look at the upper left, it

Page 40

E. D'ANGELO

1
2    tells you that it was printed on October 7, 2019.
3    So is it your still your testimony that you printed
4    them and kept them in the office?
5    A.    Yes.
6    Q.    When did you print them to keep them in the
7    office?
8    A.    I don't remember.
9    Q.    Are you claiming that it was around the time
10   that it came out in December of 2017?
11   A.    Yes.
12   Q.    This is the copy that you printed out in
13   December of 2017?
14   A.    Yes, probably.
15   Q.    You understand you are under oath being
16   sworn to tell the truth, right?
17   A.    Yes.
18   Q.    And you are claiming that this is a document
19   that you printed in December of 2017?
20   A.    This sheet was in the office.  I didn't say
21   I printed it.
22   Q.    You did say you printed it in or around
23   December of 2017?
24   A.    When you talk about these papers and you ask
25   me where I got them from, I said the office.

10 (Pages 37 to 40)

Page 41

E. D'ANGELO

1        E. D'ANGELO
2  Q.   So I'm asking did you print these in 2017
3  and you found them in your office when you went back
4  to look?
5  A.   No, I found them in the office when you
6  asked for them, and I have given them to you.  I
7  found them in the office I don't know when.
8  Q.   But where did you find them in the office?
9  A.   I have a lot of papers in my office.  When
10  you want it, these papers, so we looked for them.
11  Q.   And you found them that you had printed
12  previously?
13  A.   If they are in the office, it's because they
14  had been printed.
15  Q.   This isn't something you printed after the
16  last deposition to try and create a false impression
17  that you did the research?
18       MR. MARKS:  Objection.
19  A.   No, you can see this is 2008.
20  Q.   But we are looking at the third page that
21  says "New York State's Minimum Wage tip credits will
22  increase effective December 31, 2017" and it is your
23  testimony that you found these printed in your
24  office prior to the initiation of the lawsuit?
25  A.   No, you asked for papers from where you

Page 42

E. D'ANGELO

1        E. D'ANGELO
2  looked it up the raises on the internet.  I told you
3  I would look on the internet also.  So I looked in
4  the office and I found papers.
5  Q.   That's my question, are all these documents
6  papers that you found in the office that you had
7  used at the time that you determined how much to pay
8  people?
9  A.   I said there was many ways to determine, not
10  just because I would go to the internet.  The news.
11  I would ask the accountant.  I would look at the
12  internet and even my children would tell me.
13  Q.   Well, that's not something you testified
14  before.  You are saying your children is the reason
15  you are changing the minimum wage?
16  A.   No, I'm saying you want to know how I find
17  out amount raises and when I told you there's many
18  ways.  The government doesn't send me a sheet
19  telling me.  So one way is through the internet,
20  other way is the news, another way is because I
21  would ask the accountant.
22  Q.   So my question is these documents in front
23  of you, this was an 18-page attachment that got
24  e-mailed to me during the break we just took, where
25  did these documents all come from?

Page 43

E. D'ANGELO

1        E. D'ANGELO
2  A.   From my office.
3  Q.   Did you print any of these after the lawsuit
4  was started?
5  A.   I haven't printed them, I found them in my
6  office.
7  Q.   So these were things you used at the time to
8  determine how much to pay your employees?
9  A.   You wanted to know what was the site I would
10  go to.  That was the question you asked last time.
11  You didn't even tell me to produce papers.  What
12  site I would go to and this is an example that I
13  found in the office and I gave it to you.
14  Q.   So these are things you printed previously
15  and kept it?  Listen to my question and answer my
16  question.  Are all these documents from the internet
17  documents that you had found previously and printed
18  and that you went and found after our deposition in
19  hard copy?
20       MR. MARKS:  Objection.
21  A.   I never print papers from the computer, not
22  this.
23  Q.   Never?
24  A.   No.
25  Q.   So who did?

Page 44

E. D'ANGELO

1        E. D'ANGELO
2  A.   I found sheets. I don't know who printed
3  them and I brought them.  You didn't want paper?
4  Q.   Ma'am, no.
5  A.   You wanted to know what sited I would go to.
6  Q.   I'm asking you because I want to be clear
7  what your testimony is.  Are these documents that
8  you printed from the internet after our last
9  deposition?
10       MR. MARKS:  Objection.  You can
11  answer.
12  Q.   It's a yes or no question.
13  A.   I didn't print anything.
14  Q.   Are these documents that you found in your
15  office?
16  A.   Yes.
17  Q.   Do you know when they were printed?
18  A.   No.
19  Q.   Do you know if they were printed after the
20  lawsuit was started or before?
21  A.   I have no idea.
22  Q.   Are these the documents that is your
23  testimony that you were relying on when you decided
24  how much to pay your employees?
25  A.   No, I told you I would go to the internet

Page 45

E. D'ANGELO

1
2  and from the internet, I would see how much I would
3  have to pay the employees for restaurants, and it
4  would come up.  I had no reason to print them.
5  Q.      How much do you pay your employees now?
6  A.      Which of the employees?
7  Q.      The tipped employees, how much do you pay
8  them now?
9  A.      10.
10  Q.      If you look at the third page of this, you
11  understand that it says large employers are suppose
12  to pay $10.85; do you see that?
13  A.      Where does it say that?  I called my
14  accountant, he said it was 10.
15  Q.      If you look at the page there's an article
16  that says "Minimum Wage Increases in New York.  What
17  employer should know;" do you see that?
18  A.      Yes.
19  Q.      This is a 7-page article that you produced.
20  Are you claiming that you reviewed this at the time
21  it came out and used it as a basis to determine how
22  much to pay your employees?
23  A.      If I saw this, I would see it on the
24  internet.  I don't read it because I don't
25  understand these papers.  I found at the business,

Page 46

E. D'ANGELO

1
2  just like this.  It's on the wall.
3  Q.      Please only stick to what we are talking
4  about which is the article that says "Minimum Wage
5  Increases in New York.  What employers should know."
6  It's dated April 18, 2016.  Are you claiming that
7  this is something that you reviewed in determining
8  how much to pay employees?
9  A.      I don't remember.
10  Q.      But you are also claiming that this was just
11  in your office and you had found it after the last
12  deposition?
13  A.      You wanted to know where one gets their
14  raises?
15  Q.      What are the pictures at the end of this?
16  A.      The notices for the employees.
17  Q.      Are these the most recent notices that you
18  posted?
19  A.      The most recent ones.  The letters are
20  small, I can't see.
21  Q.      The most recent document on here is from
22  2009 and it's the last six pages.  These pictures of
23  your posters, is this the most recent poster you put
24  up?
25  A.      No, these are old.

Page 47

E. D'ANGELO

1
2  Q.      Where are the new ones?
3  A.      They are at the business and we take
4  pictures of this and I would give it to the
5  attorney.
6  Q.      You have produced no pictures from after
7  2009.
8  A.      Yes, we have them.
9  Q.      We have asked for them multiple times.  This
10  is the third deposition we have had.
11  A.      I gave it to my attorney.  I don't know what
12  happened.
13  Q.      If you look at Plaintiffs' 25 on the third
14  page in the upper left corner all the way through
15  the end of that last article we were discussing in
16  the upper left corner, it's dated October 7, 2019,
17  which is two weeks after your last deposition.
18  A.      Where?
19  Q.      Right there (indicating).  So were you lying
20  before when you just told me you just found these in
21  the office?
22          MR. MARKS:  Objection.
23  A.      No.
24  Q.      So how do you explain that these were
25  printed in October of 2019, two weeks after your

Page 48

E. D'ANGELO

1
2  last deposition and response to a request for what
3  information you used to determine how to pay your
4  employees?
5  A.      Perhaps my husband printed them because he
6  knew what I had to look for.  I don't know.
7  Q.      But you didn't actually pay employees what
8  you were supposed to pay them; did you?  Giving you
9  Plaintiffs' 26.
10  A.      The employees were always paid what the
11  government would say.
12  Q.      Even assuming you were allowed to take a tip
13  credit?  Do you see where it says "Small employer"
14  and "Large employer" under "New York City" on this?
15  A.      Yes.
16          MR. MARKS:  Objection.  I don't know
17  what this document is.
18          MR. ROSE:  It's part of the labor
19  law.
20          MR. MARKS:  Do you want to represent
21  that on the record?
22          MR. ROSE:  Yes.  This is a document
23  that's distributed by the Department of
24  Labor to describe how much employers are
25  supposed to be paid.

February 4, 2020

Page 49

1                    E. D'ANGELO
2        Q.     To you see where it says "If you have 11 or
3    more employees, the cash tip for employees is 9.15
4    per hour or 8.75 per hour for smaller employers
5    beginning December 31, 2016."  Is it your testimony
6    that you paid that amount to your employees?
7                    MR. MARKS:  Objection.  Which
8            amount?  You just said large and small.
9                    MR. ROSE:  Either.
10       Q.     Did you pay either amounts to your
11   employees?
12       A.     They would always get paid what's supposed
13   to be.
14       Q.     Here's Plaintiffs' Exhibit 27.  These are
15   the documents that I believe you were saying you
16   produced in large stacks?
17       A.     Yes.
18       Q.     Do you see where it says "Rate" it says
19   "7.50" and that's less than either for small or
20   large employer in New York City according to
21   Plaintiffs' Exhibit 26, and the document I handed
22   you, Plaintiffs' 27, is Bates stamped 4437 to 4467,
23   and it's for Cesar Romero.  All of these checks are
24   from 2017 when the minimum wage was, with a tip
25   credit, 8.75 or 9.15.

