UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JHON E. CARDENAS, CESAR ROMERO,
and JOSE DAVID PEREZ MEJIA, *on behalf of
themselves and others similarly situated*,

                Plaintiffs,                        **MEMORANDUM AND ORDER**

         v.                              17-CV-5150 (RPK) (RML)

EDITA'S BAR & RESTAURANT, INC. *d/b/a*
FLAMINGO RESTAURANT AND LOUNGE,
DOLL'S REST INC *d/b/a* DOLL'S, and EDITH
F. VALDIVIA *a/k/a* EDITH F. D'ANGELO,

                Defendants.
--------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      Plaintiffs Jhon E. Cardenas, Cesar A. Romero, and Jose David Perez Mejia brought this collective action against defendants Edita's Bar & Restaurant, Inc., Doll's Rest Inc., and Edith F. Valdivia alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. L. § 650 *et seq.*  After the lead plaintiffs filed their amended complaint, Angely Peralta, Reidel Garcia, Cristian Canas, and Alejandro Vargas joined the collective action.  Now, plaintiffs have moved for summary judgment on their federal and state wage claims, their state spread-of-hours claims, and a new claim that defendants failed to provide adequate wage notices and statements.  For the reasons set out below, plaintiffs' motion is granted in part and denied in part.

## BACKGROUND

### I.    Factual Background

      The following facts are taken from the parties' Rule 56.1 statements and relevant portions of the record and are undisputed unless otherwise noted.

Defendants Edita's Bar and Restaurant Inc. ("Edita's") and Doll's Rest Inc. ("Doll's") operate bars in New York. *See* Pls.' Rule 56.1 Statement ¶¶ 1-3, 35 (Dkt. #45) ("Pls.' Statement"). Both corporations are owned by defendant Edith F. Valdivia, also known as Edith D'Angelo ("D'Angelo"), who acts as the chief executive and sole corporate officer for Edita's. *Ibid.* Along with D'Angelo, Luis Ruiz owns part of Doll's. *Id.* ¶ 3. Edita's does business as the Flamingo Restaurant and Lounge, and Doll's is associated with a bar that has the same name. *Id.* ¶¶ 1-3. In 2017 and 2018, Edita's gross sales were approximately $450,000, and Doll's totaled $200,000. *Id.* ¶ 34.

Edita's has around twelve regular employees, including managers, waiters, barmaids, and a DJ, and Doll's employs at least six or seven people. *Id.* ¶¶ 16, 18. The bars share some employees. *Id.* ¶ 19; Affirmation of Jesse Rose ("Aff. Rose") Ex. 2 at 16:5-9 (Dkt. #44-2). When an employee at one location got sick, D'Angelo would send a replacement from the other. Pls.' Statement ¶ 20. The parties dispute whether each bar also employed between forty and fifty women who would dance with customers for a fee. *Id.* ¶¶ 17-18.

D'Angelo hires and fires employees for both bars, sets employee schedules, and determines their pay. *Id.* ¶ 7. Prospective employees use one form to apply for jobs at Edita's and Doll's, and before D'Angelo hires a new employee, she tells them that they would be required to work at both bars. *Id.* ¶¶ 24-25. The bars serve the same "finger food" and have the same "rules of employment." *Id.* ¶¶ 8, 21, 22. D'Angelo's husband delivered supplies to both bars, and when supplies ran out at Doll's, employees would replenish inventory from Edita's. *Id.* ¶ 47. D'Angelo operates the bars out of one office. *Id.* ¶ 23.

Sometime around 2007, the bars started using a fingerprinting machine to track employee hours. *Id.* ¶ 9. The parties dispute when the machine broke, but D'Angelo testified that it

stopped working in 2013 or 2014. Pls.' Statement ¶ 11; Defs.' Resp. to Pls.' Rule 56.1 Statement at 3 (Dkt. #48-3) ("Defs.' Resp."); Aff. Rose Ex. 2 at 25:25-27:5; *id.* Ex. 4 at 39:17-40:2; *id.* Ex. 5 at 23:19-24:2. After the machine broke, D'Angelo used schedules to track the hours that employees worked. Pls.' Statement ¶ 12. Those schedules served as the only basis for determining how much employees would be paid. *Id.* ¶ 13. D'Angelo threw them away every day. *Id.* ¶ 12..

The bars made daily payments to employees in cash. *Id.* ¶ 26. D'Angelo kept receipts for those payments. *Id.* ¶ 27. But instead of describing an employee's hourly wages, the receipts document only the tips paid to the employee. *Id.* ¶ 29.

Defendants assert that D'Angelo discarded the paper copies of employee schedules after inputting the records into a digital payroll system. *See* Defs.' Resp. at 3-4. Although the record does not clearly indicate that D'Angelo entered the schedules into the computer, during discovery, D'Angelo produced records that reflect employee hours, pay, and tips earned at each bar, which the plaintiffs summarized in spreadsheets and submitted as Exhibit 10 to their motion. *See* Aff. Rose Ex. 2 at 42:16-43:5; *id.* Ex. 10; Pls.' Mem. in Supp. of Mot. for Summ. J. at 5 (Dkt. #43-1) ("Pls.' Mem."); Pls.' Reply at 3 (Dkt. #49).

Plaintiffs worked as waiters and bartenders for Edita's and Doll's between 2006 and 2017. Pls.' Statement ¶¶ 35, 46, 56, 62, 79, 88. They allege that they consistently worked more than forty hours per week and did not receive minimum wages, overtime compensation, or spread-of-hours compensation—an extra hour's pay when they worked more than ten hours in a day. *See, e.g.*, *id.* ¶¶ 37-39, 48-49, 50-51, 57-58, 63-64, 71-76, 80-85.

Defendants dispute the number of days and hours per week that the plaintiffs worked and the wages that plaintiffs received. *See, e.g.*, Defs.' Resp. at 8-13, 17-21. In support, defendants

cite the spreadsheets that plaintiff created as summaries of defendants' records.  *See* Aff. Rose Ex. 10.  The spreadsheets include records for Cardenas, Romero, Vargas, and Peralta, but not for Mejia, Canas, and Garcia.  *See* Aff. Rose Ex. 10.

Both federal and New York labor law permit an employer to pay qualifying employees less than minimum wage if they receive tips.  *See* 29 U.S.C. § 203(m); 12 N.Y.C.R.R. § 146-1.3.  Under both the FLSA and the NYLL, to claim such a "tip credit," an employer must give an employee notice.  *See ibid.*  D'Angelo gave verbal notice to Cardenas and Romero.  *See, e.g.*, Aff. Rose Ex. 4 at 58:17-59:3; *id.* Ex. 5 at 34:18-19; Pls.' Statement ¶¶ 40, 54.  Mejia, Canas, Peralta, Vargas, and Garcia allege that they never received notice of the tip credit.  Pls.' Statement ¶¶ 60, 65, 76, 85, 90.  D'Angelo testified in her depositions that her practice was to provide verbal notice to employees.  *See, e.g.*, Aff. Rose Ex. 4 at 58:17-59:3; *id.* Ex. 5 at 34:18-19.