Page 50

1                    E. D'ANGELO
2        A.     They must have been paid more.
3        Q.     But that's not what your pay stubs say?
4        A.     I don't think it was the whole year we
5    probably didn't notice about the raise in this time.
6        Q.     But this is everything you have produced
7    from 2017 from Doll's for Cesar Romero.  So at no
8    point in 2017 was he paid the minimum wage?
9        A.     This is only until July.
10       Q.     That's all you produced.
11       A.     Because I think he only worked until July in
12   Doll's.
13       Q.     Do you understand now that you paid him less
14   than minimum wage?
15       A.     It says "Regular pay, 8.30."
16       Q.     Where does it say that?
17       A.     No, that's quantity, the amount of hours.
18   It was -- my son was doing the checks and he must
19   have gotten confused because for each one, you have
20   to put the hour, but I would pay in cash daily, and
21   I'm sure he was paid what was supposed to be paid.
22       Q.     But you don't have any records showing he
23   was?
24       A.     I sent it to you, all those receipts that
25   was paid cash.

Page 51

1                    E. D'ANGELO
2        A.     Yes, you sent us a pile of receipts that
3    were scanned in randomly and don't say what you are
4    telling me now.  We went over that the last
5    deposition.
6        A.     No, we didn't talk about that.  We didn't
7    talk about that.  When the machine broke, I would
8    pay them daily in cash and do the checks according
9    to the tips they would give me, and they would have
10   to pay me the taxes.
11       Q.     So you didn't actually pay them the exact
12   amount described on these documents, right?
13       A.     I have to see what I gave the lawyer and
14   you.
15       Q.     But was it your practice to pay them what is
16   described in these documents or was it to give them
17   some other amount and this is just the records that
18   you kept?
19       A.     Everything that was given to you from
20   QuickBooks is what we give the government, and the
21   checks that are done for them.
22       Q.     But these are not checks that they actually
23   got right, you didn't write checks to the employees?
24       A.     Yes, I did checks and they signed if they
25   received checks.  They signed "Paid in cash, because

Page 52

1                    E. D'ANGELO
2    they were paid the same day they worked.
3        Q.     My question is did you actually write them
4    out checks or did you pay in cash because these are
5    all check stubs, right?
6        A.     Yes.
7        Q.     So which did you do, did you pay them cash
8    or did you write checks to them?
9        A.     When they worked daily, they were paid cash
10   that same day to the day they were supposed to work,
11   then they had to do the tip cards, so I could do the
12   check because their tip employees.  The one that
13   weren't tip employees, there was no problem.  So I
14   would do the check after and they would sign "Paid
15   in cash," and they would pay my taxes.  They
16   wouldn't pay it at the time, the amount would be
17   added and if someone wanted to pay at once, some
18   others want today wait for their returns.
19       Q.     Please listen to my question.  Did any of
20   these Plaintiff's get paid by check or did they call
21   get paid by cash?
22       A.     These were paid.  I don't understand.
23       Q.     In front of you in Plaintiffs' 27, part of
24   the pay stubs that you produced for Cesar Romero,
25   did you actually issue checks to him or not?

13 (Pages 49 to 52)

Page 53

E. D'ANGELO
1
2    A.    Yes, these are their checks.
3    Q.    Where are the canceled checks?
4    A.    Where are the canceled checks?
5    Q.    Yes.
6    A.    These checks -- I think these checks are
7    checks that were already paid to them so they would
8    sign the back "Paid in cash," because I already paid
9    them.
10   Q.    Do you know what a check is from a bank?
11   A.    Yes.
12   Q.    Did you write them a check from a bank or
13   did you pay them cash?
14   A.    After the machine was damaged, they were
15   paid cash.
16   Q.    So they were paid cash, not in a check,
17   right?
18   A.    No, they were paid cash.
19   Q.    They were paid cash, not given a check; is
20   that correct?
21   A.    Yes.
22   Q.    These documents we are looking at -- and you
23   produced a lot of, say that there are check numbers
24   associated with it, there are not actually checks
25   associated with it, right?

Page 54

E. D'ANGELO
1
2    A.    Yes, they would get a check and on the back
3    of the check, they would put "Paid in cash."
4    Q.    You would write them a check and have them
5    write "Paid in cash" on the back of it?
6    A.    Yes.
7    Q.    Did you produce any?
8    A.    I don't think so.
9    Q.    So it's your testimony that you wrote checks
10   to all of the Plaintiff's and you also gave them
11   cash?
12   A.    When I would make the check, because they
13   were already paid, they would sign that they were
14   already paid and the check was to declare taxes for
15   the government, because I had to declare my taxes.
16   Q.    You are claiming that you printed out these
17   checks and gave it to them?
18   A.    Yes, I would give it to them and say "Pay in
19   cash," so they would owe me the tax that corresponds
20   to them.
21   Q.    So that was the proof that they owed you
22   tax?
23   A.    Yes.
24   Q.    Where are those documents?
25   A.    What documents?

Page 55

E. D'ANGELO
1
2    Q.    The checks that you had them sign "Paid in
3    cash."
4    A.    I have a lot of them.
5    Q.    Where?  Do you have them with you?  Give
6    them to me?
7    A.    No, I have to look for them in the office.
8    Q.    Are you telling me that there are more
9    documents in your office that you still have not
10   produced that are important to this case?
11   A.    Those were checks that were paid in cash.  I
12   didn't consider it important.  You didn't ask for
13   them.
14   Q.    You are telling me that you have a record of
15   what you paid your employees that they signed
16   confirming that they got paid an amount and it's
17   your claim that we never asked for that?
18   A.    No, you never said bring the checks.  I told
19   them the first deposition I explained how it was
20   paid cash after the punch in machine was damaged.
21        MR. ROSE:  We are going to take a
22   break.
23        (Whereupon, a recess was taken at
24   this time.)
25        (Whereupon, an e-mail was marked as

Page 56

E. D'ANGELO
1
2    Plaintiffs' Exhibit 28 for identification,
3    as of this date.)
4        (Whereupon, order for case related
5    documentation was marked as Plaintiffs'
6    Exhibit 29 for identification, as of this
7    date.)
8    Q.    Ma'am, I'm going to hand you what's been
9    marked as Plaintiff's 28 and 29.  Plaintiff's 28 is
10   an e-mail I sent your attorney after the last
11   deposition.  Do you see Number 3, I asked for all
12   schedules and for both Edita's and Doll's from 2011
13   to 2018; do you have any of those?
14   A.    No, I told you I never keep a record of
15   that.
16   Q.    Did you do a search to see if you had any?
17   A.    I haven't found any of that.
18   Q.    If you look at Number 2, do you see where it
19   says "All records for all Plaintiff's and the Opt-In
20   Plaintiff's including those which are kept in the
21   QuickBooks records produced in your native format;"
22   do you see that?
23   A.    Yes.
24   Q.    Did you produce all those records?
25   A.    All of QuickBooks, you have that.

14 (Pages 53 to 56)

February 4, 2020

| Page 57 | Page 59 |
|---|---|

Page 57

E. D'ANGELO

1
2    Q.    But right now you are identifying another
3    set of records, checks that you are claim that our
4    clients signed over to you; is that correct?
5    A.    They are not checks, they are my checks.
6    The part that they are supposed to send to the bank,
7    like I already paid, they would sign that they were
8    already paid. You didn't ask for that, you asked
9    for the checks.
10   Q.    I'm going to ask you look at 29, because in
11   case you didn't understand "All records for all
12   Plaintiff's and Opt-in Plaintiff's," we asked at the
13   very beginning of this case, Number 6, it states
14   "Any and all documents describing, detailing and/or
15   accounting for the amount of money paid to
16   Plaintiff's during the time of their employment;" do
17   you see that?
18   A.    Yes.
19   Q.    Did you produce all those records?
20   A.    I gave you all the checks. You have all the
21   checks.
22   Q.    You are saying that you have a pile of
23   checks in your office that you are claiming our
24   client signed agreeing that they had received money,
25   is that what you are testifying to today?