## II.      Procedural Background

On December 18, 2017, Cardenas, Romero, and Mejia filed an amended complaint on behalf of themselves and other similarly situated persons bringing claims under the FLSA and NYLL.  *See* Am. Compl. (Dkt. #15).  The complaint alleges that defendants failed to pay plaintiffs minimum or overtime wages, violated New York's "spread-of-hours" requirement to pay employees an extra hour's pay on days when they work more than ten hours, and made illegal deductions from employee wages.  *Id.* ¶¶ 33-52.  Plaintiffs ask the Court to award liquidated damages and prejudgment interest.  *Id.* at 9-10 ("Prayer For Relief").  Canas, Garcia, Peralta, and Vargas consented to join the collective action.  *See* Consent to Become Party (Dkt #23, #24, #25, #26).

After completing discovery, plaintiffs moved for summary judgment on their minimum wage, overtime, and spread-of-hours claims.  Pls.' Mem. at 13-20.  In addition, they moved for

summary judgment on a claim—not raised in the complaint—that defendants failed to provide proper wage notices and wage statements. *Id.* at 21-22.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under governing law." *Ibid.* The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where "the burden of persuasion at trial would be on the non-moving party," the movant "may satisfy his burden of production" either "(1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (citation omitted).

In assessing the record, I consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers[.]" Fed. R. Civ. P. 56(c)(1)(A). I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for

the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks, alterations, and citation omitted).

## DISCUSSION

Plaintiff's motion for summary judgment is granted in part.  All plaintiffs are entitled to summary judgment on defendants' liability for failing to pay the minimum wage under the FLSA and the NYLL, as well as summary judgment on defendants' liability for spread-of-hours violations under the NYLL.  Some plaintiffs are also entitled to summary judgment as to defendants' liability for overtime under the FLSA and NYLL.  As to the amount of damages owed, only Mejia's minimum and overtime wage claims and spread-of-hours claims are susceptible to calculation on summary judgment.

## I.      Liability

Plaintiffs move for summary judgment on defendants' liability for failing to pay minimum and overtime wages in accordance with federal and state law, failing to pay spread-of-hours compensation under the NYLL, and failing to provide wage notices and statements as required by the NYLL.

### A.      FLSA Claims

Plaintiffs seek to hold defendants liable for wage violations under the FLSA.  *See* Pls.' Mem. 13-18.  Their theory of liability is that they were employed by Edita's and Doll's; that Edita's and Doll's qualify as a single enterprise subject to the FLSA; that D'Angelo was an employer within the enterprise; and that the defendants did not pay plaintiffs minimum and overtime wages as required by the FLSA, *see* 29 U.S.C. §§ 206(a), 207(a).  Defendants do not contest that Edita's and Doll's operated as an enterprise or that D'Angelo was an employer. Instead, they rely on plaintiffs' summary spreadsheets, which they argue show that "[p]laintiffs

6

were properly paid." Defs.' Resp. to Mot. for Summ. J. at 4 (Dkt. #48) ("Defs.' Resp. to Summ. J.").

For the reasons set out below, there is no genuine dispute of material fact concerning defendants' liability for unpaid minimum wages under the FLSA, and so I grant plaintiffs' motion for summary judgment as to liability on plaintiffs' FLSA minimum-wage claims. All plaintiffs except Peralta, Vargas, and Cardenas are also entitled to summary judgment on defendants' liability for their FLSA overtime claims.

### 1.  Coverage

The FLSA generally obligates an employer to pay minimum and overtime wages to an employee who "is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a). That category of liability under the FLSA is called "enterprise" coverage. *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96-97 (2d Cir. 2009). Once a plaintiff establishes enterprise coverage, "liability under the FLSA extends to any 'employer.'" *Gordon v. Gen. Prop. Mgmt. Assocs., Inc.*, 496 F. Supp. 3d 830, 836 (S.D.N.Y. 2020) (quoting 29 U.S.C. § 216(b)). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). There is no genuine dispute of material fact that defendants are employers subject to the FLSA under these principles..

### a.  Enterprise Coverage

Editha's and Doll's are a single integrated enterprise that is subject to the FLSA. To determine if two restaurants constitute a single employer under FLSA, courts in this circuit often evaluate whether the two companies "are actually part of a single integrated enterprise." *Flores v. 201 W. 103 Corp.*, 256 F. Supp. 3d 433, 440 (S.D.N.Y. 2017) (collecting cases); *see Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18-CV-7342 (JGK), 2019 WL 1585163, at *4 (S.D.N.Y.

Apr. 12, 2019); *Mendez v. Pure Foods Mgmt. Grp., Inc.*, No. 14-CV-1515 (SRU), 2016 WL 183473, at *4 (D. Conn. Jan. 14, 2016).  To do so, courts examine whether the companies have (i) "interrelation of operations," (ii) "common management," (iii) "centralized control of labor relations," and (iv) "common ownership or financial control."  *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014); *see In re Domino's Pizza Inc.*, No. 16-CV-6274 (AJN), 2018 WL 1587593, at *2 (S.D.N.Y. Mar. 27, 2018) (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)).  While "there is some disagreement among district courts" within the Second Circuit "with respect to whether the single-integrated-enterprise theory . . . is appropriate in the FLSA context," *Juarez*, 29 F. Supp. 3d at 368 n.3, neither party has disputed its applicability in this case.

All four factors of the single-integrated-enterprise test are met with respect to Edita's and Doll's.  The bars shared a manager, "finger food," supplies, rules of employment, and employees. Pls.' Statement ¶¶ 4, 6, 8, 19, 21, 22, 47; *see Khereed v. West 12th Street Rest. Grp., LLC*, No. 15-CV-1363 (PKC), 2016 WL 590233, at *4 (S.D.N.Y. 2016) (noting that common menu and "employee guidelines and procedures" are "facts that go to the existence of a single, integrated enterprise"); *Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 21 (E.D.N.Y. 2020) ("[A]ctivities of more than one entity are related where the entities provide mutually supportive services to the substantial advantage of each entity.").  D'Angelo supervises their common labor force from a central office.  *See* Pls.' Statement ¶¶ 7, 23; *Draskovic v. Oneota Assocs., LLC*, No. 17-CV-5085 (ARR) (JO), 2019 WL 783033, at *6 (E.D.N.Y. Feb. 21, 2019) (shared office).  And D'Angelo has an ownership stake in both bars.  Pls.' Statement ¶¶ 1-3.  There is no dispute that "a core group of individuals . . . control[led]" both entities.  *Archie v. Grand Cent. P'ship,*

*Inc.*, 997 F. Supp. 504, 527 (S.D.N.Y. 1998).  As a result, Edita's and Doll's operated as a single integrated enterprise.