Page 59

E. D'ANGELO

1
2    of them. Those small slips on the checks, I can
3    give them to you.
4    Q.    Are those small slips checks?
5    A.    The top part of the check. It's the check.
6    Q.    Are these checks, too?
7    A.    No, it's the copy of the QuickBooks. You
8    asked for a copy of QuickBooks.
9    Q.    Ma'am, there's no question. Are there any
10   records showing how much cash was given out to the
11   employees at the end of their shifts other than what
12   you produced?
13   A.    No, I don't think so.
14   Q.    Are there any of these checks that you are
15   describing that are client signed in your office
16   which you have not yet produced?
17   A.    You didn't ask for them. I didn't consider
18   it necessary.
19   Q.    Do you they describe, detail and/or account
20   for the amount of money paid to the plaintiffs?
21   A.    The signed check?
22   Q.    Yeah.
23   A.    The back that says "Paid in cash," the same
24   check, you have the yellow copy.
25   Q.    Did you produce these or not?

| Page 58 | Page 60 |
|---|---|

Page 58

E. D'ANGELO

1
2    A.    Yes.
3    Q.    And you have never produced them before; is
4    that true? No, I don't want to hear why.
5    A.    I gave you the original.
6    Q.    The original what?
7    A.    The original check. I gave you all the
8    checks.
9    Q.    Are you talking about Plaintiff's Exhibit
10   27?
11   A.    Yes, all of that.
12   Q.    Do you think these are checks?
13   A.    These are copies of the check.
14   Q.    You think these are checks?
15   A.    That's the copy of how the checks come.
16   Q.    You think this is a check, what's in
17   Plaintiff's Exhibit 27?
18   A.    That's a copy of QuickBooks.
19   Q.    The check that you are testifying our client
20   signed, are they identical to what we are looking at
21   in Plaintiff's Exhibit 27?
22   A.    No, before that, I sent the yellow ones.
23   They are identical to the checks we give them.
24   Q.    But those are not checks either.
25   A.    It's the check and all this. I gave you all

Page 60

E. D'ANGELO

1
2    A.    No, not that one. I didn't think it was
3    necessary because I had the check. I produced the
4    check. I didn't think those things were necessary.
5    Q.    Did you tell your lawyer about them?
6    A.    No. I told you they signed the first day --
7    since the first day. Maybe the lawyer didn't
8    understand me.
9         MR. ROSE:  We are going to call for
10        the production of the checks that are
11        signed. We are adjourning the deposition
12        and we having sanctions against you for
13        failure to engage in discovery process.
14           (Time Noted: 12:40 p.m.)
15
16           EDITH D'ANGELO
17
18   Subscribed and sworn to before me
19   this        day of        2020.
20
21
22           Notary Public
23
24
25

15  (Pages 57 to 60)

February 4, 2020

Page 61

```
 1
 2                    I N D E X
 3
 4    WITNESS         EXAMINATION BY       PAGE
 5    Edith D'Angelo    Mr. Rose       5
 6               EXHIBITS
 7    PLAINTIFFS'    DESCRIPTION      PAGE
 8    18          A notice        14
 9    19          A list of rules      14
10    20          An application      14
11    21          An Excel spreadsheet     28
12    22          A wage rates document    28
13    23        An employee earning summary   28
14    24          An Excel spreadsheet     28
15    25          An article      38
16    26          A labor law document    38
17    27          Cesar Romero's pay records 38
18    28          An e-mail      56
19    29      Order for case related documentation 56
20            REQUESTS FOR PRODUCTION
21    DESCRIPTION                PAGE
22    Identification of accountants       12
23    Taxes for all relevant years       22
24    Checks that are signed          60
25
```

Page 62

```
 1
 2            C E R T I F I C A T E
 3
 4        I, JAMIE DESMOND, hereby certify that the
 5    Examination Before Trial of EDITH D'ANGELO was held
 6    before me on the 4th day of February, 2020; that
 7    said witness was duly sworn before the commencement
 8    of her testimony; that the testimony was taken
 9    stenographically by myself and then transcribed by
10    myself; that the party was represented by counsel as
11    appears herein; that the within transcript is a true
12    record of the Examination Before Trial of said
13    witness;
14        That I am not connected by blood or
15    marriage with any of the parties; that I am not
16    interested directly or indirectly in the outcome of
17    this matter; that I am not in the employ of any of
18    the counsel.
19        IN WITNESS WHEREOF, I have hereunto set my
20    hand this 13th day of February, 2020.
21
22        _Jamie Desmond_
23        JAMIE DESMOND
24
25
```

16 (Pages 61 to 62)

**A**

**a.m (1)**
1:17
**a/k/a (1)**
1:10
**able (1)**
36:10
**accompanied...**
3:20
**account (1)**
59:19
**accountant (...**
7:3,11,13,17
8:22,24 9:2
10:2,8,12,15
11:3,6,12,16
11:17,20 12:2
12:3,5 22:21
42:11,21
45:14
**accountants ...**
7:14,21 11:22
61:22
**accounting (1)**
57:15
**accurately (1)**
5:4
**action (1)**
4:6
**add (1)**
21:3
**added (1)**
52:17
**address (2)**
5:17 11:23
**adjourning (1)**
60:11
**administrati...**
23:10
**advised (1)**
13:8
**advisement (1)**
22:11
**affect (1)**
6:16
**against- (1)**

1:7
**ago (1)**
5:23
**AGREED (1)**
3:3
**agreeing (1)**
57:24
**ALBERTI (1)**
2:16
**alcohol (1)**
6:19
**Alejandro (1)**
29:5
**allowed (1)**
48:12
**amount (18)**
8:7 21:2,5
24:10 26:16
31:22 33:24
39:4 42:17
49:6,8 50:17
51:12,17
52:16 55:16
57:15 59:20
**amounts (2)**
20:18 49:10
**and/or (3)**
3:6 57:14
59:19
**answer (10)**
3:7,11,15,19
3:19,20,21
20:22 43:15
44:11
**answered (2)**
3:18 4:2
**answers (1)**
5:6
**appears (1)**
62:11
**applicable (1)**
16:19
**application (5)**
14:19 27:3,4
27:11 61:10
**applications ...**

27:6
**apply (1)**
3:8
**appropriate ...**
3:8
**April (5)**
30:21 31:5
32:20,21 46:6
**area (1)**
25:21
**article (8)**
3:9 38:15
39:18 45:15
45:19 46:4
47:15 61:15
**aside (1)**
25:19
**asked (20)**
7:7,10,12,23
8:5,6 11:16
11:17 21:24
22:21 33:16
41:6,25 43:10
47:9 55:17
56:11 57:8,12
59:8
**asking (6)**
11:20 17:9
29:20,25 41:2
44:6
**associated (2)**
53:24,25
**assuming (1)**
48:12
**Astoria (2)**
1:16 2:4
**attachment (1)**
42:23
**attendance (1)**
3:13
**attorney (10)**
2:7 3:11,18,23
4:9,14 12:24
47:5,11 56:10
**attorney/clie...**
27:24

**attorneys (4)**
2:3,8,11 3:3
**Avenue (3)**
1:16 2:4,11
**aware (1)**
30:16

**B**

**b (2)**
3:6 5:2
**back (9)**
15:24 16:2
21:25 23:14
41:3 53:8
54:2,5 59:23
**bad (2)**
14:25,25
**bank (3)**
53:10,12 57:6
**bar (3)**
1:8 4:6 31:11
**barmaids (2)**
16:13 21:17
**basis (4)**
3:12,20 37:8
45:21
**Bates (4)**
15:22 16:6
39:16 49:22
**beginning (2)**
49:5 57:13
**behalf (7)**
1:4 4:10 18:2,9
18:12 19:13
19:20
**believe (3)**
15:19 34:5
49:15
**big (1)**
33:18
**blood (1)**
62:14
**bottom (1)**
17:18
**boxes (1)**
21:16

**break (6)**
8:19 13:2,10
27:21 42:24
55:22
**Briefly (1)**
27:22
**bring (1)**
55:18
**broke (4)**
12:9 23:25
24:2 51:7
**brought (1)**
44:3
**business (8)**
12:3,8 15:2
24:23 27:13
31:16 45:25
47:3

**C**

**c (4)**
2:2 3:6 62:2,2
**calculations (...**
20:17
**call (6)**
8:16 12:15,25
22:8 52:20
60:9
**called (4)**
5:2 9:7 35:20
45:13
**canceled (2)**
53:3,4
**cancer (2)**
11:25 12:4
**cardboard (1)**
21:14
**Cardenas (7)**
1:3 13:23 17:5
18:10 20:6,6
23:2
**cards (3)**
21:12,14 52:11
**case (10)**
11:11 13:8
15:20 28:23

36:5 55:10
56:4 57:11,13
61:19
**cash (26)**
32:16 49:3
50:20,25 51:8
51:25 52:4,7
52:9,15,21
53:8,13,15,16
53:18,19 54:3
54:5,11,19
55:3,11,20
59:10,23
**catch (1)**
15:12
**cause (1)**
3:18
**centimeters (1)**
33:19
**certain (2)**
7:10 8:7
**certification ...**
4:12
**certify (1)**
62:4
**Cesar (8)**
1:3 20:7 29:6
38:21 49:23
50:7 52:24
61:17
**change (7)**
32:12,21,23
33:5,8,10
39:3
**changed (4)**
12:4 32:9,19
32:22
**changes (2)**
11:15 30:11
**changing (1)**
42:15
**charge (3)**
4:15 24:14,22
**check (33)**
20:25 21:16
31:5,21,21