An enterprise is liable for wage violations only if it was "engaged in commerce or in the production of goods for commerce."  29 U.S.C. §§ 206(a), 207(a).  An enterprise is "engaged in commerce or in the production of goods for commerce" if it "(i) has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)."  29 U.S.C. § 203(s)(1).

The parties do not dispute that the enterprise sold alcohol that moved in commerce and grossed sales in 2017 and 2018 that exceeded $500,000.  Pls.' Statement ¶ 34.  Enterprise coverage applies to Edita's and Doll's.

### b.  D'Angelo

For individuals within an enterprise, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees."  *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (citing *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013)).  "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment."  *Ibid.* (quoting *Irizarry*, 722 F.3d at 110).

Courts assess whether an individual defendant has the requisite control on "a case-by-case basis" by reviewing "the totality of the circumstances."  *Irizarry*, 722 F.3d at 104.  Four factors are often relevant: whether the individual (1) "had the power to hire and fire" employees, (2) "supervised and controlled employee work schedules or conditions of employment," (3)

"determined the rate and method of payment," and (4) "maintained employment records." *Ibid.* (quoting *Carter v. Dutchess Community Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). These factors are not exclusive, *see id.* at 110, and no one factor is dispositive, *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

D'Angelo hired and fired employees, set work schedules, and determined employee pay. Pls.' Statement ¶ 7. She also asserts that she documented employee hours on schedules and kept receipts that record tips that employees received. *Id.* ¶¶ 27, 29. D'Angelo's undisputed role at Edita's and Doll's was to control the conditions of employment, *see Tapia*, 906 F.3d at 61, and so there is no genuine dispute of material fact concerning her status as an employer within the enterprise.

## 2. Wage Claims

Plaintiffs are entitled to summary judgment as to liability on their claims that defendants did not pay them minimum or overtime wages under the FLSA.

To establish liability on a wage claim under the FLSA, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 497 (S.D.N.Y. 2017) (citation omitted), *aff'd*, 752 F. App'x 33 (2d Cir. 2018) (summary order).

At the threshold, I need to determine whether plaintiffs' amount of work and compensation should be inferred from their affidavits at the summary judgment stage. Ordinarily, "[w]hen the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). But "[w]hen an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the [employee] need only submit sufficient evidence from which violations of the [FLSA] and the amount of an

award may be reasonably inferred." *Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 252 (S.D.N.Y. 2021) (internal quotation marks and citation omitted).  An employee carries her initial burden if she proves she "performed work for which [she] was improperly compensated and . . . produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Ibid.* (internal quotation marks and citation omitted).  "[E]stimates based on [the employee's] own recollection" suffice. *Ibid.* (internal quotation marks and citation omitted).  If the employee makes a sufficient initial showing, the burden shifts to the employer to produce "evidence of the precise amount of work performed or . . . evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Ibid.* (internal quotation marks and citation omitted).

Here, defendants have cited no records of the hours worked and wages received by Mejia, Canas, and Garcia. *See* Aff. Rose Ex. 10; *cf id.* Ex. 2 at 26:17-28:24 (describing how defendants paid plaintiffs).  Those plaintiffs' estimates of their hours and wages suffice to infer the amount and extent of their work. *See Chichinadze*, 517 F. Supp. 3d at 252.  As I explain below, Mejia, Canas, and Garcia have met their burden to show improper compensation for their work and defendants have presented no rebuttal evidence.

With respect to Cardenas, Romero, Peralta, and Vargas, defendants point to plaintiffs' spreadsheets that summarize defendants' record productions. *See* Aff. Rose Ex. 10.  Plaintiffs argue that the spreadsheets contain "unauthenticated and disputed" evidence, and therefore do not rebut plaintiffs' estimates. Pls.' Reply at 3.  Even if credited as accurate and complete, *see Chichinadze*, 517 F. Supp. 3d at 252, defendants' spreadsheets indicate that Cardenas, Romero, Peralta, and Vargas received sub-minimal wage.  The spreadsheets also show that defendants

failed to pay Romero at least some of his claimed overtime compensation.  But genuine factual disputes remain about Peralta's, Cardenas's, and Vargas's overtime.

Therefore, all plaintiffs are entitled to summary judgment on liability for their minimum wage claims, and all plaintiffs except Peralta, Cardenas, and Vargas are entitled to summary judgment on liability for their overtime claims.

### c.  Minimum Wage

There is no genuine dispute that defendants failed to pay plaintiffs the federal minimum wage.

The FLSA requires employers to "pay the higher of the federal or state minimum wage applicable during any given time period."  *Reyes v. Lincoln Deli Grocery Corp.*, No. 17-CV-2732 (KBF), 2018 WL 2722455, at *5 (S.D.N.Y. June 5, 2018) (citing 29 U.S.C. § 218(a)).  The FLSA's limitations period for minimum wage and overtime claims is two years, unless the employer's violation is willful, in which case the period is three years.  *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 503 (S.D.N.Y. 2015).  Plaintiffs filed their complaint on August 30, 2017.  Compl. (Dkt. #1).  At the earliest, then, defendants are liable under the FLSA for violations occurring on August 30, 2014.

During the relevant period, New York minimum wage exceeded the federal requirement. Since 2009, the federal minimum wage has been $7.25 an hour.  29 U.S.C. § 206(a)(1).  Between December 31, 2013 and December 31, 2014, the New York minimum wage was $8.00, between December 31, 2014 and December 31, 2015, $8.75, and between December 31, 2015 and December 31, 2016, $9.00.  N.Y. Lab. L. § 652.  Between December 31, 2016 and December 31, 2017, employers with eleven or more employees had to pay an $11.00 minimum wage, and those with ten or less employees had to pay $10.50.  *Id.* § 652(1)(a).  Defendants were required to pay the New York minimum wage.

"The remaining question then is whether [p]laintiffs' regular rate of pay," "determined by dividing an employee's total remuneration for employment . . . in any workweek by the total number of hours actually worked," "was less than the applicable minimum wage." *Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219, 235 (S.D.N.Y. 2020) (internal quotation marks and citation omitted). "There is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 382, 385 (E.D.N.Y. 2012) (citation omitted). Under the NYLL, the regular rate of pay of an employee in the hospitality industry, including restaurants, is calculated "by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5(b); *see Villanueva*, 500 F. Supp. 3d at 235.