33:15 35:11
38:3 52:5,12
52:14,20
53:10,12,16
53:19,23 54:2
54:3,4,12,14
58:7,13,16,19
58:25 59:5,5
59:21,24 60:3
60:4
**checks (49)**
21:7,13,22
29:3 33:16
36:6 37:10
49:23 50:18
51:8,21,22,23
51:24,25 52:4
52:8,25 53:2
53:3,4,6,6,7
53:24 54:9,17
55:2,11,18
57:3,5,5,9,20
57:21,23 58:8
58:12,14,15
58:23,24 59:2
59:4,6,14
60:10 61:24
**children (2)**
42:12,14
**Christi (1)**
29:7
**circumstance...**
23:9
**City (3)**
2:12 48:14
49:20
**claim (4)**
15:7 39:21
55:17 57:3
**claimed (2)**
15:15 39:2
**claiming (12)**
11:11 20:18
25:23 34:10
34:14 40:9,18
45:20 46:6,10

54:16 57:23
**clean (3)**
25:13,15,21
**clear (3)**
3:12,20 44:6
**clearly (1)**
4:4
**client (4)**
13:11 57:24
58:19 59:15
**clients (1)**
57:4
**clock (4)**
23:23,23 24:5
24:6
**clocked (2)**
35:14,14
**collect (1)**
26:5
**Colon (5)**
11:22,24,24,25
12:13
**come (4)**
27:13 42:25
45:4 58:15
**comes (1)**
22:22
**commencem...**
62:7
**comments (1)**
3:14
**communicati...**
3:23
**communicati...**
3:25 4:3
**companies (1)**
26:15
**company (1)**
17:7
**complete (2)**
3:21 21:20
**compliance (1)**
3:4
**computer (9)**
22:22 29:11
30:2,6,8,14

31:21 35:12
43:21
**confidentialit...**
3:16
**confirming (1)**
55:16
**confused (1)**
50:19
**connected (1)**
62:14
**consent (1)**
3:24
**consider (2)**
55:12 59:17
**contact (3)**
8:10,13,15
**containing (1)**
22:17
**controlled (1)**
4:11
**coordinator (...**
24:15
**copies (2)**
16:25 58:13
**copy (9)**
4:14 33:17
40:12 43:19
58:15,18 59:7
59:8,24
**corner (2)**
47:14,16
**correct (10)**
30:13,15,17
31:2,13 39:4
39:7,20 53:20
57:4
**corresponds ...**
54:19
**counsel (4)**
4:14 39:2
62:10,18
**couple (1)**
5:22
**course (4)**
3:13 22:7,21
30:12

**court (3)**
1:2,15 3:17
**Courts (1)**
3:4
**CPLR (4)**
3:9,13,19 4:11
**create (1)**
41:16
**credit (2)**
48:13 49:25
**credits (1)**
41:21
**cups (1)**
15:13
**currently (1)**
8:22
**customer (3)**
15:6,10,14
**customers (1)**
15:17

---

**D**

**d (4)**
3:6 5:9,9 61:2
**D'Angelo (64)**
1:10,14 5:16
6:1,22 7:1 8:1
9:1 10:1 11:1
12:1 13:1,17
14:1 15:1
16:1 17:1
18:1 19:1
20:1 21:1
22:1 23:1
24:1 25:1
26:1 27:1
28:1 29:1
30:1 31:1
32:1,3 33:1
34:1 35:1
36:1 37:1
38:1 39:1
40:1 41:1
42:1 43:1
44:1 45:1
46:1 47:1

48:1 49:1
50:1 51:1
52:1 53:1
54:1 55:1
56:1 57:1
58:1 59:1
60:1,16 61:5
62:5
**d/b/a (2)**
1:8,9
**daily (9)**
21:13,19 24:9
24:16,21 35:7
50:20 51:8
52:9
**damaged (2)**
53:14 55:20
**dancers (1)**
15:14
**date (16)**
14:15,18,21
18:23 28:6,9
28:12,15 31:4
31:6 38:17,20
38:23 39:11
56:3,7
**dated (2)**
46:6 47:16
**dates (2)**
10:20 11:19
**DAVID (1)**
1:4
**day (13)**
18:21,22 19:24
24:14 27:14
52:2,10,10
60:6,7,19
62:6,20
**December (10)**
9:11 39:11,12
39:19 40:10
40:13,19,23
41:22 49:5
**decide (1)**
20:2
**decided (1)**

44:23
**declare (2)**
54:14,15
**deemed (1)**
4:10
**defect (1)**
3:12
**Defendant (1)**
1:13
**Defendants (2)**
1:11 2:11
**Department ...**
48:23
**depends (1)**
29:18
**deponent (5)**
3:11,15,18,21
3:24
**deposition (22)**
3:6,7,7,10,16
3:22,23 5:22
7:13 13:13
16:6 41:16
43:18 44:9
46:12 47:10
47:17 48:2
51:5 55:19
56:11 60:11
**describe (3)**
37:13 48:24
59:19
**described (4)**
20:24 30:17
51:12,16
**describes (2)**
18:5 26:4
**describing (2)**
57:14 59:15
**DESCRIPTI...**
61:7,21
**DESMOND ...**
62:4,23
**detail (2)**
37:12 59:19
**detailing (1)**
57:14

**determine (5)**
12:20 42:9
43:8 45:21
48:3
**determined (1)**
42:7
**determining ...**
3:25 46:7
**different (4)**
16:25 22:13
23:10 29:22
**direct (1)**
3:18
**direction (1)**
3:20
**directly (2)**
6:4 62:16
**dirtier (1)**
25:15
**disciplinary (...**
15:19
**discounting (1)**
21:21
**discovery (1)**
60:13
**discussing (1)**
47:15
**discussion (2)**
31:25 38:13
**distribute (1)**
16:11
**distributed (2)**
26:17 48:23
**DISTRICT (2)**
1:2,2
**document (25)**
15:18 16:8
17:20 22:24
23:15 24:3,5
26:3,6,6,17
27:2 28:7,16
30:17 32:14
38:18 39:15
40:18 46:21
48:17,22
49:21 61:12

61:16
**documentati...**
56:5 61:19
**documents (...**
13:3,4,5,9,12
13:18,23,25
16:5 18:18
19:23 20:16
20:24 22:17
26:11 27:19
27:25 30:5
36:4 38:25
42:5,22,25
43:16,17 44:7
44:14,22
49:15 51:12
51:16 53:22
54:24,25 55:9
57:14
**doing (1)**
50:18
**Doll's (13)**
1:9,9 9:2 16:20
18:17 19:6
27:4 31:14,17
32:5 50:7,12
56:12
**duly (3)**
5:3,10 62:7

---

**E**

**E (64)**
1:3 2:2,2 5:2,9
5:9 6:1 7:1
8:1 9:1 10:1
11:1 12:1
13:1 14:1
15:1 16:1
17:1 18:1
19:1 20:1
21:1 22:1
23:1 24:1
25:1 26:1
27:1 28:1
29:1 30:1
31:1 32:1

33:1 34:1
35:1 36:1
37:1 38:1
39:1 40:1
41:1 42:1
43:1 44:1
45:1 46:1
47:1 48:1
49:1 50:1
51:1 52:1
53:1 54:1
55:1 56:1
57:1 58:1
59:1 60:1
61:2 62:2,2
**e-mail (3)**
55:25 56:10
61:18
**e-mailed (2)**
39:2 42:24
**earlier (1)**
14:2
**earning (5)**
28:10 35:20,24
36:21 61:13
**EASTERN (1)**
1:2
**edit (2)**
38:5,9
**Edita's (3)**
1:8 31:11
56:12
**Edith (7)**
1:9,10,14 5:16
60:16 61:5
62:5
**effective (1)**
41:22
**EIBER (1)**
2:16
**either (6)**
26:5 29:20
49:9,10,19
58:24
**EMILIANO ...**
2:7

**employ (1)**
62:17
**employee (8)**
14:24 16:12
  21:3,3 28:10
  32:9 35:20
  61:13
**employees (39)**
6:24 9:8 10:3
  11:12 18:2,3
  21:9 26:12,14
  26:18 30:9
  32:4 34:11,16
  35:4 36:19
  37:20 39:4
  43:8 44:24
  45:3,5,6,7,22
  46:8,16 48:4
  48:7,10 49:3
  49:3,6,11
  51:23 52:12
  52:13 55:15
  59:11
**employer (8)**
19:14,16,17
  21:2 45:17
  48:13,14
  49:20
**employer's (1)**
17:22
**employers (4)**
45:11 46:5
  48:24 49:4
**employment ...**
29:17 30:25
  57:16
**enforce (1)**
3:16
**engage (1)**
60:13
**English (2)**
5:6,7
**entered (1)**
35:8
**Entering (1)**
23:19

**entire (1)**
35:25
**entirety (1)**
37:6
**Entrada (1)**
23:16
**environment...**
23:9
**error (1)**
3:12
**ESQ (2)**
2:5,13
**event (1)**
4:3
**everybody (2)**
22:18 24:19
**exact (2)**
10:20 51:11
**exactly (4)**
6:8 31:10
  33:23 37:25
**examination ...**
1:13 3:13 4:5,8
  4:9,10,13,15
  5:13 61:4
  62:5,12
**examined (3)**
4:8,14 5:11
**examining (1)**
3:21
**example (1)**
43:12
**Excel (6)**
28:13 36:9,13
  37:3 61:11,14
**Exhibit (22)**
14:14,17,20,23
  16:3 26:25
  28:5,8,11,14
  30:4 35:19
  38:16,19,22
  49:14,21 56:2
  56:6 58:9,17
  58:21
**EXHIBITS (1)**
61:6