Using that formula, Mejia estimates that defendants paid him around $4.50 per hour in 2014, 2015, and for part of 2016, and then around $7.50 per hour for the rest of his employment in 2016. *See* Aff. Rose Ex. 13 ¶¶ 5-6, 8-9 (Dkt. #44-13); *id.* Ex. 19 at 1 (Dkt. #44-19). Canas estimates that defendants paid him about $4 per hour in 2015 and part of 2016, about $6 for six months in 2016, and then about $5.45 for the rest of 2016 and one month in 2017. *See id.* Ex. 15 ¶¶ 4, 8, 9 (Dkt. #44-15); *id.* Ex. 19 at 1. Garcia estimates that in 2014, defendants paid him approximately $4.25 per hour. *See id.* Ex. 17 ¶¶ 7-8 (Dkt. #44-17); *id.* Ex. 19 at 2. Defendants failed to pay Mejia, Canas, and Garcia the applicable minimum wage.

While the summary spreadsheets contradict the estimates of Cardenas, Romero, Vargas, and Peralta, those records still show that defendants violated the minimum wage law.   From 2014 until the week of April 4, 2016, the bars paid Cardenas $5.00 per hour.   *See id.* Ex. 10 at 18-20.   Then, they paid him $7.50 per hour until his employment ended in 2017.   *Id.* Ex. 10 at 20-22.   Likewise, Romero, Vargas, and Peralta were paid $5.00 per hour until April 2016, at which time defendants increased their wage to $7.50 per hour.   *Id.* Ex. 10 at 26-28, 31-33, 34-35. Even according to defendants' own records, the wage paid to the plaintiffs was insufficient.

Given this, the only way that defendants could have complied with the FLSA minimum wage requirement is a tip credit.   Federal and state tip credit provisions permit an employer to pay qualifying employees less than the minimum wage if they receive tips.   *See* 29 U.S.C. §§ 203(m), 206(a)(1); 12 N.Y.C.R.R. § 146-1.3 (effective Jan. 1, 2011); *see Inclan*, 95 F. Supp. 3d at 497.   Defendants assert that they are entitled to a tip credit under the NYLL.   *See* Defs.' Resp. to Summ. J. at 4-6.   But nowhere in defendants' summary judgment briefing do they claim a tip credit under the FLSA.   "Under both the FLSA and the NYLL, the employer must show they complied with the tip credit requirements," and the laws "have slightly different requirements." *Lopez v. MNAF Pizzeria, Inc.*, No. 18-CV-6033 (ALC), 2021 WL 1164336, at *8 (S.D.N.Y. Mar. 25, 2021).   Defendants baldly assert that the summary spreadsheets, "if accurate, would mean [p]laintiffs were properly paid."   Defs.' Resp. to Summ. J. at 4.   Even if it were possible to infer from a general statement of non-liability that defendants claim a tip credit under the FLSA, the "argument [would be] so underdeveloped that the Court deems it waived."   *Molina v. Faust Goetz Schenker & Blee, LLP*, 230 F. Supp. 3d 279, 287 n.39 (S.D.N.Y. 2017).

For those reasons, plaintiffs are entitled to summary judgment as to liability on their FLSA minimum-wage claims.

14

### d. Overtime

Mejia, Canas, Garcia, and Romero are entitled to summary judgment as to liability on their overtime claims.

The FLSA "require[s] an employer to pay an overtime wage of one and one-half times the regular rate for each hour worked in excess of forty per work week." *Inclan*, 95 F. Supp. 3d at 498 (citing 29 U.S.C. § 207(a)(1)). As discussed above, the estimates of Mejia, Canas, and Garcia suffice to infer their amount of work and wages. All three assert that they worked greater than forty hours per week but received no overtime compensation. *See* Pls.' Statement ¶¶ 56, 58, 74-75, 91, 94; Aff. Rose Ex. 19 at 1-2. Because defendants have produced no contrary evidence, they are liable for violating the FLSA overtime provision with respect to those plaintiffs.

Summary judgment as to liability is also warranted as to Romero's overtime claim. If an employer "failed to compensate [employees] properly for even one hour of overtime, liability is established[,] [and] [a]nything else relates only to damages." *Estrella v. P.R. Painting Corp.*, 356 F. App'x 495, 497 (2d Cir. 2009) (summary order). Here, the accounting spreadsheets on which defendants rely show that defendants paid Romero some overtime. *See* Aff. Rose Ex. 10 at 7. However, those records reflect that defendants neglected to pay Romero overtime at least once when his combined hours at Doll's and Edita's exceeded forty. *See id.* Ex. 10 at 25 (Romero entry for week of Feb. 9, 2015, showing sixty-six hours worked); *cf. Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367-68 (S.D.N.Y. 2014). At a minimum, defendants are liable for overtime compensation for those weeks where they admit their own liability. Summary judgment is therefore appropriate on defendants' liability for Romero's overtime claims. *See Arasimowicz v. All Panel Sys., LLC*, 948 F. Supp. 2d 211, 224 (D. Conn. 2013); *Garcia-Devargas v. Maino*, No. 15-CV-2285 (GBD) (JLC), 2017 WL 11567211, at *2 (S.D.N.Y. Mar.

29, 2017); *Draskovic v. Oneota Assocs., LLC*, No. 17-CV-5085 (ARR) (JO), 2019 WL 783033, at *12 (E.D.N.Y. Feb. 21, 2019).

Peralta is not entitled to summary judgment as to liability on her FLSA overtime claims. Peralta alleges that she worked forty-two hours per week from 2011 to 2017. *See* Aff. Rose Ex. 16 ¶ 7 (Dkt. #89-16); *id.* Ex. 19 at 2. Defendants' spreadsheets for Peralta cover a period from April 6, 2015 to December 4, 2016—but defendants acknowledge that she worked at the bars from 2007 to 2017. *Id.* Defs.' Ex. 10 at 14, 34-35; Defs.' Resp. at 19. Even though defendants have not offered any spreadsheets from the period before April 2015 and after December 2016, the available documents record Peralta's hours as less than twenty-five per week. *See, e.g.*, Aff. Rose Ex. 10 at 34. The spreadsheets undercut the reasonableness of Peralta's estimates, *see Chichinadze*, 517 F. Supp. 3d at 252, and a genuine dispute of material fact remains regarding whether defendants are liable for failing to pay Peralta overtime.