**explain (3)**
29:21,25 47:24
**explained (1)**
55:19
**expressed (1)**
23:12
**extent (1)**
3:12
**extra (3)**
25:13,15 32:15

_____
**F**

**F (3)**
1:9,10 62:2
**failure (3)**
4:5,9 60:13
**faithfully (1)**
5:4
**false (1)**
41:16
**far (1)**
6:2
**February (5)**
1:17 18:23
  19:24 62:6,20
**federal (1)**
14:9
**Fibos (7)**
8:9,11,15,22
  9:7 12:10,11
**figure (1)**
13:11
**filed (2)**
22:4,20
**files (1)**
22:14
**filing (1)**
4:12
**fill (2)**
21:11,15
**find (4)**
7:8 14:6 41:8
  42:16
**Fine (1)**
28:24
**finger (3)**

**23:21 35:10,11**
**fingerprint (1)**
35:14
**finish (1)**
25:11
**finished (1)**
25:7
**firm (5)**
12:4,7,8,8,9
**first (12)**
5:10 11:24
  14:4,7 16:7
  23:14 29:5
  37:3 39:6
  55:19 60:6,7
**five (3)**
16:8 23:20
  37:3
**fix (1)**
25:21
**Flamingo (9)**
1:9 9:3 18:17
  19:5 27:5,7
  27:10,15 32:5
**Flamingo's (1)**
16:20
**follow (3)**
12:17,18 22:9
**follows (1)**
5:12
**font (1)**
35:22
**form (4)**
3:12 18:5,14
  34:8
**format (5)**
28:18 29:19,22
  37:7 56:21
**forth (2)**
3:17 4:2
**forward (1)**
27:23
**found (18)**
12:19 41:3,5,7
  41:11,23 42:4
  42:6 43:5,13

**43:17,18 44:2**
44:14 45:25
46:11 47:20
56:17
**four (5)**
19:23 22:16,16
  29:24 37:22
**fourth (2)**
13:13 29:6
**framed (1)**
3:10
**Friday (1)**
25:15
**front (3)**
21:4 42:22
  52:23
**full (1)**
12:16

_____
**G**

**G (1)**
5:9
**Garfield (1)**
5:18
**general (1)**
17:11
**getting (4)**
26:13 30:9,20
  34:12
**gift (3)**
19:8,10,12
**give (22)**
6:6 16:2,2 18:7
  20:2 21:14,15
  21:17 22:22
  25:5,16 26:24
  35:5,19 47:4
  51:9,16,20
  54:18 55:5
  58:23 59:3
**given (9)**
3:7 5:6 21:19
  32:15 33:15
  41:6 51:19
  53:19 59:10
**giving (3)**

14:22 37:2
48:8
**go (10)**
12:7,13 25:7
33:10 35:12
42:10 43:10
43:12 44:5,25
**goes (2)**
16:8 26:7
**going (16)**
6:2 12:15,25
22:23 26:4,22
26:24 27:23
30:3 31:17
34:5 35:19
55:21 56:8
57:10 60:9
**Good (2)**
5:20,21
**gotten (1)**
50:19
**government ...**
7:9 18:2,4,13
19:13,20
42:18 48:11
51:20 54:15
**gratitude (1)**
23:13
**grounds (1)**
4:2
**Group (2)**
1:15 2:3

**_____**
**H**
**_____**

**H (1)**
5:9
**hand (4)**
30:3 37:13
56:8 62:20
**handed (1)**
49:21
**handing (1)**
38:24
**handling (1)**
13:8
**happened (1)**

47:12
**hard (1)**
43:19
**headings (1)**
38:7
**hear (1)**
58:4
**Heights (2)**
2:9 5:18
**held (4)**
1:15 31:25
38:13 62:5
**hereunto (1)**
62:19
**hired (1)**
34:21
**hour (18)**
25:6,7,24,25
26:5,13,19,22
30:21,24
32:19,19
33:12,21 34:7
49:4,4 50:20
**hourly (4)**
24:12 30:9
32:4,8
**hours (9)**
6:20 24:13,15
24:16,19,22
35:3 37:13
50:17
**husband (1)**
48:5

**_____**
**I**
**_____**

**idea (3)**
28:25 29:9
44:21
**identical (2)**
58:20,23
**identification...**
12:16 14:14,18
14:21 28:6,9
28:12,15
38:16,20,23
56:2,6 61:22

**identify (2)**
7:12,23
**identifying (1)**
57:2
**ii (1)**
3:16
**iii (1)**
3:17
**imagine (2)**
28:18 30:6
**important (2)**
55:10,12
**impression (1)**
41:16
**improper (1)**
3:17
**include (2)**
3:11 20:17
**included (1)**
31:15
**including (1)**
56:20
**income (1)**
21:19
**increase (3)**
39:12,19 41:22
**Increases (2)**
45:16 46:5
**indicate (1)**
32:8
**indicates (1)**
30:22
**indicating (8)**
18:15 20:15
30:23 31:23
33:19 36:7
38:6 47:19
**indirectly (1)**
62:16
**information ...**
7:16,24 8:2,3
8:10,13 9:23
11:23 28:22
28:25 29:10
35:8 37:16
48:3

**inherited (1)**
12:9
**initiation (1)**
41:24
**installed (1)**
23:25
**instructed (1)**
7:3
**interested (1)**
62:16
**interfere (1)**
3:14
**internet (19)**
9:19 10:6,23
10:25 11:2,15
12:19 13:6
39:3 42:2,3
42:10,12,19
43:16 44:8,25
45:2,24
**interpreter (7)**
2:16 5:2,12 6:3
6:11 15:11
23:7
**interrupt (1)**
3:23
**irregularity (1)**
3:12
**Island (1)**
2:12
**issue (1)**
52:25

**_____**
**J**
**_____**

**Jackson (1)**
2:9
**JAMIE (2)**
62:4,23
**January (5)**
8:6 9:11 32:24
33:4,6
**JESSE (1)**
2:5
**JHON (1)**
1:3
**job (1)**

27:15
**John (3)**
20:6,6 23:2
**JOSE (1)**
1:4
**July (2)**
50:9,11

**_____**
**K**
**_____**

**keep (3)**
34:24 40:6
56:14
**keeping (1)**
21:9
**kept (8)**
24:13,17,18,19
40:4 43:15
51:18 56:20
**knew (2)**
7:7 48:6
**know (31)**
6:8 7:8,25 8:13
9:19 19:21
20:3,19 21:4
27:18 29:18
32:3 35:24
36:8,21 37:23
38:7 41:7
42:16 43:9
44:2,5,17,19
45:17 46:5,13
47:11 48:6,16
53:10

**_____**
**L**
**_____**

**L (3)**
3:2 5:2,9
**labor (4)**
38:18 48:18,24
61:16
**large (5)**
45:11 48:14
49:8,16,20
**larger (1)**
35:22
**law (7)**
1:15 2:3,7

30:18 38:18
48:19 61:16
**lawsuit (5)**
15:15 34:10
41:24 43:3
44:20
**lawsuits (1)**
14:9
**lawyer (13)**
7:11,15,18
9:20 10:14
28:18,21 30:2
36:12,14
51:13 60:5,7
**left (5)**
31:5 33:4
39:25 47:14
47:16
**length (1)**
13:18
**Let's (3)**
8:19 14:12
28:3
**letters (1)**
46:19
**limitation (1)**
3:17
**list (2)**
14:16 61:9
**listen (3)**
20:21 43:15
52:19
**locations (1)**
27:11
**long (3)**
2:12 8:24 31:8
**look (24)**
9:18,20 10:6
11:14 16:7
17:16 18:8
22:23 25:12
28:16 30:20
32:17 33:3
39:25 41:4
42:3,11 45:10
45:15 47:13

48:6 55:7
56:18 57:10
**looked (5)**
12:20 14:4
41:10 42:2,3
**looking (8)**
20:16 24:3
29:8 32:7
37:7 41:20
53:22 58:20
**lot (8)**
14:3,8,25
21:10,19 41:9
53:23 55:4
**LOUNGE (1)**
1:9
**lying (1)**
47:19

_____

**M**

**Ma'am (3)**
44:4 56:8 59:9
**machine (6)**
23:21 24:7,8
51:7 53:14
55:20
**maintain (3)**
30:8 36:14
39:9
**maintained (1)**
13:19
**manifested (1)**
23:11
**mark (2)**
14:12 28:3
**marked (17)**
14:13,17,20,22
26:24 28:4,8
28:11,14 30:3
38:15,19,22
38:24 55:25
56:5,9
**MARKS (21)**
2:10,13 9:24
12:18 13:4,7
17:23 18:14