A genuine dispute of fact also exists as to whether defendants are liable to Vargas and Cardenas on their overtime claims under the FLSA. Vargas estimates his hours as between fifty-five and sixty-nine hours per week, but the spreadsheets record a much wider range, from seven to fifty-five. *See* Aff. Rose Ex. 14 ¶ 6; *id.* Ex. 10 at 29, 32. And the spreadsheets do not indicate that Vargas worked more than forty hours per week during any week that even arguably falls within the FLSA statute of limitations. *See id.* Ex. 10 at 31-32. Similarly, Cardenas estimates his hours as between fifty-five and sixty-six per week. *See id.* Ex. 11 ¶ 8 (Dkt. #89-11). But the spreadsheets do not show that Cardenas worked more than forty hours per week during the FLSA limitation period. *See id.* Ex. 10 at 18-22. The conflicts between Vargas's and Cardenas's self-reported hours and the spreadsheets create a genuine dispute about defendants' liability for their overtime.

For those reasons, the motion for summary judgment as to liability on the FLSA overtime claims is granted with respect to Mejia, Canas, Garcia, and Romero.  With respect to Peralta's, Vargas's, and Cardenas's overtime claims under the FLSA, the motion for summary judgment is denied.

**B.     NYLL Claims**

Plaintiffs are entitled to summary judgment as to liability on their claims under the NYLL for unpaid minimum wages, *see* N.Y. Lab. L. § 652, and for spread-of-hours compensation, *see* 12 N.Y.C.R.R. § 146-1.6.  Some plaintiffs are entitled to summary judgment as to liability on their claims under the NYLL for overtime wages.  *See* N.Y.C.R.R. § 142-2.2.  Plaintiffs are not entitled to summary judgment on their claims for wage notices and statements under the NYLL since they have not raised such claims in their complaint.  *See* N.Y. Lab. L. § 195(1)(a).

**3.   Coverage**

Defendants qualify as employers for purposes of the NYLL.  Under the NYLL, an "'[e]mployer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."  N.Y. Lab. L. § 190(3).  Although the New York Court of Appeals has not settled whether "the tests for 'employer' status are the same under the FLSA and the NYLL," *Irizarry*, 722 F.3d at 117, district courts in the Second Circuit "have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition by the FLSA," *Napoli v. 243 Glen Cove Ave. Grimaldi, Inc.*, 397 F. Supp. 3d 249, 263 (E.D.N.Y. 2019) (citation omitted).  As explained above, defendants are employers under the FLSA, and so they are also employers under the NYLL.

#### 4. Wage Claims

Plaintiffs are entitled to summary judgment as to liability on their NYLL minimum-wage claims. Under NYLL § 652(1), "employers must pay employees at least minimum wage." *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 655 (E.D.N.Y. 2020). "The federal minimum wage does not preempt the state minimum wage, and a plaintiff may recover under whatever statute provides the highest measure of damages." *Juan v. Son of Polisi, Inc.*, No. 19-CV-04662 (LDH) (PK), 2021 WL 2179344, at *7 (E.D.N.Y. Jan. 24, 2021) (citation omitted) (report and recommendation); *see Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 316 (S.D.N.Y. 2014).

The NYLL, like federal law, lets an employer pay a tipped worker cash wages less than minimum wage if the wages paid to the employee together with the employee's tips are at least equal to minimum wage. 12 N.Y.C.R.R. § 146-1.3 (effective Jan. 1, 2011); *see Inclan*, 95 F. Supp. 3d at 497; *cf.* 29 U.S.C. §§ 203(m), 206(a)(1). To take advantage of the tip-credit provision, before January 1, 2011, the NYLL required the employer to "furnish to [the] employee a statement with every payment of wages listing . . . allowances claimed as part of the minimum wage" and "maintain and preserve for not less than six years weekly payroll records . . . . for [the] employee [showing] . . . allowances . . . claimed as part of the minimum wage." *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 466 (S.D.N.Y. 2015) (quoting 12 N.Y.C.R.R. §§ 137-2.2, 137-2.1(a) (repealed Jan. 1, 2011)). To claim a tip credit under NYLL after January 1, 2011, state regulations require an employer to give employees notice. *See* 12 N.Y.C.R.R. § 146-1.3. A separate regulation defines what counts as valid notice. *Id.* § 146-2.2. Notice must be "written," indicate "the amount of tip credit, if any to be taken from the basic minimum hourly rate," be provided "[p]rior to the start of employment" and "prior to any change in . . . hourly rates of pay," and be communicated in English and the employee's primary

18

language.  *Id.* §§ 146-2.2(a), 146-2.2(a)(1)-(2), 146-2.2(b); *see Gamero*, 272 F. Supp. 3d at 501.

The employer bears the burden to prove compliance with the notice requirement.  12 N.Y.C.R.R.

§ 146-2.2(d); *see Gamero*, 272 F. Supp. 3d at 501.

Like the FLSA, the NYLL places the responsibility on an employer to maintain time records.  *See* N.Y. Lab. L. §§ 195(4), 196-a; *see Chichinadze*, 517 F. Supp. 3d at 253.  When an employer fails to maintain accurate and complete records, the plaintiff's burden is to submit evidence from which violations of the NYLL and damages may be reasonably inferred.  *See Chichinadze*, 517 F. Supp. 3d at 252.  If the plaintiff makes a sufficient showing, the burden shifts to the employer.  As compared with the FLSA, though, the NYLL puts "a more stringent burden of proof" on the employer "who fails to keep accurate records."  *Id.* at 253.  The employer must establish "by a preponderance of the evidence that it in fact paid its employees" properly, and the employer cannot carry that burden "by undermining the reasonableness of an employee's evidence."  *Ibid.* (citations omitted).

Applying these principles, plaintiffs are entitled to summary judgment regarding defendants' liability for minimum-wage violations under the NYLL.  As explained with respect to plaintiffs' FLSA minimum-wage claims, defendants have produced no records for Mejia, Canas, and Garcia.  And they admit in their records that they paid Cardenas, Romero, Vargas, and Peralta below the minimum wage.  *See* Aff. Rose Ex. 10.  Moreover, defendants have not met their burden to claim a tip credit.  Defendants do not argue that they provided those plaintiffs that started work prior to January 1, 2011 with proper statements listing allowances claimed as part of the minimum wage and maintained necessary payroll records for six years.  *See* 12 N.Y.C.R.R. §§ 137-2.2, 137-2.1(a) (repealed Jan. 1, 2011).  And defendants do not present evidence that they satisfied the tip-credit requirements for plaintiffs who started work after

January 1, 2011, either.  Defendants argue only that they gave those plaintiffs verbal notice about the tip credit.  *See, e.g.*, Aff. Rose Ex. 4 at 58:17-59:3; *id.* Ex. 5 at 34:18-19.  But the NYLL regulations plainly require written notice.  In particular, Section 146-1.3 permits a tip credit "if the employee has been notified of the tip credit as required in [S]ection 146-2.2," and Section 146-2.2 requires written notice.  12 N.Y.C.R.R. §§ 146-1.3, 146-2.2.  Accordingly, many courts have found that oral notice is insufficient*.  See Garcia v. Saigon Mkt. LLC*, No. 15-CV-9433 (VSB), 2019 WL 4640260, at *9 (S.D.N.Y. Sept. 24, 2019); *Sprague v. T.C. Inn*, No. 19-CV-1263 (LEK/MJ), 2021 WL 3617705, at *6-7 (N.D.N.Y. Aug. 16, 2021); *Chichinadze*, 517 F. Supp. 3d at 254; *Villanueva*, 500 F. Supp. 3d at 234; *but see Marin v. Apple-Metro, Inc.*, Nos. 12-CV-5274, 13-CV-1417 (ENV) (CLP), 2020 WL 6157011, at *12 (E.D.N.Y. Oct. 21, 2020) (reading Section 146-1.3 to require actual, not written notice).