20:21 22:11
25:10 27:17
27:22 34:8
41:18 43:20
44:10 47:22
48:16,20 49:7
**marriage (1)**
62:15
**matter (2)**
5:3 62:17
**MATTHEW...**
2:13
**mean (4)**
17:22 25:17
36:11,18
**means (4)**
29:2,10 36:8
38:8
**meant (1)**
6:8
**medication (1)**
6:16
**MEJIA (1)**
1:4
**memory (1)**
6:17
**minimum (14)**
10:16 11:4,7
12:21 13:6
34:12,15
41:21 42:15
45:16 46:4
49:24 50:8,14
**minute (1)**
15:25
**minutes (1)**
23:20
**money (14)**
19:2,4,13 20:9
20:13 21:24
21:25,25 22:2
22:18 36:20
57:15,24
59:20
**months (2)**
5:23 9:13

**morning (2)**
5:20,21
**motion (1)**
4:6
**move (1)**
4:5
**multiple (1)**
47:9

_____

**N**

**N (4)**
2:2 3:2 5:9
61:2
**name (5)**
5:15 10:13
11:25 12:5,6
**narcotics (1)**
6:19
**native (1)**
56:21
**necessary (3)**
59:18 60:3,4
**need (1)**
35:22
**never (8)**
7:9 19:2 43:21
43:23 55:17
55:18 56:14
58:3
**new (17)**
1:2,16,18 2:4,9
2:12 5:4,11
5:18 13:22
39:18 41:21
45:16 46:5
47:2 48:14
49:20
**news (2)**
42:10,20
**Newtown (1)**
1:16 2:4
**Notary (5)**
1:18 4:8 5:3,10
60:22
**noted (2)**
3:6 60:14

**notes (1)**
37:13
**notice (8)**
14:13,24 15:19
34:11,14,18
50:5 61:8
**notices (2)**
46:16,17
**number (7)**
8:17,18 13:22
35:3 56:11,18
57:13
**numbers (10)**
20:23 21:6
22:12,13,17
22:18,19
36:11,17
53:23

_____

**O**

**O (3)**
3:2 5:2,9
**oath (1)**
40:15
**object (1)**
4:5
**objection (12)**
3:10 4:6 17:23
18:14 25:10
34:8 41:18
43:20 44:10
47:22 48:16
49:7
**objections (2)**
3:6,8
**occasions (1)**
7:10
**October (3)**
40:2 47:16,25
**office (29)**
13:19 14:3,8
28:21 39:10
39:23 40:4,7
40:20,25 41:3
41:5,7,8,9,13
41:24 42:4,6

43:2,6,13
44:15 46:11
47:21 55:7,9
57:23 59:15
**officer (1)**
3:7
**offices (1)**
1:15
**Okay (3)**
9:22,24 27:20
**old (1)**
46:25
**once (2)**
37:17 52:17
**ones (4)**
18:17 46:19
47:2 58:22
**oOo- (1)**
5:8
**opened (1)**
24:23
**opposed (1)**
32:5
**opt (1)**
23:11
**Opt-In (2)**
56:19 57:12
**optics (1)**
23:10
**oral (2)**
34:19,23
**order (5)**
1:15 3:17
21:12 56:4
61:19
**original (5)**
4:9,12 58:5,6,7
**outcome (1)**
62:16
**overcharging...**
15:9
**owe (10)**
19:2,3,4,5
20:14,20 21:9
21:22,23
54:19

**owed (4)**
18:24,25 19:22
54:21
**owes (5)**
19:6 20:3,4,6,8

——————
**P**
**P (3)**
2:2,2 3:2
**P.C (1)**
2:10
**p.m (1)**
60:14
**page (16)**
16:7 17:16
22:24 23:14
24:4 29:6,6
37:3 39:15
41:20 45:10
45:15 47:14
61:4,7,21
**pages (7)**
16:8 27:8 37:3
37:6 39:6,9
46:22
**paid (75)**
6:24,24 8:6
11:13 17:21
18:12 19:2,13
19:15,17,18
20:12 21:18
21:20 24:10
24:21 25:14
25:17,23 26:4
26:20,22 29:5
29:16 30:9,21
32:5 33:12,21
33:22 34:6,12
34:15 35:4,7
36:20 37:8
48:10,25 49:6
49:12 50:2,8
50:13,21,21
50:25 51:25
52:2,9,14,20
52:21,22 53:7

53:8,8,15,16
53:18,19 54:3
54:5,13,14
55:2,11,15,16
55:20 57:7,8
57:15 59:20
59:23
**paper (2)**
25:4 44:3
**papers (14)**
12:22 14:3,8
33:14 34:4
40:24 41:9,10
41:25 42:4,6
43:11,21
45:25
**paragraph (2)**
23:15 25:12
**part (9)**
15:15 19:17,18
27:15 34:10
48:18 52:23
57:6 59:5
**parties (4)**
3:3,5,24 62:15
**partner (1)**
13:7
**party (2)**
3:21 62:10
**pay (55)**
7:3,4 9:8 10:2
11:12 17:25
18:4,9,16
19:20,25
20:11 21:3,13
21:24 24:16
25:13,20
26:16 30:12
31:6 32:19,24
33:6 38:21
39:4 42:7
43:8 44:24
45:3,5,7,12
45:22 46:8
48:3,7,8
49:10 50:3,15

50:20 51:8,10
51:11,15 52:4
52:7,15,16,17
52:24 53:13
54:18 61:17
**paycheck (1)**
31:6
**paying (1)**
24:9
**payment (3)**
31:16 32:12,15
**payments (5)**
18:6 29:12
30:7 36:19
37:20
**payroll (1)**
37:12
**pays (1)**
21:2
**pending (1)**
14:10
**people (6)**
12:16 26:4,20
35:13 37:14
42:8
**PEREZ (2)**
1:4 2:7
**period (1)**
31:6
**permitted (1)**
3:13
**person (3)**
3:8,18 8:8
**persons (1)**
3:13
**Peter (2)**
11:24,25
**phone (1)**
8:17
**pictures (4)**
46:15,22 47:4
47:6
**pile (2)**
51:2 57:22
**place (2)**
5:18 23:19

**places (1)**
27:12
**plainly (1)**
3:17
**Plaintiff (1)**
1:5
**plaintiff's (16)**
13:20 16:15
32:18 34:6
52:20 54:10
56:9,9,19,20
57:12,12,16
58:9,17,21
**plaintiffs (7)**
1:14 2:3,8
32:13 33:12
33:21 59:20
**Plaintiffs' (27)**
14:14,17,20,22
16:2 26:25
28:5,8,11,14
30:4 32:8
35:19 37:2
38:16,19,22
38:25 47:13
48:9 49:14,21
49:22 52:23
56:2,5 61:7
**please (7)**
5:15,17 19:9
28:16 35:23
46:3 52:19
**PLLC (2)**
1:16 2:3
**point (1)**
50:8
**posted (1)**
46:18
**poster (1)**
46:23
**posters (1)**
46:23
**practice (1)**
51:15
**prejudice (1)**
3:18

prepare (1)
18:18
**PRESENT (1)**
2:15
presented (1)
23:2
preserve (1)
3:16
previously (4)
12:20 41:12
43:14,17
print (7)
35:22 40:6
41:2 43:3,21
44:13 45:4
printed (25)
33:4,17 37:5
39:21,24 40:2
40:3,12,19,21
40:22 41:11
41:14,15,23
43:5,14,17
44:2,8,17,19
47:25 48:5
54:16
prior (1)
41:24
privilege (2)
3:16 27:24
probably (2)
40:14 50:5
problem (1)
52:13
problems (2)
21:10,12
proceed (1)
3:8
process (1)
60:13
produce (7)
9:23 31:17
43:11 54:7
56:24 57:19
59:25
produced (27)
13:22,25 15:19

16:5 22:16
28:20,21
29:22,24
35:25 36:5,22
37:5,12 45:19
47:6 49:16
50:6,10 52:24
53:23 55:10
56:21 58:3
59:12,16 60:3
production (5)
13:2 22:8 33:3
60:10 61:20
proof (2)
21:19 54:21
propounded ...
5:5
provide (1)
4:14
provided (5)
3:19 4:10 12:5
34:11,14
provision (1)
3:5
Public (5)
1:18 4:9 5:3,10
60:22
pulled (1)
13:5
punch (2)
23:22 55:20
purpose (2)
3:23,25
pursuant (2)
1:14 3:8
put (11)
23:21 25:4
30:14 33:25
36:9,12 37:17
37:19 46:23
50:20 54:3

**Q**

quantity (1)
50:17
question (18)

3:17,21 4:2,5
9:25 10:7
20:21,22 32:6
42:5,22 43:10
43:15,16
44:12 52:3,19
59:9
questioning (3)
3:11,14 4:14
questions (3)
3:15 5:5 6:3
quick (1)
8:19
QuickBooks ...
22:14 34:2,24
35:9 36:14
37:17,19
51:20 56:21
56:25 58:18
59:7,8