Defendants cite one case, *Carvente-Avila v. Chaya Mushkah Restaurant Corp.*, No. 12-CV-5359 (KBF), 2016 WL 3221141 (S.D.N.Y. Mar. 1, 2016), that found oral notice adequate for a tip credit.  In reaching that conclusion, the district court deferred to an opinion letter issued by the general counsel of the New York Department of Labor.  *See Carvente-Avila*, 2016 WL 3221141, at *2.  The opinion letter stated that "a food service employer is eligible to claim the tip credit even when [it] fail[s] to provide written notice . . . . provided that the employer can demonstrate compliance with all the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit."  *Id.* at *1 (citation omitted).  The general counsel reasoned that Section 146-1.3 does not explicitly require written notice, failure to provide written notice under Section 146-2.2 results in a civil monetary penalty, not the loss of the tip credit, and requiring written notice would give a windfall to employees who had actual notice of the tip credit.  *See Marin*, 2020 WL 6157011, at *10.

20

Since the opinion letter's interpretation of Section 146-1.3 conflicts with the regulation's text, I will not defer to the state agency. New York courts give "an agency's interpretation of its own regulation . . . deference," but "courts are not required to embrace a regulatory construction that conflicts with the plain meaning of the promulgated language." *Mid Island Therapy Assocs., LLC, v. N.Y. State Educ. Dep't*, 129 A.D.3d 1173, 1175 (N.Y. App. Div. 2015) (internal quotation marks and citations omitted). Here, the regulation's text is clear. To claim a tip credit, an employer must give the employee notice "as required in [S]ection 146-2.2." 12 N.Y.C.R.R. § 146-1.3. And Section 146-2.2 requires notice of a tip credit to be "written." *Id.* § 146-2.2. No amount of administrative deference can erase the writing requirement from Section 146-2.2 or insert the phrase, "except the writing requirement" into Section 146-1.3. Since the New York Department of Labor's interpretation conflicts with the text, it is "unreasonable and irrational," and does not receive deference. *Mogollan v. La Abundancia Bakery & Rest. Inc.*, No. 18-CV-3202 (GBD) (SDA), 2021 WL 1226923, at *6 (S.D.N.Y. Mar. 31, 2021).

Defendants also suggest that paystubs given to plaintiffs satisfy the tip-credit notice requirement. Defs.' Resp. to Summ. J. at 6; *see* Decl. of Thomas Ricotta Ex. 1 (Dkt. #48-2). But the tip-credit notice must designate "the amount of tip credit, if any to be taken from the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-2.2(a). The three paystubs for Cardenas that defendants present as evidence do not clearly state the amount of tip credit. *See* Decl. of Thomas Ricotta Ex. 1. Therefore, defendants did not provide adequate notice under the NYLL by distributing such paystubs to their employees.

In sum, defendants have not put forward evidence from which a trier of fact could conclude that they paid the minimum wage required by NYLL, or that they satisfied the

requirements for the NYLL tip credit.  Accordingly, plaintiffs are entitled to summary judgment as to defendants' liability for violations of NYLL's minimum wage provision.

### 5.   Overtime

Some but not all plaintiffs are entitled to summary judgment as to liability on their NYLL overtime claims.  The NYLL generally requires an employer to "pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" "for hours worked in excess of 40 hours in one workweek."  12 N.Y.C.R.R. §§ 142-2.2, 146-1.4.  As explained above, defendants failed to provide records for Mejia, Canas, and Garcia.  Moreover, defendants' record evidence shows that they failed to pay overtime on some occasions to Romero, Cardenas, and Vargas within the six-year statute of limitations under the NYLL.  *See* N.Y. Lab. L. § 663; *see, e.g.*, Aff. Rose Ex. 10 at 15, 25, 29 (Cardenas entry for week of Oct. 24, 2011, showing about fifty-seven hours; Romero entry for week of Feb. 9, 2015, showing sixty-six hours; Vargas entry for week of Dec. 12, 2011, showing about fifty-five hours).  Summary judgment is therefore granted for those plaintiffs as to liability on their overtime claims under the NYLL.  Summary judgment is denied as to Peralta.  Despite the NYLL's stricter burden on defendants to rebut plaintiffs' estimates, *see Chichinadze*, 517 F. Supp. 3d at 253, the spreadsheets create a factual dispute about whether defendants are liable for Peralta's overtime claims.

### 6.   Spread of Hours

Plaintiffs are entitled to summary judgment as to defendants' liability for their spread-of-hours claims.  Under the NYLL, an employer must pay "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required . . . for any day in which . . . the spread of hours exceeds 10 hours."  12 N.Y.C.R.R. § 142-2.4.  New York law defines "[s]pread of hours" as "the interval between the beginning and end of an employee's workday."  *Id.* § 142-3.16.

Defendants do not raise a genuine dispute of material fact about their compliance with the spread-of-hours requirement.  All plaintiffs estimate that they worked shifts exceeding ten hours. *See* Aff. Rose Ex. 13 ¶ 6; *id.* Ex. 15 ¶ 8; *id.* Ex. 17 ¶ 8; Pls.' Statement ¶¶ 37, 48, 64, 80.  To rebut those estimates, defendants cite the spreadsheet records.  *See* Defs.' Resp. at 8, 11, 14, 15, 18, 19, 21.  But the spreadsheets do not include records for Mejia, Canas, and Garcia.  *See* Aff. Rose Ex. 10.  And while the spreadsheets purport to show the hours that Cardenas, Romero, Peralta, and Vargas worked at the bars, they do not indicate that defendants paid spread-of-hours compensation.  *See ibid*.  Rather, the salary entries in the spreadsheets seem to equal multiplication of hours by hourly rate with the addition of tips.  *See, e.g.*, *id.* Ex. 10 at 4 (entry for week of June 2, 2014, showing 27 hours worked at a $5 rate with $122 in tips and a $257 salary (27 * 5 + 122 = 257)).  Although the spreadsheets reflect that Cardenas, Romero, Peralta, and Vargas worked far fewer hours than they estimated, the weekly records do not include data for hours per day or shift.  Therefore, defendants have not met their burden under the NYLL to show "by a preponderance of the evidence that it in fact paid its employees" spread-of-hours compensation.  *See Chichinadze*, 517 F. Supp. 3d at 253.  Plaintiffs' motion for summary judgment is granted as to liability on their spread-of-hours claims.