**R**

R (4)
2:2 5:2,2 62:2
raise (2)
33:24 50:5
raised (2)
3:10 33:22
raises (5)
7:7 33:10 42:2
42:17 46:14
randomly (1)
51:3
rate (9)
6:24 29:13,14
29:16 30:9
32:9,23 33:5
49:18
rates (5)
28:7 30:16,17
32:4 61:12
read (4)
15:5 23:6,18
45:24
reading (2)
23:5 25:11

reason (5)
4:3 6:13 33:25
42:14 45:4
reasons (1)
6:23
recall (2)
5:22 6:22
receipts (7)
20:25 25:5,5,8
35:5 50:24
51:2
receive (2)
7:16 21:25
received (4)
22:5 32:13
51:25 57:24
recess (3)
8:20 13:15
55:23
recognize (2)
3:5 30:4
record (18)
4:3 5:15,17
13:14 25:9
27:8,22 31:24
32:2,4,7 35:2
38:12,14
48:21 55:14
56:14 62:12
records (23)
19:19 20:13
33:2,11,20
34:5,22,25
35:3,13 36:25
37:11 38:22
50:22 51:17
56:19,21,24
57:3,11,19
59:10 61:17
reflected (1)
22:19
refusal (1)
3:19
regards (1)
25:18
registration (1)

23:21
regular (3)
25:4 29:14
50:15
related (2)
56:4 61:19
relating (4)
13:19,23 34:22
35:3
relevant (3)
22:9 28:22
61:23
relief (1)
3:8
relying (1)
44:23
remainder (1)
3:22
remember (24)
5:25 7:4 10:4,9
10:11,11,13
10:15,17,19
11:5,8,10,18
12:6,8 31:10
33:9,23 37:25
39:23,24 40:8
46:9
removing (1)
28:22
report (2)
21:24 22:4
represent (2)
28:20 48:20
represented (...
62:10
request (2)
3:11 48:2
REQUESTS ...
61:20
required (1)
17:25
research (1)
41:17
reserved (1)
4:7
resignation (1)

23:3
**resigning (2)**
23:4,8
**respect (1)**
23:12
**respective (1)**
3:3
**responding (1)**
6:10
**response (1)**
48:2
**responses (1)**
6:6
**REST (1)**
1:9
**restaurant (4)**
1:8,9 17:2
31:12
**restaurants (6)**
16:23 17:6,10
22:6 31:9
45:3
**return (1)**
4:9
**returns (2)**
22:19 52:18
**revenue (1)**
22:5
**review (1)**
37:12
**reviewed (3)**
36:4 45:20
46:7
**RICOTTA (1)**
2:10
**right (26)**
3:8,16,21 12:7
15:16 16:23
17:6,10,13
18:2,21 19:14
20:7 27:11,15
28:2 30:25
35:17 40:16
47:19 51:12
51:23 52:5
53:17,25 57:2

**rights (1)**
4:10
**robbing (2)**
15:14,14
**Romero (6)**
1:3 20:7 29:6
49:23 50:7
52:24
**Romero's (2)**
38:21 61:17
**Rose (25)**
1:15 2:3,5 5:14
8:19 9:22
12:15,25 13:5
13:10 14:12
15:22 22:8
23:6 27:8,20
28:2 31:24
38:12 48:18
48:22 49:9
55:21 60:9
61:5
**Roslyn (1)**
5:18
**ROY (1)**
2:16
**rule (7)**
3:4,5,13,13,19
4:10 26:15
**rules (10)**
3:4 4:2 5:25
14:16 16:10
16:11,19,22
17:11 61:9

_____
**S**

**S (3)**
2:2 3:2,2
**salary (3)**
21:20,20 25:19
**sanctions (1)**
60:12
**Saturday (1)**
25:15
**saw (1)**
45:23

**saying (7)**
11:3 26:10
37:16 42:14
42:16 49:15
57:22
**says (30)**
6:11 15:3
18:23 19:10
20:25 23:9,13
23:16 25:6
29:13,13
30:20,23 31:3
31:5,11 35:6
38:5 39:18
41:21 45:11
45:16 46:4
48:13 49:2,18
49:18 50:15
56:19 59:23
**scanned (1)**
51:3
**schedule (2)**
23:21 24:18
**schedules (1)**
56:12
**search (1)**
56:16
**second (2)**
14:6 23:15
**Section (1)**
4:2
**see (32)**
10:22 11:16
13:3,6 16:4
19:10 21:22
23:15 24:15
29:7,13 34:3
35:21,23 37:9
38:5 39:12
41:19 45:2,12
45:17,23
46:20 48:13
49:2,18 51:13
56:11,16,18
56:22 57:17
**seen (1)**

28:17
**sell (2)**
15:13 22:3
**send (3)**
9:20 42:18
57:6
**sends (1)**
7:9
**sent (12)**
7:19 8:18
10:14 12:22
16:18 33:14
35:16,17
50:24 51:2
56:10 58:22
**sentence (1)**
23:18
**separate (1)**
32:4
**set (6)**
3:17 4:2 16:19
16:22 57:3
62:19
**sheet (3)**
37:3 40:20
42:18
**sheets (3)**
31:19,20 44:2
**shift (1)**
24:11
**shifts (1)**
59:11
**show (6)**
19:19 20:13
33:11,20 34:6
36:25
**showing (4)**
22:17 35:13
50:22 59:10
**shows (1)**
37:7
**side (1)**
17:22
**sign (10)**
16:25 17:3,5
19:21 20:4

52:14 53:8
54:13 55:2
57:7
**signed (17)**
4:8 18:21,22
18:24 20:19
24:4 51:24,25
55:15 57:4,24
58:20 59:15
59:21 60:6,11
61:24
**significant (1)**
3:18
**similarly (1)**
1:4
**site (4)**
9:19 12:19
43:9,12
**sited (1)**
44:5
**situated (1)**
1:4
**six (1)**
46:22
**slips (2)**
59:2,4
**small (7)**
15:13 46:20
48:13 49:8,19
59:2,4
**smaller (1)**
49:4
**somebody (1)**
37:8
**son (1)**
50:18
**sorry (2)**
23:7 35:21
**sources (1)**
39:3
**Spanish (4)**
2:16 5:6,7 19:9
**speak (5)**
10:21,22,24
11:4,6
**speaking (2)**

6:3 10:15
**specific (1)**
17:12
**specified (1)**
17:14
**spoke (3)**
11:21 13:7,18
**spreadsheet (...**
28:4,13 31:14
   31:20,22 37:5
   61:11,14
**spreadsheets...**
22:16 29:24
   31:7,18
**stack (3)**
33:14,18 36:6
**stacks (1)**
49:16
**stamped (4)**
15:22 16:6
   39:16 49:22
**start (1)**
35:6
**started (4)**
12:2 24:8 43:4
   44:20
**State (6)**
1:18 5:4,11,15
   5:17 39:18
**State's (1)**
41:21
**stated (2)**
3:10 4:3
**statement (2)**
3:12,20
**statements (1)**
3:14
**states (2)**
1:2 57:13
**steal (1)**
15:5
**stealing (3)**
15:9,16,20
**stenographic...**
62:9
**stick (1)**

46:3
**STIPULATE...**
3:3
**stole (2)**
15:4,7
**stopped (1)**
37:23
**Street (1)**
2:8
**strike (1)**
4:5
**stubs (3)**
50:3 52:5,24
**stuff (1)**
14:24
**subdivision (1)**
3:19
**subdivisions ...**
3:6
**subject (1)**
3:8
**Subscribed (1)**
60:18
**succinct (1)**
3:20
**succinctly (2)**
3:10 4:3
**suggest (1)**
3:11
**Suite (4)**
1:16 2:4,8,11
**summary (6)**
28:11 29:4
   35:20,24
   36:21 61:13
**Sunday (1)**
25:15
**support (1)**
23:12
**suppose (2)**
30:19 45:11
**supposed (12)**
8:6 9:8 10:2
   19:20 20:11
   23:19 48:8,25
   49:12 50:21

52:10 57:6
**sure (2)**
9:9 50:21
**sweep (1)**
25:21
**sworn (6)**
4:8 5:3,10
   40:16 60:18
   62:7
**system (3)**
21:8 23:23
   35:15

---

**T**

**T (6)**
3:2,2 5:2,9
   62:2,2
**table (1)**
25:22
**take (9)**
8:19 13:2,10
   15:24 27:20
   28:16 47:3
   48:12 55:21
**taken (9)**
1:14 3:7 4:10
   6:19 8:20
   13:15 22:11
   55:23 62:8
**talk (4)**
13:11 40:24
   51:6,7
**talked (2)**
6:23 10:19
**talking (4)**
7:20 21:16
   46:3 58:9
**Tavara (1)**
29:7
**tax (4)**
21:2 22:19
   54:19,22
**taxes (17)**
17:21,22,25
   18:3 20:11,14
   21:21,23,25

22:4,9,12
51:10 52:15
54:14,15
61:23
**telephone (2)**
8:7,17
**television (1)**
7:9
**tell (17)**
14:23 16:8
   17:20 22:24
   24:5 26:21,25
   27:13 28:16
   32:20 33:5
   34:20 37:15
   40:16 42:12
   43:11 60:5
**telling (5)**
7:13 42:19
   51:4 55:8,14
**tells (2)**
26:12 40:2
**testified (3)**
5:11 9:18
   42:13
**testify (3)**
6:13 19:9
   36:10
**testifying (2)**
57:25 58:19
**testimony (9)**
4:5 40:3 41:23
   44:7,23 49:5
   54:9 62:8,8
**thing (2)**
11:24 36:9
**things (4)**
14:25 43:7,14
   60:4
**think (15)**
10:4,9 15:21
   24:2 33:20
   50:4,11 53:6
   54:8 58:12,14
   58:16 59:13
   60:2,4