### 7.  Wage Notice and Wage Statement Claims

Plaintiffs are not entitled to summary judgment on their purported claims that defendants violated NYLL by failing to provide plaintiffs with proper wage notices and wage statements. Pls.' Mem. at 21-22; *see* N.Y. Lab. Law §§ 195(1)(a), 195(3).  The amended complaint does not include any such wage-notice and wage-statement claims.  *See* Am. Compl.  And plaintiffs have not sought to amend that complaint—either in their summary judgment papers or elsewhere.  "A motion for summary judgment is not the appropriate place to present new claims which effectively amend the complaint."  *Allen v. W. Point-Pepperell, Inc.*, 908 F. Supp. 1209, 1224

(S.D.N.Y. 1995); *see Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo "Spartak,"* No. 13-CV-2303 (ENV) (LB), 2016 WL 4532113, at *11 (E.D.N.Y. Aug. 29, 2016); *Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 224 (S.D.N.Y. 2013); *see also DBT Gmbh v. J.L. Mining Co.*, 544 F. Supp. 2d 364, 376 n.2 (S.D.N.Y. 2008) (explaining that plaintiffs cannot raise new claims in opposition to summary judgment). And I decline to grant plaintiffs leave to amend *sua sponte* "without being asked to do so." *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006). Therefore, I will not consider the new NYLL claims on summary judgment. Plaintiff's motion with respect to the wage notice and wage statement claims is denied.

## II.     Damages

Summary judgment is appropriate only in part as to the amount of damages owed to plaintiffs. Factual disputes preclude damages calculations for all plaintiffs' FLSA claims. As to the NYLL, Mejia's minimum and overtime wage claims and spread-of-hours claims can be calculated at summary judgment. But genuine disputes of fact about how many hours the other plaintiffs worked preclude summary judgment as to damages on those plaintiffs' NYLL claims.

### A.     Damages Calculation

#### 1.   FLSA

Summary judgment is not appropriate on plaintiffs' damages under the FLSA because the parties dispute whether the applicable limitations period is two or three years.

As mentioned above, "[t]he statute of limitations under the FLSA is generally two years, but extends to three years for willful violations." *Pest v. Bridal Works of N.Y., Inc.*, 268 F. Supp. 3d 413, 431 (E.D.N.Y. 2017). Plaintiff has the burden of establishing willfulness. *Bonaparte v. Tri-State Biodiesel, LLC*, No. 17-CV-2353 (RJS), 2018 WL 4538895, at *3 (S.D.N.Y. Sept. 20, 2018) (citation omitted). "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act," and

"[m]ere negligence is insufficient." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (internal quotation marks and citations omitted). Plaintiffs can show reckless disregard "by proving [the] employer was subjectively aware of a 'substantial danger' that the violation existed." *Bonaparte*, 2018 WL 4538895, at *3 (citation omitted).

Plaintiffs have not established that there is no genuine dispute of fact concerning defendants' willfulness. D'Angelo testified that she looked on the Internet for information about how much to pay her employees and consulted with her accountant. *See* Aff. Rose Ex. 5 at 9:25-12:14, 38:24-43:6. Such asserted attempts to comply with the FLSA create a factual dispute about willfulness. *Cf. Valle v. Gordon Chen's Kitchen LLC*, 254 F. Supp. 3d 665, 678 (S.D.N.Y. 2017) (suggesting that failed attempts to comply are consistent with unreasonableness or negligence, not willfulness); *Agureyev v. H.K. Second Ave. Rest., Inc.*, No. 17-CV-7336 (SLC), 2021 WL 847977, at *6 (S.D.N.Y. Mar. 5, 2021) (finding absence of attempts to comply go to willfulness). D'Angelo's testimony may be vague and inconsistent, but credibility determinations are for the trier of fact, not the Court on summary judgment. *McClellan*, 439 F.3d at 144. Without a settled limitations period, I cannot calculate plaintiffs' damages. Summary judgment is denied on the amount of damages owed under the FLSA.

### 2. NYLL Wage Claims

Mejia is entitled to a calculation of damages on his minimum and overtime wage claims under the NYLL. The statute of limitations for NYLL wage claims is six years, *see* N.Y. Lab. L. § 663, and so plaintiffs may bring claims reaching as far back as August 30, 2011. "If the employer fails to produce evidence [about an employee's work], the court may . . . award damages to the employee, even though the result may be only approximate." *Chichinadze*, 517 F. Supp. 3d at 252 (citation omitted). As described above, defendants have not produced records to rebut Mejia's estimated hours and wages. Although defendants dispute how long Mejia

worked at the bars, D'Angelo testified that she could not remember when he started and stopped. Defs.' Resp. at 13; Aff. Rose Ex. 2 at 51:12-25.   No genuine disputes of fact preclude a determination on summary judgment of damages based on Mejia's estimated work.   Using the lower end of Mejia's estimates, Mejia is owed $19,422.00.   S*ee id.* Ex. 19 at 1.

Canas is not entitled to a calculation of his unpaid minimum and overtime wage claims because a factual dispute remains about whether Doll's was required to pay him an hourly rate of $10.50 or $11.00 during part of his employment.   Canas claims to have worked "for the defendants" for one month in 2017.   *See* Pls.' Statement ¶¶ 70-71; Aff. Rose Ex. 19 at 1-2. During that month, New York employers with eleven or more employees had to pay an $11.00 minimum wage, and those with ten or less employees had to pay $10.50.   N.Y. Lab. L. § 652(1)(a).   The parties dispute whether Doll's had eleven or more employees.   *See* Pls.' Statement ¶ 17; Defs.' Resp. at 4.   I decline to calculate Canas's damages when an outstanding fact issue remains with respect to his recovery.

Because Garcia's declaration contradicts plaintiffs' calculation of his damages, summary judgment is not appropriate on his damages at this time.   Garcia stated that he started working for defendants around February 2012 and was fired around April 2014.   Aff. Rose Ex. 17 ¶ 3. However, plaintiffs' damages calculation for Garcia covers a period from 2014 to 2017.   *See id.* Ex. 19 at 2.   Given that internal inconsistency in plaintiffs' estimates of Garcia's damages, factual disputes exist about the precise amount of unpaid wages to which Garcia is entitled. Therefore, summary judgment is denied on Garcia's damages at this time.