**third (5)**
39:15 41:20
   45:10 47:10
   47:13
**three (3)**
8:25 9:5 11:22
**time (32)**
4:6 6:22 8:21
   9:18 11:14
   13:16,17 14:4
   14:6,7 18:19
   21:10,11
   23:22,23
   30:12 32:22
   35:6,6,25
   36:22,23 40:9
   42:7 43:7,10
   45:20 50:5
   52:16 55:24
   57:16 60:14
**times (4)**
11:18 22:2
   23:11 47:9
**tip (8)**
21:11 41:21
   48:12 49:3,24
   52:11,12,13
**tipped (4)**
26:12,13 34:16
   45:7
**tips (6)**
21:15 25:25
   26:5,19,20
   51:9
**today (3)**
6:14 52:18
   57:25
**told (18)**
7:2,8,15,18,24
   7:24 8:7
   11:12 17:9
   26:18 39:3
   42:2,17 44:25
   47:20 55:18
   56:14 60:6
**top (2)**

31:11 59:5
**track (6)**
21:9 24:13,17
   24:18,19,22
**transcribed (2)**
6:7 62:9
**transcript (1)**
62:11
**translate (1)**
5:5
**TRANSLAT...**
2:16
**trial (5)**
1:13 3:4 4:6
   62:5,12
**true (3)**
7:17 58:4
   62:11
**truth (1)**
40:16
**truthfully (1)**
6:14
**try (1)**
41:16
**turn (1)**
23:14
**TV (1)**
11:16
**two (11)**
9:13 16:25
   17:3,4 18:16
   26:11 37:22
   39:6,9 47:17
   47:25

_____
U
_____

**U (1)**
3:2
**unaware (1)**
13:9
**understand (...**
8:12,14 17:24
   19:12 22:15
   23:8 28:2
   29:19,23 31:3
   31:7 32:6

36:3,12,17
37:4,15 40:15
45:11,25
50:13 52:22
57:11 60:8
**understandi...**
26:8,9 32:10
**Uniform (1)**
3:4
**UNITED (1)**
1:2
**upper (4)**
33:4 39:25
   47:14,16
**User (1)**
38:5
**Users (1)**
38:9

_____
V
_____

**VALDIVIA (...**
1:10
**Vargas (5)**
29:5,16 30:20
   31:8 37:23
**verbal (1)**
6:6

_____
W
_____

**W2 (4)**
18:5,7,8 21:25
**W2's (1)**
19:21
**wage (17)**
10:16 11:4,7
   12:21 13:6
   28:7 34:12,15
   39:19 41:21
   42:15 45:16
   46:4 49:24
   50:8,14 61:12
**wait (2)**
22:2 52:18
**waiters (2)**
16:13 21:17
**waived (1)**
4:13

**waiver (2)**
4:6,10
**waiving (1)**
27:24
**wall (1)**
46:2
**Walter (2)**
12:6,13
**want (10)**
13:13 25:11
   27:18 41:10
   42:16 44:3,6
   48:20 52:18
   58:4
**wanted (7)**
9:19 29:22
   31:22 43:9
   44:5 46:13
   52:17
**wasn't (2)**
33:25 35:8
**watching (1)**
7:8
**water (1)**
15:13
**way (7)**
24:6,8 34:24
   42:19,20,20
   47:14
**ways (2)**
42:9,18
**we'll (3)**
9:22 12:17
   27:20
**week (1)**
7:15
**weekly (2)**
37:8,10
**weeks (4)**
37:22,22 47:17
   47:25
**went (5)**
12:8,9 41:3
   43:18 51:4
**weren't (1)**
52:13

**WHEREOF ...**
62:19
**Whichever (1)**
7:22
**witness (10)**
4:8,14 5:5,7,9
   26:9 61:4
   62:7,13,19
**work (12)**
23:9,19,24
   24:7,16 25:18
   26:20 27:3,13
   27:14 31:8
   52:10
**worked (9)**
24:20 30:12
   35:4,25 36:22
   37:14 50:11
   52:2,9
**working (2)**
32:18 37:23
**wouldn't (2)**
21:11 52:16
**write (7)**
24:25 51:23
   52:3,8 53:12
   54:4,5
**writing (4)**
12:17,18 22:10
   26:21
**written (3)**
7:19 26:23
   37:13
**wrote (1)**
54:9

_____
X
_____

**x (3)**
1:3,11 61:2

_____
Y
_____

**Y (1)**
5:2
**Yeah (3)**
11:3 25:2
   59:22
**year (16)**

8:2,3,5 9:7,14
   9:15,17 18:9
   19:5,11 29:18
   33:9 37:17,24
   38:3 50:4
**yearly (2)**
36:24 37:2
**years (5)**
8:25 9:5 12:2
   22:9 61:23
**yellow (2)**
58:22 59:24
**York (15)**
1:2,17,18 2:4,9
   2:12 5:4,11
   5:18 39:18
   41:21 45:16
   46:5 48:14
   49:20

_____
Z
_____

_____
0
_____

_____
1
_____

**1,107 (1)**
19:4
**1,736 (2)**
37:3,6
**1,831 (1)**
19:6
**10 (11)**
25:13,14,16,17
   25:18,20,23
   26:2 32:15
   45:9,14
**10.85 (1)**
45:12
**10:15 (1)**
1:17
**11 (2)**
32:20 49:2
**11101 (1)**
2:12
**11102 (2)**
1:17 2:4
**11372 (1)**

2:9
**11577 (1)**
5:19
**12 (2)**
33:18 61:22
**12:40 (1)**
60:14
**13th (1)**
62:20
**14 (4)**
5:18 61:8,9,10
**16 (1)**
12:12
**17 (1)**
19:24
**18 (4)**
14:14,23 46:6
61:8
**18-page (1)**
42:23
**19 (3)**
14:17 16:3
61:9
**1983 (1)**
12:3
**1D (1)**
2:8

_____ **2** _____
**2 (1)**
56:18
**20 (3)**
14:20 26:25
61:10
**2008 (3)**
23:25 39:6
41:19
**2009 (3)**
33:15 46:22
47:7
**2011 (1)**
56:12
**2013 (2)**
12:14 24:2
**2014 (1)**
11:9

**2015 (4)**
10:18 11:4
18:9 19:6
**2016 (15)**
10:10,12,13,16
12:11 19:5,5
30:21 31:5
32:18,20,21
34:3 46:6
49:5
**2017 (24)**
10:5,8 12:12
18:23 19:24
20:3 24:4
32:24,25 33:6
33:13 38:2
39:12,12,19
40:10,13,19
40:23 41:2,22
49:24 50:7,8
**2018 (4)**
9:17,25 33:16
56:13
**2019 (3)**
40:2 47:16,25
**2020 (5)**
1:17 33:4
60:19 62:6,20
**2074 (1)**
27:9
**2075 (1)**
27:9
**2080 (1)**
15:23
**2083 (1)**
26:6
**2084 (1)**
26:7
**2089 (2)**
16:6 26:6
**2093 (1)**
24:4
**2097 (1)**
26:7
**2098 (2)**
17:16,18

**21 (2)**
28:5 61:11
**2102 (1)**
16:7
**22 (5)**
28:8 30:4 32:8
61:12,23
**221 (1)**
3:4
**221.2 (1)**
4:2
**23 (3)**
28:11 35:20
61:13
**24 (4)**
6:20 28:14
37:2 61:14
**25 (4)**
38:16,25 47:13
61:15
**26 (4)**
38:19 48:9
49:21 61:16
**27 (8)**
38:22 49:14,22
52:23 58:10
58:17,21
61:17
**28 (8)**
56:2,9,9 61:11
61:12,13,14
61:18
**29 (4)**
56:6,9 57:10
61:19

_____ **3** _____
**3 (2)**
25:12 56:11
**309 (2)**
1:16 2:4
**31 (5)**
3:9 39:12,19
41:22 49:5
**31-09 (2)**
1:16 2:4

**31-10 (1)**
2:11
**3115 (3)**
3:6,13,19
**3116 (1)**
4:10
**3117 (1)**
4:11
**37-28 (1)**
2:8
**37th (1)**
2:11
**38 (3)**
61:15,16,17
**397.34 (1)**
18:9

_____ **4** _____
**4 (1)**
1:17
**401 (1)**
2:11
**4437 (1)**
49:22
**4467 (1)**
49:22
**4th (1)**
62:6

_____ **5** _____
**5 (4)**
30:21 32:19
39:11 61:5
**56 (2)**
61:18,19

_____ **6** _____
**6 (1)**
57:13
**60 (1)**
61:24

_____ **7** _____
**7 (2)**
40:2 47:16
**7-page (1)**
45:19

**7.50 (8)**
29:14 30:24
31:3 32:19
33:12,21 34:7
49:19
**75th (1)**
2:8

_____ **8** _____
**8-something ...**
33:23
**8.30 (1)**
50:15
**8.75 (2)**
49:4,25

_____ **9** _____
**9.15 (2)**
49:3,25