For Cardenas, Romero, Vargas, and Peralta, defendants have pointed to evidence that contradicts those employees' accounts of how many hours they worked and how much compensation they received.   *See* Aff. Rose Ex. 10.   A decision about whose recollections or

records to believe is best left to the trier of fact. *McClellan*, 439 F.3d at 144. Summary judgment is denied with respect to these defendants' damages for their NYLL minimum and overtime wage claims.

### 3. NYLL Spread-of-Hours Claims

Mejia is entitled to summary judgment on damages as to his spread-of-hours claim, because defendants have not introduced records to dispute his statements about his hours worked. Using the bottom end of plaintiffs' estimates regarding hours worked, Mejia is entitled to damages of $4,723.00.

For the reasons stated above, I cannot calculate Canas's or Garcia's damages on their spread-of-hours claims.

Cardenas, Romero, Peralta, and Vargas are also not entitled to summary judgment as to damages on the amount of spread-of-hours liability. Insofar as defendants' spreadsheets show that those plaintiffs all worked more than ten hours per week on occasion and does not provide data on a day-to-day basis, the spreadsheet does not contradict those plaintiffs' claims that they worked *some* shifts greater than ten hours per week. *See* Aff. Rose Ex. 10. But the spreadsheets are inconsistent with plaintiffs' testimony regarding the frequency with which they worked such shifts. *Compare* Pls.' Statement ¶¶ 37, 48, 64, 80 *with* Aff. Rose Ex. 10. Accordingly, a genuine factual dispute exists regarding how many eligible shifts those plaintiffs worked for the purpose of calculating damages. Summary judgment is denied on damages for their spread-of-hours claims.

### B. Liquidated Damages

Plaintiffs have not established that no genuine dispute of fact exists regarding liquidated damages under the FLSA or the NYLL. "Both the FLSA and the NYLL provide for liquidated damages." *Villanueva*, 500 F. Supp. 3d at 239. Under the FLSA, "[l]iquidated damages are

mandatory unless the employer demonstrates that they acted in good faith, in which case the decision to impose liquidated damages is discretionary." *Ibid.* (citing 29 U.S.C. § 260). The liquidated damages rules under the NYLL are similar, *ibid.*; *see also Cabrera v. Canela*, 412 F. Supp. 3d 167, 184 (E.D.N.Y. 2019); *Gamero*, 272 F. Supp. 3d at 503, but a plaintiff cannot recover liquidated damages under both the FLSA and the NYLL for the same course of conduct during the same period, *see Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). To avoid mandatory liquidated damages under the FLSA and NYLL, an employer must prove that it "took active steps to ascertain the dictates of the [law] and then act[ed] to comply with them," and "that its good-faith actions were objectively reasonable." *Chichinadze*, 517 F. Supp. 3d at 258 (internal quotation marks and citation omitted). Given that D'Angelo testified that she consulted the Internet and her accountant, *see* Aff. Rose Ex. 5 at 9:25-12:14, 38:24-43:6, there is a triable issue on defendants' good faith and objective reasonableness. *See Campbell v. City of New York*, No. 16-CV-8719 (AJN), 2021 WL 826899, at *9 (S.D.N.Y. Mar. 4, 2021). Summary judgment is therefore denied on liquidated damages.

## C.    Prejudgment Interest and Attorneys' Fees and Costs

Mejia is entitled to prejudgment interest on his actual damages under the NYLL. The NYLL provides for prejudgment interest, *Gamero*, 272 F. Supp. 3d at 515 (citing N.Y. Lab. L § 198(1-a)), which compensates a plaintiff for the lost opportunity to use the money that an employer withheld, *see Thompson v. Hyun Suk Park*, No. 18-CV-0006 (AMD) (ST), 2020 WL 5822455, at *10 (E.D.N.Y. Sept. 1, 2020), *report and recommendation adopted by* 2020 WL 5820547 (E.D.N.Y. Sept. 30, 2020). A plaintiff may recover prejudgment interest only on actual not liquidated damages under the NYLL. *Gamero*, 272 F. Supp. 3d at 515. The prejudgment interest rate is nine percent, *ibid.*, and the date at which interest starts to accrue is "the earliest ascertainable date the cause of action existed," *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir.

1994) (quoting N.Y. C.P.L.R. § 5001(b)).  When a plaintiff suffered damages at various times, courts "often choose the midpoint of the plaintiff's employment within the limitations period" for the date that interest starts to accrue.  *Gamero*, 272 F. Supp. 3d at 515 (citation omitted).

Defendants provide no persuasive reason for withholding prejudgment interest under the NYLL.  Defendants argue that the Court should decline to award prejudgment interest because "[d]efendants made substantial efforts to comply with the law, kept payroll records, provided [p]laintiffs with wage notices, advised them of their tip credits, and made good faith efforts to comply with the applicable law."  Defs.' Resp. to Summ. J. at 10.  But even if defendants made a good-faith attempt to comply with the law, prejudgment interest appropriately compensates plaintiffs for the lost opportunity to use (or earn interest on) their wages during the period in which those wages were wrongfully withheld.  *See Thompson*, 2020 WL 5822455, at *10.

Because a plaintiff may recover prejudgment interest only on actual not liquidated damages, *Gamero*, 272 F. Supp. 3d at 515, Mejia is entitled to nine percent interest on his actual damages calculated from the midpoint of his employment with the defendants.  Mejia's midpoint is August 1, 2015.  The Clerk of the Court is respectfully directed to calculate prejudgment interest from that midpoint date.  I reserve judgment on whether similar interest should be awarded to the other plaintiffs if they prevail on their claims under the NYLL.

Plaintiff also requests attorneys' fees and costs under the FLSA and NYLL.  *See* Pls.' Mem. at 22-23.  Federal and state law provide for an award of reasonable attorneys' fees and costs in addition to damages for a defendants' wage violations.  *See* 29 U.S.C. § 216(b); N.Y. Lab. L. §§ 663(1); 198(1-a).  Since I have granted summary judgment to plaintiffs for defendants' wage violations under the FLSA and the NYLL, plaintiffs are entitled to reasonable attorneys' fees and costs to be calculated at a later date.

**CONCLUSION**

For the reasons stated above, plaintiffs' motion for summary judgment is granted in part and denied in part.  The Clerk of the Court is respectfully directed to enter judgment for Mejia on actual damages for his minimum and overtime wage and spread-of-hours compensation claims for $24,145.00.  The Clerk of the Court is also directed to calculate nine-percent interest from the midpoint dates listed above and enter judgment in the pertinent amount for the plaintiff. Plaintiffs are entitled to reasonable attorneys' fees and costs, to be determined at a later date.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 30, 2020
Brooklyn, New York